FILED
CLERK, U.S. DISTRICT COURT

DEC 10 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                            DEPUTY

1  Alan Abrams, Esq. (SBN: 75637)
   Charles M. Coate, Esq. (SBN: 140404)
2  ccoate@cacllp.com
   COSTA, ABRAMS & COATE, LLP
3  1221 Second Street, Third Floor
   Santa Monica, CA 90401
4  Telephone: (310) 576-6161
   Facsimile: (310) 576-6160
5
   Attorneys for Plaintiff
6  Upper Branch Productions, Inc.

7                  **UNITED STATES DISTRICT COURT**

8                  **CENTRAL DISTRICT OF CALIFORNIA**

9
   UPPER BRANCH PRODUCTIONS,            CASE NO. CV-12-8789 MWF (RZx)
10 INC., a California corporation,
                                        **FIRST AMENDED COMPLAINT FOR:**
11              Plaintiff,
                                        **(1) COPYRIGHT INFRINGEMENT**
12        vs.                           **(2) CONTRIBUTORY COPYRIGHT**
                                        **INFRINGEMENT**
13 INNERWORKINGS, INC., a Delaware      **(3) VICARIOUS COPYRIGHT**
   corporation; THE RICHARD             **INFRINGEMENT**
14 DAWKINS FOUNDATION FOR               **(4) FRAUD**
   REASON AND SCIENCE, a Delaware       **(5) BREACH OF ORAL CONTRACT -**
15 corporation; RICHARD DAWKINS         *IN THE ALTERNATIVE*
   FOUNDATION STORE, a Colorado         **(6) BREACH OF IMPLIED CONTRACT**
16 limited liability company; CLINTON   *- IN THE ALTERNATIVE*
   RICHARD DAWKINS, an individual
17 residing in England; ROBIN
   ELISABETH CORNWELL, an               **DEMAND FOR JURY TRIAL**
18 individual residing in the State of
   Colorado; MICHAEL CORNWELL, an
19 individual residing in the State of
   Colorado; and DOES 1 through 10,
20 inclusive,

21              Defendants.

22

                                        1

CONFIRMATION
COPY
                    FIRST AMENDED COMPLAINT

1    Plaintiff Upper Branch Productions, Inc. ("Upper Branch" or "Plaintiff"), by its

2    counsel, alleges against Defendants InnerWorkings, Inc. ("IWI" or "Defendant"), The

3    Richard Dawkins Foundation For Reason And Science ("RDF" or "Defendant"), Richard

4    Dawkins Foundation Store ("RDF Store" or "Defendant), Clinton Richard Dawkins

5    ("Dawkins" or "Defendant"), Robin Elisabeth Cornwell ("Robin Cornwell" or

6    "Defendant"), and Michael Cornwell ("Mike Cornwell" or "Defendant") as follows:

7    ## JURISDICTION AND VENUE

8        1.    This Court has subject-matter jurisdiction over the claims relating to the

9    Copyright Act (17 U.S.C. §§ 101, 501) pursuant to 28 U.S.C. § 1331 (federal subject

10   matter jurisdiction), 28 U.S.C. § 1332 (diversity jurisdiction), and 28 U.S.C. § 1338(a)

11   (any act of Congress relating to copyrights, patents and trademarks).  This Court has

12   subject matter jurisdiction over the related state law claims under 28 U.S.C. § 1367

13   (action asserting state claims joined with substantial and related federal claims under the

14   copyright laws).

15       2.    This Court has personal jurisdiction over Defendants because Defendants

16   are doing business in the State of California, and venue is proper in this Judicial District

17   pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions

18   giving rise to this lawsuit, as well as substantial injury to Plaintiff, have occurred or will

19   occur in this District as a result of Defendants' acts of copyright infringement and

20   impending acts of copyright infringement, as alleged in detail below.  Venue is also

21   proper in this Judicial District pursuant to 28 U.S.C § 1400(a) in that Defendants may be

22   found in this District in light of their extensive commercial activities in this District.

2

## THE PARTIES

3.      Plaintiff Upper Branch Productions, Inc. ("Upper Branch" or "Plaintiff") was and is now, and at all relevant times mentioned herein, a California corporation with its principal place of business located in Los Angeles County, California.  Josh Timonen ("Timonen") formally commenced doing business as "Upper Branch" when he registered this DBA with the Los Angeles County Recorder's Office on or about June 12, 2007. Timonen thereafter formally incorporated Plaintiff Upper Branch Productions, Inc. with the office of the California Secretary of State on or about April 23, 2008.  Timonen was and is now, and at all relevant times mentioned herein, an officer and employee of Upper Branch.   Maureen Norton ("Norton") was at relevant times mentioned herein an employee of Upper Branch.

4.      Plaintiff is informed and believes that Defendant InnerWorkings, Inc. ("IWI" or "Defendant") is a corporation incorporated under the laws of the state of Delaware with a principal place of business at 600 West Chicago Avenue, Suite 850, Chicago, IL 60654.  Plaintiff is informed and believes that Defendant IWI acquired Idea Media Services, LLC, a limited liability company organized under the laws of the state of Illinois with a principal place of business at 1700 W. Hubbard Street, Chicago, IL 60622.

5.      Plaintiff is informed and believes that Defendant The Richard Dawkins Foundation For Reason And Science ("RDF" or "Defendant") is a Non-Stock Non-Profit Corporation incorporated under the laws of the State of Delaware with a principal place of business in the State of Colorado.

1    6.    Plaintiff is informed and believes that Defendant Richard Dawkins

2 Foundation Store ("RDF Store" or "Defendant") is a limited liability company organized

3 on or about May 27, 2010, under the laws of the state of Colorado with a principal place

4 of business at 1605 Meridian Market View, Unit 124, PMB 381, Falcon, CO 80831.

5    7.    Plaintiff is informed and believes that Defendant Clinton Richard Dawkins

6 ("Dawkins" or "Defendant") is a British citizen who resides in Oxford, England.

7 Dawkins is the admitted founder of RDF as well as its United Kingdom sister

8 organization the Richard Dawkins Foundation for Reason and Science, Ltd.    On

9 information and belief, Defendant Dawkins was an officer and/or managing agent of

10 Defendant RDF, his namesake foundation, commencing upon formation of RDF and until

11 about June 2010 when Dawkins resigned as trustee of RDF for a brief period of time.

12 Plaintiff is further informed and believes that Dawkins nevertheless subsequently

13 continued and continues to ultimately maintain the right to supervise and control his

14 namesake foundation RDF and his namesake store RDF Store in terms of the infringing

15 activity as set forth below.  Further, Plaintiff is informed and believes and on that basis

16 alleges that Dawkins knew or had reason to know of infringing activity set forth below

17 and intentionally induced or materially contributed to the infringing activity set forth

18 below.

19    8.    Plaintiff is informed and believes that Defendant Robin Elisabeth Cornwell

20 ("Robin Cornwell" or "Defendant") is a former citizen of the State of Colorado, who now

21 resides in the District of Columbia, and is an officer and/or managing agent of

22 Defendants RDF and RDF Store.

4

9.      Plaintiff is informed and believes that Michael Cornwell ("Mike Cornwell" or "Defendant") is a citizen of the State of Colorado, and is an employee of Defendant RDF and/or Defendant RDF Store.

10.     Together, RDF, RDF Store, Dawkins, Robin Cornwell, and Mike Cornwell are collectively referred to herein as "Dawkins Defendants."

11.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant DOES 1 through 10, inclusive, and presently unknown to Plaintiff, who therefore sues these Defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the DOE Defendants was and is either intentionally, negligently, or in some other manner, the cause or contributing cause of, or otherwise responsible for, the damages suffered by Plaintiff.  Plaintiff will amend this Complaint to allege the true names and capacities of each DOE Defendants, together with such allegations as may be appropriate, when their names have been ascertained.

12.     Plaintiff is further informed and believes and thereon alleges that at all relevant times mentioned herein, each Defendant was the agent, servant, employee, partner, joint venture and/or franchisee of each of the remaining Defendants herein, and was at all times acting within the course and scope of said agency, service, employment, partnership, joint venture and/or franchise.  Moreover, Plaintiff is informed and believes, and based thereon alleges, that each act or omission hereinafter alleged on the part of any one Defendant was done with the approval and consent and was ratified by each of the remaining Defendants.

5

FIRST AMENDED COMPLAINT

## FACTUAL BACKGROUND

13.     Plaintiff owns valid copyrights in and to each of the fifteen (15) DVDs, artwork, DVD menus, and other audiovisual works at issue here, and these works have been registered with the United States Copyright Office.  Attached hereto collectively as **Exhibit "A"** are the copyright certificates for the fifteen (15) works (collectively referred to herein as the "Works").

14.     Each of the Works contains a large number of creative elements wholly original to Plaintiff and which are copyrightable subject matter under the laws of the United States.

15.     Plaintiff is (a) the assignee of any and all intellectual property rights in the Works including all rights under copyright of Timonen, individually and d/b/a Upper Branch, created prior to the formal incorporation of Plaintiff Upper Branch; and (b) the copyright owner of the results and proceeds of Timonen's services following such incorporation.

16.     The Dawkins Defendants knew that Plaintiff owned the copyrights in the Works when they later attempted to obtain an assignment of the copyrights in the Works.

17.     Plaintiff deposited "master" copies of Plaintiff's Works and "master" computer files of the artwork created by Plaintiff to accompany the Works with Idea Media Services, LLC ("Idea Media"), now Defendant IWI, with advance instruction that from those master copies and files, Idea Media would create and duplicate copies of the Works on a per-order basis as authorized by Timonen or Norton on behalf of Plaintiff.

18.     Idea Media knew that only Plaintiff could place orders for the Works, and that no third parties, including the Dawkins Defendants, could place orders for copies of the Works without the express consent and authorization of Plaintiff.

19.     The Dawkins Defendants knew that Plaintiff owned the copyrights in the Works when they later attempted to obtain written assignments for the copyright in all of Plaintiff's Works under a false promise to "buy out the store."

20.     In or about 2006, Dawkins and Timonen orally agreed that Timonen would design and develop from Los Angeles, California, two websites, one for Dawkins, personally, and one for Dawkins' anticipated namesake foundation, Defendant RDF. Timonen was paid as an independent contractor for these website services.

21.     In or about June 2007, Dawkins and Robin Cornwell further orally agreed with Timonen that Timonen d/b/a Upper Branch would create and operate, independently and autonomously from Dawkins and his namesake foundation, RDF, an online store ("Upper Branch Store") from Los Angeles, California, and that Timonen d/b/a Upper Branch and Timonen's employees would create the products that would be sold in the Upper Branch Store.  After formal incorporation, Plaintiff took over operations of the Los Angeles based online Upper Branch Store.

22.     All products sold in the Upper Branch Store publicized the issues and cause(s) supported and advanced by Dawkins and RDF but Dawkins made clear that, in Dawkins' own words, the Upper Branch Store was "not directly concerned with RDF[]'[s] activities."

23.     At all times hereunder, Plaintiff was an independent business (independent from RDF, et al.), and Mr. Timonen autonomously ran and operated the Upper Branch Store from a location within Los Angeles, California.

24.     Timonen proposed to Dawkins that Timonen could donate certain profits of the Upper Branch Store operation to RDF.  In response, on or about July 25, 2007, Dawkins emailed Timonen in Los Angeles: "it's your baby, your profits, your tax . . . as for whether Upper Branch should make a donation to RDF[], I don't think you should feel any moral obligations in that regard."

25.     The Works were created over the course of the next two years and Plaintiff sold copies of the Works to the public from the online Upper Branch Store, among other ways.

26.     In or about December 2009, Defendants Dawkins and Robin Cornwell, on behalf of RDF *inter alia*, asserted an interest in purchasing certain assets of Plaintiff.  In connection therewith, Defendant Robin Cornwell and other RDF trustees represented to Timonen and Norton who were in Los Angeles at the time that RDF had obtained its 501(c)(3) status and had been "uncoupled" from the United Kingdom sister foundation, which purportedly allowed RDF to profit from the sale of merchandise.

27.     Correspondingly, in or about December 2009, Dawkins and Robin Cornwell on behalf of RDF orally and by email agreed with Timonen and Norton on behalf of Plaintiff in Los Angeles "to buy out the store" and that upon the condition and in consideration for the transfer of certain assets of Plaintiff's, including Plaintiff's inventory of tangible copies of the Works, and written copyright assignments, Defendant

8

1    RDF would "buy out the store" and provide monetary consideration to Plaintiff and

2    compensate Plaintiff for all of its inventory and the costs and liabilities incurred by

3    Plaintiff as a result of the conveyance, transfer and assignment of assets to RDF and

4    related matters.   A true and correct copy of an email sent by Elisabeth Cornwell (on

5    behalf of all Dawkins Defendants) to Josh Timonen and Maureen Norton who were in

6    Los Angeles on or about December 29, 2009 is attached hereto and incorporated by

7    reference herein as **Exhibit "B**."   Plaintiffs are informed and believe and on that basis

8    allege that this email was sent with the approval of Dawkins, and that such email would

9    not have been sent to Timonen and Norton in Los Angeles without his authority and the

10   authority of all other Dawkins Defendants herein.

11        28.    Starting in or about December 2009, and subsequently thereafter,

12   Defendants Dawkins and Robin Cornwell on behalf of Defendant RDF at all times

13   materially represented by telephone and email and led Timonen and Norton, who were in

14   Los Angeles at the time, on behalf of Plaintiff to believe and reasonably rely on

15   Defendants' material representations that in consideration for the conveyance, transfer

16   and assignment of assets from Plaintiff to RDF, including written copyright assignments,

17   RDF would provide monetary consideration to Plaintiff and compensate Plaintiff for all

18   of its inventory and costs and liabilities it incurred as a result of the conveyance, transfer

19   and assignment of assets to RDF and related matters.

20        29.    In reasonable reliance upon the foregoing material representations and

21   assurances from Defendants Dawkins and Robin Cornwell, on behalf of Defendant RDF,

22   that the Plaintiff would receive monetary consideration for the conveyance, transfer, and

1   assignment of assets to RDF, Timonen and Norton reasonably having no reason to

2   believe that such telephone and email representations made by Dawkins and Robin

3   Cornwell on behalf of Defendant RDF were false in any way, were on behalf of Plaintiff

4   induced in Los Angeles, California to perform and did perform completely in or about

5   June 2010 by, *inter alia*, permitting Defendant RDF (through Robin Cornwell, Mike

6   Cornwell, and RDF trustee Steve Gaines) to take physical possession of Plaintiff's

7   inventory from Los Angeles, California, including tangible copies of the Works, and

8   assigning to RDF certain of Plaintiff's assets including written copyright assignments as

9   to certain of the Works, including those attached hereto in **Exhibit "C",** before Plaintiff

10  was ever paid any of the agreed upon and promised monetary consideration for its

11  inventory, the transfer thereof, or for Plaintiff's incurred costs and liabilities, as promised

12  by these Defendants.  Attached hereto and incorporated by reference herein as **Exhibit**

13  **"C"** are true and correct copies of the two (2) short form copyright assignments Plaintiff

14  executed in Los Angeles, California in favor of RDF in reliance upon such

15  misrepresentations.

16          30.   At the time the representations were made and Plaintiff entered into the

17  agreement, and at subsequent times when Robin Cornwell and RDF agents Mike

18  Cornwell and Steve Gaines on behalf of RDF came to Los Angeles to take physical

19  possession of Plaintiff's assets, including written copyright assignments, Timonen and

20  Norton on behalf of Plaintiff did not know the material representations or material

21  omissions of fact by Dawkins, Robin Cornwell, Mike Cornwell and Steve Gaines on

22  behalf of Defendant RDF were false, but believed them to be true and reasonably relied

10

1    on them.  Had they known the true facts, they would not have rendered performance on

2    behalf of Plaintiff without consideration.

3         31.    It was only after Plaintiff fully performed in Los Angeles, California the

4    agreement, and all of such inventory had been removed from Plaintiff's place of business

5    in Los Angeles, that they discovered Defendant RDF had no intention of "buy[ing] out

6    the store" or providing the promised consideration or paying the agreed consideration to

7    Plaintiff for its inventory, the transfer thereof, including the costs and liabilities incurred

8    by Plaintiff as a result of the conveyance, transfer and assignment of assets to RDF and

9    related matters, as promised by the Dawkins Defendants.

10        32.    Without any legal right or justification and in contravention of the

11   contractual agreement between the parties, Defendant RDF fraudulently acquired

12   Plaintiff's assets, including Plaintiff's inventory consisting of Plaintiff's tangible copies

13   of the Works, *inter alia*, and copyright assignments for certain works attached hereto as

14   **Exhibit "C,"** and commenced selling Plaintiff's assets to the public, including

15   unauthorized copies of Plaintiff's copyrighted Works, without ever having provided the

16   promised monetary consideration or compensation to Plaintiff, as promised by the

17   Dawkins Defendants to Timonen and Norton on behalf of Plaintiff in Los Angeles.

18        33.    Apart from the two short form copyright assignments attached hereto as

19   **Exhibit "C,"** pertaining to those Works entitled "Atheist Alliance International (AAI)

20   2007" (PA1609844, 2007) and "Pat Condell Anthology Feb. 2007 - Feb. 2008"

21   (PA1646005, 2008), which were obtained on the basis of the fraud of Dawkins

22

FIRST AMENDED COMPLAINT

1   Defendants herein, there are no other documents purportedly transferring any of

2   Plaintiff's copyright interests in or to any of the Works to Defendants RDF.

3       34.   Plaintiff is the owner of all exclusive rights under 17 U.S.C. § 106 in and to

4   all the Works.

5       35.   Due to the fraud of Dawkins Defendants, much of which occurred in Los

6   Angeles, as specifically alleged above, no consideration supports any transfer,

7   conveyance or assignment of any copyrights in the Works to Dawkins Defendants.

8       36.   Starting in or about June 2010, after having absconded with Plaintiff's

9   assets from Los Angeles, California, the Dawkins Defendants began exploiting,

10  reproducing, performing, adapting, selling and distributing the copyrighted material in

11  the Works in DVD format in the United States.  On information and belief, in or about

12  June 2010, the Dawkins Defendants by and through Robin Cornwell and Mike Cornwell

13  formally organized RDF Store and began utilizing RDF Store for the purpose of selling

14  Plaintiff's assets to the public.  Unless enjoined or restrained, Defendants' conduct

15  threatens to further infringe Plaintiff's copyright interests.

16      37.   In or about June 2010, and again in or about November 2010, Plaintiff

17  demanded and again reiterated to Idea Media in writing by email that RDF did not have

18  authorization from Plaintiff to orders copies of the Works.  Idea Media ignored Plaintiff's

19  assertion of exclusive rights and, on information and belief, has thereafter copied and

20  distributed copies of the Works to RDF without Plaintiff's authorization.

21      38.   Plaintiff demanded RDF to immediately return Plaintiff's assets.

22  Beginning in or about June 2010, and until October 2010, Plaintiff and the Dawkins

12

1    Defendants engaged in settlement discussions in an effort to reach an amicable resolution

2    to the dispute that arose among the parties as a result of the Dawkins Defendants having

3    fraudulently obtained Plaintiff's assets.

4         39.   Plaintiff has notified Defendants that they are not authorized to exploit,

5    reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them, and

6    Plaintiff has demanded that they cease and desist from any such potential infringement of

7    Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, but Plaintiff is

8    informed and believes and on that basis alleges that Defendants continue to maintain

9    otherwise including their right to continue distributing and exploiting the Works without

10   Plaintiff's authorization and in infringement of Plaintiff's exclusive rights.

11        40.   None of the Defendants are authorized by Plaintiff to exploit, reproduce,

12   adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them.

13        41.   In or about October, 2010, Dawkins and RDF filed a civil lawsuit against

14   Timonen, Norton, and Upper Branch Productions, Inc. in Los Angeles Superior Court,

15   bearing case no. EC054190, in part to seek a declaration of ownership of the copyrights

16   between these parties.  One such complaint filed in such action in October, 2010, filed by

17   Dawkins and RDF against Timonen, et al., alleged as follows, in pertinent part:

18        •   "On July 15, 2010, [Timonen, Norton, and Upper Branch's] lawyer, Alan

19             Abrams, Esq., sent an email to [RDF and Dawkins'] litigation counsel

20             suggesting that "the RDF website (which . . . was created by Mr. Timonen)

21             . . ., merchandise using the RDF logo created by Mr. Timonen, and audio-

22             visual and musical materials created and produced by Mr. Timonen" are all

1      "Mr. Timonen's intellectual property rights" which have not been
2      transferred or assigned to [RDF or Dawkins."

3    •  "In fact, all "intellectual property" Defendant Timonen created for
4      [Dawkins and RDF] at all times and for any purpose is a 'work for hire'
5      commissioned and paid for by [Dawkins and RDF].  Consequently, any
6      copyrights, trademarks or other intellectual property rights pertaining to
7      logos, merchandise, 'audio-visual or musical materials created and
8      produced by Mr. Timonen" for [the online store, RDF or Dawkins] belong
9      to [RDF and Dawkins]."

10   •  "An actual controversy had arisen and now exists between [RDF and
11     Dawkins] and [Timonen, Norton, and Upper Branch].  [RDF and Dawkins]
12     contend all of the intellectual property, logos, trademarks, copyrights,
13     merchandise, music and audio-visual materials [Timonen, Norton, and
14     Upper Branch] created for [RDF and Dawkins], any of [the] websites and
15     [the online store] were 'works made for hire' that belong to [RDF and
16     Dawkins.] . . . (the 'Contested Rights')."

17   •  Accordingly, Dawkins and RDF requested, *inter alia*, "[f]or a judgment
18     declaring all the Contested Rights belong to [Dawkins and RDF] and
19     invalidating any purported or recorded claim of [Timonen, Norton, and
20     Upper Branch] in or to the Contested Rights."

21

22

42.     In or about August 2011, Dawkins and RDF's complaint in EC054190 was dismissed with prejudice in favor of Timonen, Norton, and Plaintiff and costs to Timonen, Norton and Plaintiff were awarded.

43.     Plaintiff is informed and believes and on that basis alleges that Defendant IWI has infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works by exploiting, reproducing, performing, adapting, selling and/or distributing, without proper authorization, Plaintiff's Works, to and/or for Defendants RDF and RDF Store, so that these Defendants can exploit, reproduce, perform, adapt, sell and/or distribute these unauthorized copies of Plaintiff's Works to the public via Defendant RDF and/or RDF Store's website, on the internet, and at conventions, and public lectures, among other ways, in further infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works.

44.     Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendant IWI of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants RDF and RDF Store are vicariously infringing the Works.   Plaintiff is informed and believes and on that basis alleges that Defendants RDF and/or RDF Store have profited directly from the infringing activity of Defendant IWI because these Defendants by and through Robin Cornwell and/or Mike Cornwell with approval or authorization of all Dawkins' Defendants place orders with IWI for copies of the Works and thereafter sell the same to the public for profit, *inter alia*.   As a result, these Defendants have the right and ability to control the infringing activity of Defendant IWI, and they have failed to exercise that right and ability.

15

45.     Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendant IWI of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants RDF, RDF Store, Robin Cornwell, and Mike Cornwell have induced, caused, encouraged, and/or materially contributed to the same. Plaintiff is informed and believes and on that basis alleges that these Defendants have falsely represented to IWI that RDF is the copyright owner of the Works in order to induce IWI to manufacture copies of Plaintiff's Works for RDF and/or RDF Store, and have instructed IWI to remove and/or "black out" Plaintiff's logo from the artwork accompanying the DVD packaging of certain Works, and/or attach "new artwork or packaging" created by RDF to Plaintiff's Works, *inter alia.*  Plaintiff is informed and believes and on that basis alleges that these Defendants knew or had reason to know of the infringing activity of IWI but took steps to avoid acknowledging the infringing activity and instead intentionally induced and/or materially contributed to IWI's infringing activity.

46.     Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendants RDF and RDF Store of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants Robin Cornwell and Mike Cornwell are vicariously infringing the Works because these Defendants are employed by Defendants RDF and/or RDF Store and they have directed and/or supervised RDF and/or RDF Store's sales, distribution and/or exploitation of the unauthorized copies of the Works.

1    47.    Plaintiff is informed and believes and on that basis alleges with respect to

2    the direct infringement by Defendants RDF and RDF Store of Plaintiff's exclusive rights

3    under 17 U.S.C. § 106 in and to the Works, Defendants IWI, Robin Cornwell, and Mike

4    Cornwell have induced, caused, encouraged, and/or materially contributed to the same.

5    Plaintiff is informed and believes and on that basis alleges that these Defendants knew or

6    had reason to know of the infringing activity of RDF and RDF Store but took steps to

7    avoid acknowledging the infringing activity and instead intentionally induced and/or

8    materially contributed to the infringing activity of RDF and RDF Store.

9    48.    Defendants acts of direct and indirect copyright infringement of Plaintiff's

10   exclusive rights under 17 U.S.C. § 106 in and to the Works have been willful, intentional,

11   and purposeful, in knowing disregard of Plaintiff's rights under the Copyright Act.

12   49.    By reason of the Defendants' infringement and threatened infringement,

13   Plaintiff has sustained and will continue to sustain substantial injury, loss and damage to

14   their ownership rights in the Works.

15   50.    Further irreparable harm to Plaintiff is imminent as a result of Defendants'

16   conduct, and Plaintiff is without an adequate remedy at law.  Plaintiff is entitled to an

17   injunction restraining Defendants, their officers, directors, agents, employees,

18   representatives and all persons acting in concert with them from engaging in further such

19   acts of copyright infringement.

20   51.    Plaintiff is further entitled to recover from Defendants the damages

21   sustained by Plaintiff as a result of Defendants' acts of copyright infringement.  Plaintiff

22   is at present unable to ascertain the full extent of the monetary damage it has suffered by

1   reason of Defendants' acts of copyright infringement, but Plaintiff is informed and

2   believes, and on the basis of such information and belief alleges, that Plaintiff has

3   sustained damage in an amount exceeding $500,000.

4        52.     Plaintiff is further entitled to recover from Defendants the gains, profits and

5   advantages it has obtained as a result of its acts of copyright infringement.  Plaintiff is at

6   present unable to ascertain the full extent of the gains, profits and advantages Defendants

7   have obtained by reason of their acts of copyright infringement, but Plaintiff is informed

8   and believes, and on the basis of such information and belief alleges, that Defendants

9   have obtained such gains, profits and advantages in an amount exceeding $500,000.

10                          **CLAIMS FOR RELIEF**

11                       **FIRST CLAIM FOR RELIEF**

12          **(DIRECT COPYRIGHT INFRINGEMENT IN VIOLATION OF THE**

13                  **COPYRIGHT ACT, 17 U.S.C. §§ 101, *ET SEQ.*)**

14                 **[Against Defendants IWI, RDF, and RDF Store]**

15        53.     Plaintiff realleges and incorporates by reference the allegations contained in

16   Paragraphs 1 through 52, inclusive, as if fully set forth herein.

17        54.     Plaintiff owns valid copyrights in and to each of the fifteen (15) DVDs,

18   artwork, DVD menus, and other audiovisual works at issue here, and these works have

19   been registered with the United States Copyright Office.  Attached hereto collectively as

20   **Exhibit "A"** are the copyright certificates for the fifteen (15) works (collectively referred

21   to herein as the "Works").

22

55.     Each of the Works contains a large number of creative elements wholly original to Plaintiff and which are copyrightable subject matter under the laws of the United States.

56.     Plaintiff is (a) the assignee of any and all intellectual property rights in the Works including all rights under copyright of Timonen, individually and d/b/a Upper Branch, created prior to the formal incorporation of Plaintiff Upper Branch; and (b) the copyright owner of the results and proceeds of Timonen's services following such incorporation.

57.     Plaintiff deposited "master" copies of Plaintiff's Works and "master" computer files of the artwork created by Plaintiff to accompany the Works with Idea Media Services, LLC ("Idea Media"), now Defendant IWI, with advance instruction that from those master copies and files, Idea Media would create and duplicate copies of the Works on a per-order basis as authorized by Timonen or Norton on behalf of Plaintiff.

58.     Idea Media knew that only Plaintiff could place orders for the Works, and that no third parties, including the Dawkins Defendants, could place orders for copies of the Works without the express consent and authorization of Plaintiff.

59.     The Dawkins Defendants knew that Plaintiff had deposited its master materials with Idea Media.

60.     In or about June 2010, certain Dawkins Defendants came to Los Angeles, California and took physical possession of Plaintiff's assets, including tangible copies of the Works, *inter alia*, under a false promise to "buy out the store."

61.     Starting in or about June 2010, after having absconded with Plaintiff's assets from Los Angeles, California, Dawkins Defendants began exploiting, reproducing, performing, adapting, selling and distributing the copyrighted material in the Works in DVD format in the United States.  On information and belief, in or about June 2010, the Dawkins Defendants by and through Robin Cornwell and Mike Cornwell formally organized RDF Store and began utilizing RDF Store for the purpose of selling Plaintiff's assets to the public.  Unless enjoined or restrained, Defendants' conduct threatens to further infringe Plaintiff's copyright interests.

62.     In or about June 2010, and again in or about November 2010, Plaintiff demanded and again reiterated to Idea Media in writing by email that RDF did not have authorization from Plaintiff to orders copies of the Works.  Idea Media ignored Plaintiff's assertion of exclusive rights and, on information and belief, has thereafter copied and distributed copies of the Works to RDF without Plaintiff's authorization.

63.     Plaintiff demanded RDF to immediately return Plaintiff's assets. Beginning in or about June 2010, and until October 2010, Plaintiff and the Dawkins Defendants engaged in settlement discussions in an effort to reach an amicable resolution to the dispute that arose among the parties as a result of the Dawkins Defendants having fraudulently obtained Plaintiff's assets.

64.     Plaintiff has notified Defendants that they are not authorized to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them, and Plaintiff has demanded that they cease and desist from any such potential infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, but Plaintiff is

1   informed and believes and on that basis alleges that Defendants continue to maintain

2   otherwise including their right to continue distributing and exploiting the Works without

3   Plaintiff's authorization and in infringement of Plaintiff's exclusive rights.

4        65.    None of the Defendants are authorized by Plaintiff to exploit, reproduce,

5   adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them.

6        66.    In or about October 2010, Dawkins and RDF filed a civil lawsuit against

7   Timonen, Norton, and Upper Branch Productions, Inc. in Los Angeles Superior Court,

8   bearing case no. EC054190, in part to seek a declaration of ownership of the copyrights

9   between these parties.  One such complaint in such action filed by Dawkins and RDF

10  against Timonen, et al., alleged as follows, in pertinent part:

11       • "On July 15, 2010, [Timonen, Norton, and Upper Branch's] lawyer, Alan

12          Abrams, Esq., sent an email to [RDF and Dawkins'] litigation counsel

13          suggesting that "the RDF website (which . . . was created by Mr. Timonen)

14          . . ., merchandise using the RDF logo created by Mr. Timonen, and audio-

15          visual and musical materials created and produced by Mr. Timonen" are all

16          "Mr. Timonen's intellectual property rights" which have not been

17          transferred or assigned to [RDF or Dawkins]."

18       • "In fact, <u>all</u> "intellectual property" Defendant Timonen created for

19          [Dawkins and RDF] at <u>all</u> times and for <u>any</u> purpose is a 'work for hire'

20          commissioned and paid for by [Dawkins and RDF].  Consequently, any

21          copyrights, trademarks or other intellectual property rights pertaining to

22          logos, merchandise, 'audio-visual or musical materials created and

21

produced by Mr. Timonen" for [the online store, RDF or Dawkins] belong

to [RDF and Dawkins]."

- "An actual controversy had arisen and now exists between [RDF and Dawkins] and [Timonen, Norton, and Upper Branch].  [RDF and Dawkins] contend all of the intellectual property, logos, trademarks, copyrights, merchandise, music and audio-visual materials [Timonen, Norton, and Upper Branch] created for [RDF and Dawkins], any of [the] websites and [the online store] were 'works made for hire' that belong to [RDF and Dawkins.] . . . (the 'Contested Rights')."

- Accordingly, Dawkins and RDF requested, *inter alia*, "[f]or a judgment declaring all the Contested Rights belong to [Dawkins and RDF] and invalidating any purported or recorded claim of [Timonen, Norton, and Upper Branch] in or to the Contested Rights."

67.    In or about August 2011, Dawkins and RDF's complaint in EC054190 was dismissed with prejudice in favor of Timonen, Norton, and Plaintiff and costs to Timonen, Norton and Plaintiff were awarded.

68.    Plaintiff is informed and believes and on that basis alleges that Defendant IWI has infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works by exploiting, reproducing, performing, adapting, selling and/or distributing, without proper authorization, Plaintiff's Works, to and/or for Defendants RDF and RDF Store, so that these Defendants can exploit, reproduce, perform, adapt, sell and/or distribute these unauthorized copies of Plaintiff's Works to the public via Defendant RDF and/or RDF

22

1    Store's website, on the internet, and at conventions, and public lectures, among other

2    ways, in further infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and

3    to the Works.

4            69.    Defendants acts of direct copyright infringement of Plaintiff's exclusive

5    rights under 17 U.S.C. § 106 in and to the Works have been willful, intentional, and

6    purposeful, in knowing disregard of Plaintiff's rights under the Copyright Act.

7            70.    By reason of the Defendants' infringement and threatened future

8    infringement, Plaintiff has sustained and will contribute to sustain substantial injury, loss

9    and damage to their ownership rights in the Works.

10           71.    Further irreparable harm to Plaintiff is imminent as a result of Defendants'

11   conduct, and Plaintiff is without an adequate remedy at law.  Plaintiff is entitled to an

12   injunction restraining Defendants, their officers, directors, agents, employees,

13   representatives and all persons acting in concert with them from engaging in further such

14   acts of copyright infringement.

15           72.    Plaintiff is further entitled to recover from Defendants the damages

16   sustained by Plaintiff as a result of Defendants' acts of copyright infringement.  Plaintiff

17   is at present unable to ascertain the full extent of the monetary damage it has suffered by

18   reason of Defendants' acts of copyright infringement, but Plaintiff is informed and

19   believes, and on the basis of such information and belief alleges, that Plaintiff has

20   sustained damage in an amount exceeding $500,000.

21           73.    Plaintiff is further entitled to recover from Defendants the gains, profits and

22   advantages it has obtained as a result of its acts of copyright infringement.  Plaintiff is at

1    present unable to ascertain the full extent of the gains, profits and advantages Defendants

2    have obtained by reason of their acts of copyright infringement, but Plaintiff is informed

3    and believes, and on the basis of such information and belief alleges, that Defendants

4    have obtained such gains, profits and advantages in an amount exceeding $500,000.

5    **SECOND CLAIM FOR RELIEF**

6    **(CONTRIBUTORY COPYRIGHT INFRINGEMENT)**

7    **[Against ALL Defendants EXCEPT IWI]**

8    74.    Plaintiff realleges and incorporates by reference the allegations contained in

9    Paragraphs 1 through 52, inclusive, as if fully set forth herein.

10    75.    Plaintiff owns valid copyrights in and to each of the fifteen (15) DVDs,

11    artwork, DVD menus, and other audiovisual works at issue here, and these works have

12    been registered with the United States Copyright Office.  Attached hereto collectively as

13    **Exhibit "A"** are the copyright certificates for the fifteen (15) works (collectively referred

14    to herein as the "Works").

15    76.    Each of the Works contains a large number of creative elements wholly

16    original to Plaintiff and which are copyrightable subject matter under the laws of the

17    United States.

18    77.    Plaintiff is (a) the assignee of any and all intellectual property rights in the

19    Works including all rights under copyright of Timonen, individually and d/b/a Upper

20    Branch, created prior to the formal incorporation of Plaintiff Upper Branch; and (b) the

21    copyright owner of the results and proceeds of Timonen's services following such

22    incorporation.

78.     Plaintiff deposited "master" copies of Plaintiff's Works and "master" computer files of the artwork created by Plaintiff to accompany the Works with Idea Media Services, LLC ("Idea Media"), now Defendant IWI, with advance instruction that from those master copies and files, Idea Media would create and duplicate copies of the Works on a per-order basis as authorized by Timonen or Norton on behalf of Plaintiff.

79.     Idea Media knew that only Plaintiff could place orders for the Works, and that no third parties, including the Dawkins Defendants, could place orders for copies of the Works without the express consent and authorization of Plaintiff.

80.     The Dawkins Defendants knew that Plaintiff had deposited its master materials with Idea Media.

81.     In or about June 2010, Dawkins Defendants came to Los Angeles, California and took physical possession of Plaintiff's assets, including tangible copies of the Works, *inter alia*, under a false promise to "buy out the store."

82.     Starting in or about June 2010, after having absconded with Plaintiff's assets from Los Angeles, California, Dawkins Defendants began exploiting, reproducing, performing, adapting, selling and distributing the copyrighted material in the Works in DVD format in the United States.  On information and belief, in or about June 2010, the Dawkins Defendants by and through Robin Cornwell and Mike Cornwell formally organized RDF Store and began utilizing RDF Store for the purpose of selling Plaintiff's assets to the public.  Unless enjoined or restrained, Defendants' conduct threatens to further infringe Plaintiff's copyright interests.

83.     In or about June 2010, and again in or about November 2010, Plaintiff demanded and again reiterated to Idea Media in writing by email that RDF did not have authorization from Plaintiff to orders copies of the Works.  Idea Media intentionally ignored Plaintiff's assertion of exclusive rights and, on information and belief, has continually copied and distributed copies of the Works to RDF without Plaintiff's authorization.

84.     Plaintiff demanded RDF to immediately return Plaintiff's assets. Beginning in or about June 2010, and until October 2010, Plaintiff and the Dawkins Defendants engaged in settlement discussions in an effort to reach an amicable resolution to the dispute that arose among the parties as a result of the Dawkins Defendants having fraudulently obtained Plaintiff's assets.

85.     Plaintiff has notified Defendants that they are not authorized to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them, and Plaintiff has demanded that they cease and desist from any such potential infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, but Plaintiff is informed and believes and on that basis alleges that Defendants continue to maintain otherwise including their right to continue distributing and exploiting the Works without Plaintiff's authorization and in infringement of Plaintiff's exclusive rights.

86.     None of the Defendants are authorized by Plaintiff to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them.

87.     Plaintiff is informed and believes and on that basis alleges that Defendant IWI has infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works

26

1   by exploiting, reproducing, performing, adapting, selling and/or distributing, without

2   proper authorization, Plaintiff's Works, to and/or for Defendants RDF and RDF Store, so

3   that these Defendants can exploit, reproduce, perform, adapt, sell and/or distribute these

4   unauthorized copies of Plaintiff's Works to the public via Defendant RDF and/or RDF

5   Store's website, on the internet, and at conventions, and public lectures, among other

6   ways, in further infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and

7   to the Works.

8       88.    Plaintiff is informed and believes and on that basis alleges with respect to

9   the direct infringement by Defendant IWI of Plaintiff's exclusive rights under 17 U.S.C.

10  § 106 in and to the Works, Defendants Dawkins, RDF, RDF Store, Robin Cornwell, and

11  Mike Cornwell have intentionally induced, caused, encouraged, and/or materially

12  contributed to the same.  Plaintiff is informed and believes and on that basis alleges that

13  these Defendants have falsely represented to IWI that RDF is the copyright owner of the

14  Works in order to induce IWI to manufacture copies of Plaintiff's Works for RDF and/or

15  RDF Store, and have instructed IWI to remove and/or "black out" Plaintiff's logo from

16  the artwork accompanying the DVD packaging of certain Works, and/or attach "new

17  artwork or packaging" created by RDF to Plaintiff's Works, *inter alia*.  Plaintiff is

18  informed and believes and on that basis alleges that these Defendants knew or had reason

19  to know of the infringing activity of direct infringing defendant IWI but intentionally

20  induced and/or materially contributed to infringing defendant IWI's infringing activity.

21      89.    Plaintiff is informed and believes and on that basis alleges with respect to

22  the direct infringement by Defendants RDF and RDF Store of Plaintiff's exclusive rights

27

under 17 U.S.C. § 106 in and to the Works, Defendants Dawkins, IWI, Robin Cornwell, and Mike Cornwell have intentionally induced, caused, encouraged, and/or materially contributed to the same. Plaintiff is informed and believes and on that basis alleges that these Defendants knew or had reason to know of the infringing activity of RDF and RDF Store but intentionally induced and/or materially contributed to the infringing activity of direct infringing defendants RDF and RDF Store.

90.    Defendants acts of indirect copyright infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works have been willful, intentional, and purposeful, in knowing disregard of Plaintiff's rights under the Copyright Act.

91.    By reason of the Defendants' infringement and threatened infringement, Plaintiff has sustained and will contribute to sustain substantial injury, loss and damage to their ownership rights in the Works.

92.    Further irreparable harm to Plaintiff is imminent as a result of Defendants' conduct, and Plaintiff is without an adequate remedy at law.  Plaintiff is entitled to an injunction restraining Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of copyright infringement.

93.    Plaintiff is further entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' acts of copyright infringement.  Plaintiff is at present unable to ascertain the full extent of the monetary damage it has suffered by reason of Defendants' acts of copyright infringement, but Plaintiff is informed and

1   believes, and on the basis of such information and belief alleges, that Plaintiff has

2   sustained damage in an amount exceeding $500,000.

3         94.    Plaintiff is further entitled to recover from Defendants the gains, profits and

4   advantages it has obtained as a result of its acts of copyright infringement.  Plaintiff is at

5   present unable to ascertain the full extent of the gains, profits and advantages Defendants

6   have obtained by reason of their acts of copyright infringement, but Plaintiff is informed

7   and believes, and on the basis of such information and belief alleges, that Defendants

8   have obtained such gains, profits and advantages in an amount exceeding $500,000.

9   **THIRD CLAIM FOR RELIEF**

10  **(VICARIOUS COPYRIGHT INFRINGEMENT)**

11  **[Against ALL Defendants EXCEPT IWI and Dawkins]**

12        95.    Plaintiff realleges and incorporates by reference the allegations contained in

13  Paragraphs 1 through 52, inclusive, as if fully set forth herein.

14        96.    Plaintiff owns valid copyrights in and to each of the fifteen (15) DVDs,

15  artwork, DVD menus, and other audiovisual works at issue here, and these works have

16  been registered with the United States Copyright Office.  Attached hereto collectively as

17  **Exhibit "A"** are the copyright certificates for the fifteen (15) works (collectively referred

18  to herein as the "Works").

19        97.    Each of the Works contains a large number of creative elements wholly

20  original to Plaintiff and which are copyrightable subject matter under the laws of the

21  United States.

22

98.     Plaintiff is (a) the assignee of any and all intellectual property rights in the Works including all rights under copyright of Timonen, individually and d/b/a Upper Branch, created prior to the formal incorporation of Plaintiff Upper Branch; and (b) the copyright owner of the results and proceeds of Timonen's services following such incorporation.

99.     Plaintiff deposited "master" copies of Plaintiff's Works and "master" computer files of the artwork created by Plaintiff to accompany the Works with Idea Media Services, LLC ("Idea Media"), now Defendant IWI, with advance instruction that from those master copies and files, Idea Media would create and duplicate copies of the Works on a per-order basis as authorized by Timonen or Norton on behalf of Plaintiff.

100.     Idea Media knew that only Plaintiff could place orders for the Works, and that no third parties, including the Dawkins Defendants, could place orders for copies of the Works without the express consent and authorization of Plaintiff.

101.     The Dawkins Defendants knew that Plaintiff had deposited its master materials with Idea Media.

102.     In or about June 2010, the Dawkins Defendants came to Los Angeles, California and took physical possession of Plaintiff's assets, including tangible copies of the Works, *inter alia*, under a false promise to "buy out the store".

103.     Starting in or about June 2010, after having absconded with Plaintiff's assets from Los Angeles, California, the Dawkins Defendants began exploiting, reproducing, performing, adapting, selling and distributing the copyrighted material in the Works in DVD format in the United States.  On information and belief, in or about

June 2010, the Dawkins Defendants by and through Robin Cornwell and Mike Cornwell formally organized RDF Store and began utilizing RDF Store for the purpose of selling Plaintiff's assets to the public.  Unless enjoined or restrained, Defendants' conduct threatens to further infringe Plaintiff's copyright interests.

104.   In or about June 2010, and again in or about November 2010, Plaintiff demanded and again reiterated to Idea Media in writing by email that RDF did not have authorization from Plaintiff to orders copies of the Works.  Idea Media intentionally ignored Plaintiff's assertion of exclusive rights and, on information and belief, has continually copied and distributed copies of the Works to RDF without Plaintiff's authorization.

105.  Plaintiff demanded RDF to immediately return Plaintiff's assets. Beginning in or about June 2010, and until October 2010, Plaintiff and the Dawkins Defendants engaged in settlement discussions in an effort to reach an amicable resolution to the dispute that arose among the parties as a result of the Dawkins Defendants having fraudulently obtained Plaintiff's assets.

106.   Plaintiff has notified Defendants that they are not authorized to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them, and Plaintiff has demanded that they cease and desist from any such potential infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, but Plaintiff is informed and believes and on that basis alleges that Defendants continue to maintain otherwise including their right to continue distributing and exploiting the Works without Plaintiff's authorization and in infringement of Plaintiff's exclusive rights.

31

107.   None of the Defendants are authorized by Plaintiff to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them.

108.   Plaintiff is informed and believes and on that basis alleges that Defendant IWI has infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works by exploiting, reproducing, performing, adapting, selling and/or distributing, without proper authorization, Plaintiff's Works, to and/or for Defendants RDF and RDF Store, so that these Defendants can exploit, reproduce, perform, adapt, sell and/or distribute these unauthorized copies of Plaintiff's Works to the public via Defendant RDF and/or RDF Store's website, on the internet, and at conventions, and public lectures, among other ways, in further infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works.

109.   Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendant IWI of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants RDF and RDF Store are vicariously infringing the Works.   Plaintiff is informed and believes and on that basis alleges that Defendants RDF and/or RDF Store are profiting directly from the infringing activity of Defendant IWI because these Defendants by and through Robin Cornwell and/or Mike Cornwell place orders with IWI for copies of the Works and thereafter sell the same to the public for profit, *inter alia*.   As a result, these Defendants have the right and ability to control the infringing activity of Defendant IWI, and they have failed to exercise that right and ability.

110.   Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendants RDF and RDF Store of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants Robin Cornwell and Mike Cornwell are vicariously infringing the Works because these Defendants are employed by Defendants RDF and/or RDF Store and they have directed and/or supervised RDF and/or RDF Store's sales, distribution and/or exploitation of the unauthorized copies of the Works.

111.   Defendants acts of indirect copyright infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works have been willful, intentional, and purposeful, in knowing disregard of Plaintiff's rights under the Copyright Act.

112.   By reason of the Defendants' infringement and threatened infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss and damage to their ownership rights in the Works.

113.   Further irreparable harm to Plaintiff is imminent as a result of Defendants' conduct, and Plaintiff is without an adequate remedy at law.  Plaintiff is entitled to an injunction restraining Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of copyright infringement.

114.   Plaintiff is further entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' acts of copyright infringement.  Plaintiff is at present unable to ascertain the full extent of the monetary damage it has suffered by reason of Defendants' acts of copyright infringement, but Plaintiff is informed and

33

1   believes, and on the basis of such information and belief alleges, that Plaintiff has

2   sustained damage in an amount exceeding $500,000.

3       115.   Plaintiff is further entitled to recover from Defendants the gains, profits and

4   advantages it has obtained as a result of its acts of copyright infringement.  Plaintiff is at

5   present unable to ascertain the full extent of the gains, profits and advantages Defendants

6   have obtained by reason of their acts of copyright infringement, but Plaintiff is informed

7   and believes, and on the basis of such information and belief alleges, that Defendants

8   have obtained such gains, profits and advantages in an amount exceeding $500,000.

9                        **FOURTH CLAIM FOR RELIEF**

10                              **(FRAUD)**

11           **[Against Defendants  RDF, Dawkins, and Robin Cornwell]**

12      116.   Plaintiff realleges and incorporates by reference the allegations contained in

13   Paragraphs 1 through 52, inclusive, as if fully set forth herein.

14      117.   Plaintiff owns valid copyrights in and to each of the fifteen (15) DVDs,

15   artwork, DVD menus, and other audiovisual works at issue here, and these works have

16   been registered with the United States Copyright Office.  Attached hereto collectively as

17   **Exhibit "A"** are the copyright certificates for the fifteen (15) works (collectively referred

18   to herein as the "Works").

19      118.   Each of the Works contains a large number of creative elements wholly

20   original to Plaintiff and which are copyrightable subject matter under the laws of the

21   United States.

22

FIRST AMENDED COMPLAINT

119.   Plaintiff is (a) the assignee of any and all intellectual property rights in the Works including all rights under copyright of Timonen, individually and d/b/a Upper Branch, created prior to the formal incorporation of Plaintiff Upper Branch; and (b) the copyright owner of the results and proceeds of Timonen's services following such incorporation.

120.   Plaintiff deposited "master" copies of Plaintiff's Works and "master" computer files of the artwork created by Plaintiff to accompany the Works with Idea Media Services, LLC ("Idea Media"), now Defendant IWI, with advance instruction that from those master copies and files, Idea Media would create and duplicate copies of the Works on a per-order basis as authorized by Timonen or Norton on behalf of Plaintiff.

121.   Idea Media knew that only Plaintiff could place orders for the Works, and that no third parties, including the Dawkins Defendants, could place orders for copies of the Works without the express consent and authorization of Plaintiff.

122.   The Dawkins Defendants knew that Plaintiff had deposited its master materials with Idea Media.

123.   In or about 2006, Dawkins and Timonen orally agreed that Timonen would design and develop from Los Angeles, California, two websites, one for Dawkins, personally, and one for Dawkins' anticipated namesake foundation, Defendant RDF. Timonen was paid as an independent contractor for these website services.

124.   In or about June 2007, Dawkins and Robin Cornwell orally agreed with Timonen that Timonen d/b/a Upper Branch would create and operate, independently and autonomously from Dawkins and his namesake foundation, RDF, an online store ("Upper

1   Branch Store") from Los Angeles, California, and that Timonen d/b/a Upper Branch and

2   Timonen's employees would create the products that would be sold in the Upper Branch

3   Store.   After formal incorporation, Plaintiff took over operations of the Los Angeles

4   based online Upper Branch Store.

5      125.   All products sold in the Upper Branch Store publicized the issues and

6   cause(s) supported and advanced by Dawkins and RDF but Dawkins made clear that, in

7   Dawkins' own words, the Upper Branch Store was "not directly concerned with

8   RDF[]'[s] activities."

9      126.   At all times hereunder, Plaintiff was an independent business (independent

10   from RDF, et al.), and Mr. Timonen autonomously ran and operated the Upper Branch

11   Store from a location within Los Angeles, California. No Dawkins Defendant was an

12   owner or officer of Plaintiff.

13      127.   Timonen proposed to Dawkins that certain profits of the Upper Branch

14   Store operation could possibly be donated to RDF.   In response, on or about July 25,

15   2007, Dawkins emailed Timonen in Los Angeles: "it's your baby, your profits, your tax .

16   . . as for whether Upper Branch should make a donation to RDF[], I don't think you

17   should feel any moral obligations in that regard."

18      128.   The Works were created over the course of the next two years and Plaintiff

19   sold copies of the Works to the public from the online Upper Branch Store, among other

20   ways.

21      129.   In or about December 2009, Defendants Dawkins and Robin Cornwell, on

22   behalf of RDF *inter alia*, asserted an interest in purchasing certain assets of Plaintiff.  In

connection therewith, Defendant Robin Cornwell and other RDF trustees represented to Timonen and Norton who were in Los Angeles at the time that RDF had obtained its 501(c)(3) status and had been "uncoupled" from the United Kingdom sister foundation, which purportedly allowed RDF to profit from the sale of merchandise.

130.   Correspondingly, in or about December 2009, Dawkins and Robin Cornwell on behalf of RDF orally and by email agreed with Timonen and Norton on behalf of Plaintiff in Los Angeles "to buy out the store" and that upon the condition and in consideration for the transfer of certain assets of Plaintiff's, including Plaintiff's inventory of tangible copies of the Works, and written copyright assignments, Defendant RDF would "buy out the store" and provide monetary consideration to Plaintiff and compensate Plaintiff for all of its inventory and the costs and liabilities incurred by Plaintiff as a result of the conveyance, transfer and assignment of assets to RDF and related matters.   A true and correct copy of an email sent by Elisabeth Cornwell (on behalf of all Dawkins Defendants) to Josh Timonen and Maureen Norton who were in Los Angeles on December 29, 2009 is attached hereto and incorporated by reference herein as **Exhibit "B**."   Plaintiffs are informed and believe and on that basis allege that this email was sent with the approval of Dawkins, and that such email would not have been sent to Timonen and Norton in Los Angeles without his authority and the authority of all other Dawkins Defendants herein.

131.   Starting in or about December 2009, and subsequently thereafter, Defendants Dawkins and Robin Cornwell on behalf of Defendant RDF at all times materially represented by telephone and email and led Timonen and Norton, who were in

1    Los Angeles at the time, on behalf of Plaintiff to believe and reasonably rely on

2    Defendants' material representations that in consideration for the conveyance, transfer

3    and assignment of assets from Plaintiff to RDF, including written copyright assignments,

4    RDF would provide monetary consideration to Plaintiff and compensate Plaintiff for all

5    of its inventory and costs and liabilities it incurred as a result of the conveyance, transfer

6    and assignment of assets to RDF and related matters.

7        132.   In reasonable reliance upon the foregoing material representations and

8    assurances from Defendants Dawkins and Robin Cornwell, on behalf of Defendant RDF,

9    that the Plaintiff would receive monetary consideration for the conveyance, transfer, and

10   assignment of assets to RDF, Timonen and Norton reasonably having no reason to

11   believe that such telephone and email representations made by Dawkins and Robin

12   Cornwell on behalf of Defendant RDF were false in any way, were on behalf of Plaintiff

13   induced in Los Angeles, California to perform and did perform completely in or about

14   June 2010 by, *inter alia*, permitting Defendant RDF (through Robin Cornwell, Mike

15   Cornwell, and Steve Gaines) to take physical possession of Plaintiff's inventory from Los

16   Angeles, California, including tangible copies of the Works, and assigning to RDF

17   certain of Plaintiff's assets including written copyright assignments as to certain of the

18   Works, including those attached hereto in **Exhibit "C",** before Plaintiff was ever paid

19   any of the agreed upon and promised monetary consideration for its inventory, the

20   transfer thereof, or for Plaintiff's incurred costs and liabilities, as promised by these

21   Defendants.  Attached hereto and incorporated by reference herein as **Exhibit "C"** are

22

1   true and correct copies of the two (2) short form copyright assignments Plaintiff executed

2   in Los Angeles, California in favor of RDF in reliance upon such misrepresentations.

3       133.   At the time the representations were made and Plaintiff entered into the

4   agreement, and at subsequent times when Robin Cornwell and RDF agents Mike

5   Cornwell and Steve Gaines on behalf of RDF came to Los Angeles to take physical

6   possession of Plaintiff's assets, including written copyright assignments, Timonen and

7   Norton on behalf of Plaintiff did not know the material representations or material

8   omissions of fact by Dawkins, Robin Cornwell, Mike Cornwell and Steve Gaines on

9   behalf of Defendant RDF were false, but believed them to be true and reasonably relied

10   on them.  Had they known the true facts, they would not have rendered performance on

11   behalf of Plaintiff without consideration.

12       134.   It was only after Plaintiff fully performed in Los Angeles, California the

13   agreement, and all of such inventory had been removed from Plaintiff's place of business

14   in Los Angeles, that they discovered Defendant RDF had no intention of "buy[ing] out

15   the store" or providing the promised consideration or paying the agreed consideration to

16   Plaintiff for its inventory, the transfer thereof, including the costs and liabilities incurred

17   by Plaintiff as a result of the conveyance, transfer and assignment of assets to RDF and

18   related matters, as promised by the Dawkins Defendants.

19       135.   Without any legal right or justification and in contravention of the

20   contractual agreement between the parties, Defendant RDF fraudulently acquired

21   Plaintiff's assets, including Plaintiff's inventory consisting of Plaintiff's tangible copies

22   of the Works, *inter alia*, and copyright assignments for certain works attached hereto as

1    **Exhibit "C,"** and commenced selling Plaintiff's assets to the public, including

2    unauthorized copies of Plaintiff's copyrighted Works, without ever having provided the

3    promised monetary consideration or compensation to Plaintiff, as promised by the

4    Dawkins Defendants to Timonen and Norton on behalf of Plaintiff in Los Angeles.

5           136.   Apart from the two short form copyright assignments attached hereto as

6    **Exhibit "C,"** pertaining to those Works entitled "Atheist Alliance International (AAI)

7    2007" (PA1609844, 2007) and "Pat Condell Anthology Feb. 2007 - Feb. 2008"

8    (PA1646005, 2008), which were obtained on the basis of the fraud of Dawkins

9    Defendants herein, there are no other documents purportedly transferring any of

10   Plaintiff's copyright interests in or to any of the Works to Defendants RDF.

11          137.   Due to the fraud of Dawkins Defendants, much of which occurred in Los

12   Angeles, no consideration supports any transfer, conveyance or assignment of any

13   copyrights in the Works to Dawkins Defendants.

14          138.   Plaintiff has been damaged in an amount to be proven at trial, plus pre- and

15   post judgment interest at the legal rate, consequential and incidental damages, costs,

16   expenses, and reasonable attorney's fees.

17          139.   Plaintiff further alleges that Defendants, through managing agents Dawkins

18   and Cornwell, were guilty of oppression, fraud and malice as defined by California Civil

19   Code § 3294 when making the above referenced representations and that Plaintiff should

20   recover punitive damages in an amount sufficient to punish and deter Defendants from

21   repeating such conduct in the future.

22

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

**FIFTH CLAIM FOR RELIEF**

**(BREACH OF ORAL CONTRACT - *IN THE ALTERNATIVE*)**

**[Against Defendant RDF]**

140.     Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 52, inclusive, as if fully set forth herein.

141.     In or about December 2009, Defendants Dawkins and Robin Cornwell, on behalf of RDF *inter alia*, asserted an interest in purchasing certain assets of Plaintiff.  In connection therewith, Defendant Robin Cornwell and other RDF trustees represented to Timonen and Norton who were in Los Angeles at the time that RDF had obtained its 501(c)(3) status and had been "uncoupled" from the United Kingdom sister foundation, which purportedly allowed RDF to profit from the sale of merchandise.

142.     Correspondingly, in or about December 2009, Dawkins and Robin Cornwell on behalf of RDF orally and by email agreed with Timonen and Norton on behalf of Plaintiff in Los Angeles "to buy out the store" and that upon the condition and in consideration for the transfer of certain assets of Plaintiff's, including Plaintiff's inventory of tangible copies of the Works, and written copyright assignments, Defendant RDF would "buy out the store" and provide monetary consideration to Plaintiff and compensate Plaintiff for all of its inventory and the costs and liabilities incurred by Plaintiff as a result of the conveyance, transfer and assignment of assets to RDF and related matters.  A true and correct copy of an email sent by Elisabeth Cornwell (on behalf of all Dawkins Defendants) to Josh Timonen and Maureen Norton who were in Los Angeles on December 29, 2009 is attached hereto and incorporated by reference

41

herein as **Exhibit "B**."  Plaintiffs are informed and believe and on that basis allege that this email was sent with the approval of Dawkins, and that such email would not have been sent to Timonen and Norton in Los Angeles without his authority and the authority of all other Dawkins Defendants herein.

143.   Defendant materially breached the agreement in that Plaintiff has never been compensated for its inventory or costs or liabilities incurred as a result of its conveyance, assignment, and related matters.

144.   Plaintiff fully performed all conditions, covenants, and promises required of them under the terms of the agreement, except for those conditions, covenants and promises which have been prevented or otherwise excused by the conduct of the Defendant in that Plaintiff has conveyed and assigned Plaintiff's inventory and assets to Defendant RDF.

145.   As a direct and proximate result of the foregoing breach, Plaintiff has been damaged in an amount to be proven at trial, plus pre- and post-judgment interest at the legal rate.

## SIXTH CLAIM FOR RELIEF

## (BREACH OF IMPLIED CONTRACT - *IN THE ALTERNATIVE*)

## [Against Defendant RDF]

146.   Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 52, inclusive, as if fully set forth herein.

147.   In or about December 2009, Defendants Dawkins and Robin Cornwell, on behalf of RDF *inter alia*, asserted an interest in purchasing certain assets of Plaintiff.  In

42

1   connection therewith, Defendant Robin Cornwell and other RDF trustees represented to

2   Timonen and Norton who were in Los Angeles at the time that RDF had obtained its

3   501(c)(3) status and had been "uncoupled" from the United Kingdom sister foundation,

4   which purportedly allowed RDF to profit from the sale of merchandise.

5        148.   Correspondingly, in or about December 2009, Dawkins and Robin

6   Cornwell on behalf of RDF orally and by email agreed with Timonen and Norton on

7   behalf of Plaintiff in Los Angeles "to buy out the store" and that upon the condition and

8   in consideration for the transfer of certain assets of Plaintiff's, including Plaintiff's

9   inventory of tangible copies of the Works, and written copyright assignments, Defendant

10   RDF would "buy out the store" and provide monetary consideration to Plaintiff and

11   compensate Plaintiff for all of its inventory and the costs and liabilities incurred by

12   Plaintiff as a result of the conveyance, transfer and assignment of assets to RDF and

13   related matters.   A true and correct copy of an email sent by Elisabeth Cornwell (on

14   behalf of all Dawkins Defendants) to Josh Timonen and Maureen Norton who were in

15   Los Angeles on December 29, 2009 is attached hereto and incorporated by reference

16   herein as **Exhibit "B**."   Plaintiffs are informed and believe and on that basis allege that

17   this email was sent with the approval of Dawkins, and that such email would not have

18   been sent to Timonen and Norton in Los Angeles without his authority and the authority

19   of all other Dawkins Defendants herein.

20        149.   At all relevant times Defendant RDF, by and through Defendants Dawkins

21   and Robin Cornwell, discussed with Timonen and/or Norton on behalf of Plaintiff, the

22   conveyance and assignment of inventory and assets from Plaintiff to RDF, Defendant

1    RDF understood and agreed that Plaintiff's actions in furtherance of such conveyance and

2    assignment occurred because Plaintiff was expecting monetary consideration and

3    compensation for all of its inventory and costs and liabilities incurred as a result of such

4    conveyance, assignment, and related matters.

5         150.    With this knowledge, Robin Cornwell and RDF agents Mike Cornwell and

6    Steve Gaines on behalf of RDF came to Los Angeles to take physical possession of

7    Plaintiff's assets, including written copyright assignments from Plaintiff.

8         151.    Plaintiff has not received any monetary consideration or agreed to

9    compensation from RDF for the conveyance and assignment of Plaintiff's inventory and

10   assets to RDF, and related matters.

11        152.    Beginning in or about June 2010, and until October 2010, Plaintiff and the

12   Dawkins Defendants engaged in settlement discussions in an effort to reach an amicable

13   resolution to the dispute that arose among the parties as a result of the Dawkins

14   Defendants having fraudulently obtained Plaintiff's assets.

15        153.    Accordingly, Defendant has violated its implied agreement with Plaintiff.

16        154.    As a direct and proximate result of the foregoing breach, Plaintiff has been

17   damaged in an amount to be proven at trial, plus pre- and post-judgment interest at the

18   legal rate.

19   ///

20   ///

21   ///

22

FIRST AMENDED COMPLAINT

# <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against Defendants, and each of them, as follows:

(a)     On the first through third claims for relief, preliminarily and permanently enjoin, pursuant to 17 U.S.C. § 502, Defendants, their respective officers, agents, servants, employees and those persons in active concert or participation with Defendants, or any of them, from inducing infringement or directly, contributorily, and/or vicariously infringing by any means, Plaintiff's exclusive rights under the Copyright Act, including, but not limited to manufacturing, reproducing, distributing, adapting, displaying, advertising, promoting, offering for sale and/or selling, or performing any materials that are substantially similar to the copyrighted Works listed on **Exhibit "A"**, and to deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in Defendants' possession or control;

(b)     award Plaintiff statutory damages in accordance with 17 U.S.C. § 504 and other applicable law;

(c)     award Plaintiff general, compensatory and consequential damages in an amount to be proven at trial, including allowable legal interest on the sum according to proof;

(d)     award Plaintiff punitive damages in an amount appropriate to punish the Defendants and deter others from engaging in similar misconduct;

45

1      (e)      for an award of profits attributable to the infringement;

2      (f)      for an award of Plaintiff's actual damages attributable to the infringement;

3               award Plaintiff costs and reasonable attorneys' fees in accordance with 17

4               U.S.C. § 505, and other applicable law; and

5      (g)      award Plaintiff such further and additional relief as the Court may deem

6               just and proper.

7

8  Dated: December 9, 2012                    Respectfully submitted,

9                                             COSTA, ABRAMS & COATE, LLP

10                                            By:      /s/ Charles M. Coate
11                                            Alan Abrams
                                              Charles M. Coate
12                                            Attorneys for Plaintiff UPPER BRANCH
                                              PRODUCTIONS, INC.

13

14

15

16

17

18

19

20

21

22

1

2

3                        **DEMAND FOR JURY TRIAL**

4            Plaintiff requests a jury trial on all issues so triable.

5    Dated: December 9, 2012              Respectfully submitted,

6                                         COSTA, ABRAMS & COATE, LLP

7
                                          By:      /s/ Charles M. Coate _____
8                                         Alan Abrams
                                          Charles M. Coate
9                                         Attorneys for Plaintiff UPPER BRANCH
                                          PRODUCTIONS, INC.
10

11

12

13

14

15

16

17

18

19

20

21

22

FIRST AMENDED COMPLAINT

**Additional Certificate (17 U.S.C. 706)**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-744-813

**Effective date of registration:**

November 19, 2010

---

## Title

**Title of Work:** Break the Science Barrier

## Completion/Publication

**Year of Completion:** 2008

**Date of 1st Publication:** February 3, 2008    **Nation of 1st Publication:** United States

## Author

**Author:** Upper Branch Productions Inc.

**Author Created:** DVD artwork and additional footage

**Work made for hire:** Yes

**Citizen of:** United States    **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Limitation of copyright claim

**Material excluded from this claim:** original video

**New material included in claim:** DVD artwork and additional footage

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

---

**Correspondence:** Yes

A-1

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Acting Register of Copyrights, United States of America

**Registration Number**

## PA 1-720-581

**Effective date of registration:**

October 27, 2010

---

## Title

| | |
|---|---|
| **Title of Work:** | The Root of all Evil: The Uncut Interviews |

## Completion/Publication

| | | | |
|---|---|---|---|
| **Year of Completion:** | 2007 | | |
| **Date of 1st Publication:** | September 8, 2007 | **Nation of 1st Publication:** | United States |

## Author

| | | | |
|---|---|---|---|
| ■ **Author:** | Upper Branch Productions Inc. | | |
| **Author Created:** | Dvd artwork, dvd graphics, dvd authoring, dvd menu, dvd menu music. | | |
| **Work made for hire:** | Yes | | |
| **Citizen of:** | United States | **Domiciled in:** | United States |

## Copyright claimant

| | |
|---|---|
| **Copyright Claimant:** | Upper Branch Productions Inc. |
| | 555 NW Park Ave #317, Portland, CA, 97209, United States |

## Certification

| | |
|---|---|
| **Name:** | Josh Timonen |
| **Date:** | October 6, 2010 |

A-2

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Acting Register of Copyrights, United States of America

**Registration Number**

## PA 1-725-279

**Effective date of registration:**

May 23, 2008

---

## Title

**Title of Work:** Discussions with Richard Dawkins: The Four Horsemen

**Nature of Work:** DVD-Educational documentary

## Completion/Publication

**Year of Completion:** 2007

**Date of 1st Publication:** December 1, 2007        **Nation of 1st Publication:** United States

## Author

■   **Author:** Upper Branch Productions, Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

**Anonymous:** No                                      **Pseudonymous:** No

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions, Inc.

555 NW Park Ave #317, Portland, OR 97209

## Limitation of copyright claim

**Previously registered:** No

## Certification

**Name:** Joshua Timonen

**Date:** May 14, 2008

---

**Correspondence:** Yes

Page 1 of 1

Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-739-638**

Effective date of registration:

October 27, 2010

## Title

Title of Work: The Genius of Charles Darwin

## Completion/Publication

Year of Completion: 2009

Date of 1st Publication: February 22, 2009     Nation of 1st Publication: United States

## Author

■        Author: Upper Branch Productions Inc.

Author Created: Additional original video footage. DVD artwork

Work made for hire: Yes

Citizen of: United States

## Copyright claimant

Copyright Claimant: Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Limitation of copyright claim

Material excluded from this claim: preexisting series "The Genius of Charles Darwin"

New material included in claim: Additional original video footage, DVD artwork

## Certification

Name: Josh Timonen

Date: October 6, 2010

Correspondence: Yes

Page 1 of 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-739-396

**Effective date of
registration:**

November 22, 2010

## Title

**Title of Work:** Root of all Evil?

## Completion/Publication

**Year of Completion:** 2008

**Date of 1st Publication:** February 10, 2008     **Nation of 1st Publication:** United States

## Author

■   **Author:** Upper Branch Productions Inc.

**Author Created:** video footage, music and artwork

**Work made for hire:** Yes

**Citizen of:** United States     **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, portland, OR, 97209, United States

## Limitation of copyright claim

**Material excluded from this claim:** Some footage

**New material included in claim:** Additional footage, music and artwork

## Rights and Permissions

**Organization Name:** Upper Branch Productions Inc.

**Address:** 555 NW Park Ave #317

portland, OR 97209 United States

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

Page 1 of 2

Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-739-394**

**Effective date of registration:**

November 22, 2010

---

## Title

**Title of Work:** The AAI 2009 Conference

## Completion/Publication

**Year of Completion:** 2009

**Date of 1st Publication:** February 17, 2009      **Nation of 1st Publication:** United States

## Author

■        **Author:** Upper Branch Productions Inc.

**Author Created:** entire motion picture, artwork

**Work made for hire:** Yes

**Citizen of:** United States        **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

**Correspondence:** Yes

Page 1 of 1



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PAu 3-555-606**

**Effective date of registration:**

November 22, 2010

---

## Title

**Title of Work:** Richard Dawkins Appearances and Events 2007-2008

## Completion/Publication

**Year of Completion:** 2008

## Author

**Author:** Upper Branch Productions Inc.

**Author Created:** entire motion picture and artwork

**Work made for hire:** Yes

**Citizen of:** United States          **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

**Correspondence:** Yes

Page 1 of 1

A-7



**Certificate of Registration**

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-739-392**

**Effective date of registration:**

November 22, 2010

---

## Title

Title of Work: Voices of Reason

Series Title: Discussions with Richard Dawkins

Number 3

## Completion/Publication

Year of Completion: 2008

Date of 1st Publication: November 3, 2008     Nation of 1st Publication: United States

## Author

Author: Upper Branch Productions Inc.

Author Created: entire motion picture, artwork

Work made for hire: Yes

Citizen of: United States     Domiciled in: United States

## Copyright claimant

Copyright Claimant: Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Certification

Name: Josh Timonen

Date: October 6, 2010

---

Correspondence: Yes

Page 1 of 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-739-398

**Effective date of registration:**

November 22, 2010

---

## Title

**Title of Work:** The Enemies of Reason Uncut Interviews

## Completion/Publication

**Year of Completion:** 2008

**Date of 1st Publication:** November 23, 2008 **Nation of 1st Publication:** United States

## Author

**Author:** Upper Branch Productions Inc.

**Author Created:** entire motion picture, artwork

**Work made for hire:** Yes

**Citizen of:** United States **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

**Correspondence:** Yes

Page 1 of 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-742-661

**Effective date of
registration:**

December 3, 2010

---

## Title

**Title of Work:** Discussions with Richard Dawkins: Voices of Science

## Completion/Publication

**Year of Completion:** 2008

**Date of 1st Publication:** July 22, 2008    **Nation of 1st Publication:** United States

## Author

- **Author:** Upper Branch Productions Inc.

  **Author Created:** entire motion picture

  **Work made for hire:** Yes

  **Citizen of:** United States    **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-746-366

**Effective date of registration:**

October 27, 2010

---

## Title

**Title of Work:** The Genius of Charles Darwin the Uncut Interviews

## Completion/Publication

**Year of Completion:** 2009

**Date of 1st Publication:** May 2, 2009     **Nation of 1st Publication:** United States

## Author

■    **Author:** Upper Branch Productions Inc.

**Author Created:** text and compilation of preexisting photos on packaging.

**Work made for hire:** Yes

**Citizen of:** United States     **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Limitation of copyright claim

**Material excluded from this claim:** Preexisting footage and photos

**New material included in claim:** text and compilation of preexisting photos on packaging

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

---

**Correspondence:** Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-745-953

**Effective date of
registration:**

October 28, 2010

---

## Title

**Title of Work:** The Enemies of Reason

## Completion/Publication

**Year of Completion:** 2008

**Date of 1st Publication:** August 15, 2008       **Nation of 1st Publication:** United States

## Author

■ **Author:** Upper Branch Productions Inc.

**Author Created:** artwork

**Work made for hire:** Yes

**Citizen of:** United States       **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Limitation of copyright claim

**Material excluded from this claim:** motion picture previously registered

**New material included in claim:** new DVD artwork

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

---

**Correspondence:** Yes

A-12

Page 1 of 1

## Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**
**PA 1-646-005**

**Effective date of
registration:**

May 23, 2008

---

### Title

**Title of Work:** Pat Condell Anthology Feb. 2007 - Feb. 2008

**Nature of Work:** DVD - educational documentary

### Completion/Publication

**Year of Completion:** 2008

**Date of 1st Publication:** April 29, 2008

### Author

**Author:** Upper Branch Productions, Inc.

**Author Created:** Director, editor, producer, sound mixer, of the DVD

**Work made for hire:** Yes

**Citizen of:** United States

**Anonymous:** No                    **Pseudonymous:** No

### Copyright claimant

**Copyright Claimant:** Upper Branch Productions, Inc.

1427 N. La Brea, Suite A, Los Angeles, CA 90028

### Limitation of copyright claim

**Previously registered:** No

### Certification

**Name:** Joshua Timonen

**Date:** May 14, 2008

---

**Correspondence:** Yes

Page 1 of 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-800-214

**Effective date of
registration:**

October 28, 2010

---

## Title

Title of Work: Growing up in the Universe

## Completion/Publication

Year of Completion: 2007

Date of 1st Publication: May 1, 2007          Nation of 1st Publication: United States

## Author

Author: Upper Branch Productions Inc

Author Created: editing, dvd authorship

Work made for hire: Yes

Citizen of: United States          Domiciled in: United States

## Copyright claimant

Copyright Claimant: Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Rights and Permissions

Organization Name: Upper Branch Productions Inc.

Address: 555 NW Park Ave #317

Portland, OR 97209

## Certification

Name: Josh Timonen

Date: October 6, 2010

---

Correspondence: Yes

Page 1 of 1

A-14

## Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

**PA 1-609-844**

**Effective date of
registration:**

May 21, 2008

### Title

**Title of Work:** Atheist Alliance International (AAI) 2007

**Nature of Work:** DVD Educational Documentary

### Completion/ Publication

**Year of Completion:** 2007

**Date of 1st Publication:** December 4, 2007

### Author

■ **Author:** Upper Branch Productions Inc.

**Author Created:** Motion picture

**Work made for hire:** Yes

### Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

1427 N La Brea, Ste A, Los Angeles, CA, 90028

### Limitation of copyright claim

**Previously registered:** No

### Certification

**Name:** Joshua Timonen

**Date:** May 14, 2008

**Correspondence:** Yes

Page 1 of 1

 Gmail
by Google

Josh Timonen <joshtimonen@gmail.com>

# FYI
1 message

**Elisabeth Cornwell <elisabeth.cornwell@mac.com>**                    **Tue, Dec 29, 2009 at 5:34 PM**
To: Josh Timonen <joshtimonen@gmail.com>, Maureen Norton <mnorton3@mac.com>

Hi Josh and Maureen,

Thought I'd give you an update - the 100K from Elon has arrived, as has the $25K from the Mendez family. So it has been a very successful year so far starting with the fundraiser that Maureen organized.

Richard is being pressured by the publisher for the children's book... so it is looking like he cannot stay in Australia to film. However, he has agreed to spend time in the US as soon as the book is finished - and that includes time in Burbank to film vignettes. There is also the New York opportunity too... Josh, I will need some more information on that so I can budget. So think about how much time Richard should spend in Los Angeles, and who we can fly out for him to interview in addition to his own vignettes. In some ways (while disappointing), the funds spent to bring people in and doing some very cool video stuff might end up being the better way to spend money. I'll have to think of another way to get you and Maureen down-under.

So think about the possibilities of what we need Richard to do. He is also committing to do at least 5 fundraisers in the US... I am thinking that Tim Wood might be a good person to enlist.

I am aware we need to send you another check for $5,000 for the camera. As soon as the latest deposits clear (the Jurvetson money is in stock), Carol will send out a check.

Another thing to think about is whether or not you both want to come out to Colorado to meet with the accounting people. If so, we can go over the way to buy out the store and budget for more staff. All very boring I know... but necessary. I will try to make it as painless as possible. Your tax accountant will need to be involved, and of course we will cover the additional costs.

A nice way to ring in the new year... Josh, looks like you can focus on vignettes and other creative interests. Please don't let money be a worry.... that should NOT be something either of you need to worry about.

cheers
r

Short Form Assignment of Copyright

FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged Upper Branch Productions Inc.("Assignor"), located at 5543 Riverton Ave #2 North Hollywood, CA 91423, hereby irrevocably transfers and assigns to The Richard Dawkins Foundation for Reason and Science ("Assignee), located at Metro Center 1200 G Street NW 8th Floor Washington, DC 20005, its successors and assigns, in perpetuity, all right (whether now known or hereinafter invented), title, and interest, throughout the world, including any copyrights and renewals or extensions thereto, in AAI 2007 Educational dvd Copyright registration number PA 1-609-844

IN WITNESS THEREOF, Assignor has duly executed this Agreement.

Upper Branch Productions Inc.

By: _____

Title: _Presidant_____

Date: _6/04/10_____

C-1

Short Form Assignment of Copyright

FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged
Upper Branch Productions Inc.("Assignor"), located at 5543 Riverton Ave #2 North Hollywood,
CA 91423, hereby irrevocably transfers and assigns to The Richard Dawkins Foundation for
Reason and Science ("Assignee), located at Metro Center 1200 G Street NW 8th Floor
Washington, DC 20005, its successors and assigns, in perpetuity, all right (whether now known
or hereinafter invented), title, and interest, throughout the world, including any copyrights and
renewals or extensions thereto, in Pat Condell Anthology  Educational dvd  Copyright
registration number PA1-646-005

IN WITNESS THEREOF, Assignor has duly executed this Agreement.

Upper Branch Productions Inc.
By: _____

Title: _____Presiolent_____

Date: ____6/04/10_____