Alan Abrams, Esq. (SBN: 75637)
Charles M. Coate, Esq. (SBN: 140404)
COSTA ABRAMS & COATE LLP
1221 Second Street, Third Floor
Santa Monica, California  90401
Tel: (310) 576-6161
Fax: (310) 576-6160
ccoate@cacllp.com
Attorneys for Lead Case Plaintiff
Upper Branch Productions, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| UPPER BRANCH PRODUCTIONS, INC., a California corporation,<br><br>   Plaintiff,<br>  vs.<br><br>INNERWORKINGS, INC., a Delaware corporation, *et al.*<br><br>   Defendants. | Lead Case No.: CV-12-8789 MWF (RZx)<br>*Assigned to Hon. Michael W. Fitzgerald*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT; DECLARATIONS OF CHARLES M. COATE AND JOSH TIMONEN IN SUPPORT THEREOF**<br><br>[Evidentiary Objections Filed Concurrently Herewith]<br><br>Date: January 28, 2013[1]<br>Time: 10:00 a.m.<br>Place: Courtroom 1600 |

---

[1] On December 13, 2012, Plaintiff's counsel sent a "Notice of Unavailability of Counsel" to counsel for Defendants stating that Plaintiff's lead counsel would be unavailable from January 2-6, 2013.  Despite such advance knowledge of a scheduling conflict, *pro hac vice* counsel for Defendants has unilaterally selected this hearing date in violation of Local Civility Guidelines to ensure that Plaintiff's lead counsel would have little opportunity to participate in this Opposition.  (*See* U.S.D.C. C.D. Cal. Civility and Professionalism Guidelines, §§ B.2, B.3.)

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ………………………………………………..……………….. 2

II.  SUMMARY OF RELEVANT FACTS ……………………………………… 4

III.  INDIVIDUAL DEFENDANTS ARE SUBJECT TO THE PERSONAL
JURISDICTION OF THIS COURT ……...……………………………… 7

    A.  This Court Can Properly Exercise General Jurisdiction Over These
Individual Defendants……...…………………………….................... 8

    B.  In the Alternative, At a Minimum, the Court May Exercise Specific
Jurisdiction Over these Individual Defendants……...………………… 9

    C.  In the Alternative, Plaintiff Requests a Continuance of The Matter
To Permit Plaintiff To Conduct Limited Jurisdictional
Discovery……...…….......................................................................… 13

IV.  THE FIRST AMENDED COMPLAINT CLEARLY STATES CLAIMS
UPON WHICH RELIEF CAN BE GRANTED ……………..……………. 14

V.  THE FIRST AMENDED COMPLAINT STATES PROPER CLAIMS
FOR DIRECT, VICARIOUS AND CONTRIBUTORY COPYRIGHT
INFRINGEMENT UPON WHICH RELIEF CAN BE GRANTED.
DEFENDANTS' MOTION MISCHARACTERIZES PLAINTIFF'S
FACTUAL ALLEGATIONS AND THE RELEVANT LAW ……..…….… 14

    A.  Direct Copyright Infringement Claims against Foundation and
RDF Store are Sufficiently Pled ..........…….......... …………………… 14

    B.  Plaintiff's Contributory Infringement Claim Against  Defendants Is
Sufficiently Pled And The Motion Is Properly Denied In Its Entirety.. 16

        *1.  Defendants Have Knowledge of the Underlying
Infringement*.......................................……………………. 16

2. *Defendants' Materially Contribute To or Induce the Underlying Infringement* ..........…........................................... 17

**C. The Vicarious Infringement Claims Against Individual Defendants State Claims Upon Which Relief Can Be Granted** ……..................…. 18

1. *Individual Defendants are personally liable for the conduct of RDF and the RDF Store as each of them exercises a sufficient level of control over RDF and the RDF Store with respect to the infringing activities* ……................................................................…………………... 18

2. *These Individual Defendants Have A Direct Financial Interest in Underlying Infringing Activity* ……………….... 19

**II. PLAINTIFF'S CLAIM FOR FRAUD STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED** ………………….....................………. 20

**III. THE CLAIMS FOR BREACH OF ORAL CONTRACT AND IMPLIED CONTRACT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED** ...................................................................... 21

**A. The Statute Of Limitations Does Not Bar The Contractual Claims** ..... 22

**IV. CONCLUSION** ……………….…………………………………….... 23

## **TABLE OF AUTHORITIES**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ............................ 14

*Arma v. Buyseason, Inc.*, 591 F. Supp. 2d 637 (S.D.N.Y. 2008) .................................. 16

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009) ......................................... 14

*Bankcroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F. 3d 1082 (9th Cir. 2000) ....... 8, 10

*Brand v. Menlove Dodge*, 796 F.2d 1070 (9th Cir. 1986) ............................................. 8

*Brayton Purcell, LLP, Recordon & Recordon*, 361 F. Supp. 2d 1135 (N.D. Cal. 2005) ................................................................................................................. 10, 11

*Brayton Purcell, LLP v. Recordon & Recordon*, 606 F. 3d 1124 (9th Cir. 2010) ................................................................................................................. 7

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528  (1985) ...................................................... 8, 9, 12

*Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) .................. 2, 10

*Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284 (9th Cir. 2007) ................................................... 10, 11

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) .................................... 11

*Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280 (9th Cir. 1977) ............................ 13

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ................................................ 10

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004) ....................................................... 19

*Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) ..................................................... 10

*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th. Cir. 1996) ............................ 19

*Gaglione v. Coolidge,* 134 Cal. App. 2d 518, 286 P.2d 568 (1955) .............................. 22

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2d Cir. 1971) ................................................................................. 19

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997) ......................................... 14

*Gordy v. Daily News, L.P.*, 95 F.3d 829 (9th Cir. 1996) .................................................. 11

*Greenfield v. Sudden Lumber Co.*, 18 Cal. App. 2d 709, 206 P.2d 643 (1937)
...................................................................................................................................... 22

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122
(9th Cir. 2003) ....................................................................................................... 7, 13

*In re GlenFed, Inc., Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994) ........................................ 20

*Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ....................... 8

*Marlyn Nutraceuticals, Inc. v. Improvita Health Prods.*, 663 F. Supp. 2d 841
(D.Ariz. 2009) .............................................................................................................11

*Mount v. Book-of-the-Month Club, Inc.*, 555 F.2d 1108 (2d Cir. 1977) ......................... 17

*Niles v. Louis H. Rapoport & Sons, Inc.* 53 Cal.App.2d 644, 128 P.2d 50 (1942) ......... 22

*Omeluk v. Langsten Sliip & Batbyggeri A/S*, 52 F.3d 267 (9th Cir. 1995) ...................... 7

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1159 (9th Cir. 2007) ...................... 14, 18

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) ............. 15, 18, 20

*Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985) ........................................................ 20

*Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) .............................................................. 9

*Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406 (9th Cir. 1977) ............. 13

*Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987) ................................. 20

*Wyler Summit Partn. v. Turner Broad. Sys., Inc.*, 135 F.3d 658 (9th Cir. 1998) ........... 14

*Yahoo! Inc. v. La Ligue Control Le Racisme Et L'Antisemitisme*, 433 F.3d 1199
(9th Cir. 2006) ........................................................................................................ 8, 9

*Ziegler v. Indian River County*, 64 F.3d 470 (9th Cir. 1995) ......................................... 12

**Statutes**

Fed. R. Civ. P. 8...........................................................................................................4, 22

Fed. R. Civ. P. 8(a)(2) .................................................................................................... 21

Fed. R. Civ. P. 9(b) ....................................................................................................... 20

Fed. R. Civ. P. 15(a) ...................................................... 23

Cal. Civ. Proc. Code § 410.10 ...................................... 8

17 U.S.C. § 106 ............................................................. 14

17 U.S.C. § 204(a) ........................................................ 15

17 U.S.C. § 501(a) ........................................................ 14

**<u>Other Sources</u>**

Central District Civility and Professionalism Guidelines, §§ B.2, B.3 .................   1, fn1

## I.  INTRODUCTION

Defendants'[2] motion to dismiss ("Motion") Plaintiff's first amended complaint ("FAC") for failure to state a claim upon which relief can be granted is properly denied in its entirety.  This copyright infringement action arises out of a dispute between the parties regarding unauthorized manufacture and exploitation by defendants with respect to the copyrights owned by Plaintiff in fifteen (15) audio-visual works ("Works").

Defendants claim that there are not enough connections with this forum to support personal jurisdiction over individual defendants Dawkins, Robin Cornwell, and Mike Cornwell ("Individual Defendants").  Nonsense.  Plaintiff, in California, created the Works at issue at Plaintiff's cost contrary to the misrepresentations by Defendants in their Motion, and the wrongful conduct of these Individual Defendants was targeted at Plaintiff in California, who they knew was a California company.  Moreover, California is the state in which most, if not all alleged tortious conduct of the Individual Defendants occurred.  Under the *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) "effects" test Defendants clearly directed their activities at this forum and this Court's exercise of personal jurisdiction over them is proper.

Moreover, in October 2010, Dawkins came to California and, together with RDF, filed a civil action[3] against Plaintiff, Josh Timonen, and Maureen Norton concerning the exact same failed business relationship at issue here, and, *inter alia,* sought a declaration of ownership of the copyrights in the Works ("First Action"). Upper Branch removed the First Action to this district court, whereupon Dawkins and RDF renounced all federal relief and conceded that Josh Timonen was an independent contractor for Dawkins and

---

[2] Collectively, defendants The Richard Dawkins Foundation for Reason and Science ("RDF"), Richard Dawkins Foundation Store ("RDF Store"), Clinton Richard Dawkins ("Dawkins"), Robin Elisabeth Cornwell ("Robin Cornwell"), and Michael Cornwell ("Mike Cornwell") are referred to herein as "Defendants."

[3] Prior litigation between Dawkins/RDF and Upper Branch, *et al.*: Los Angeles Superior Court, Case No. EC054190 ("First Action").

RDF and that Plaintiff owned the copyrights in the Works.  Upon remand to state court, Dawkins and RDF proceeded to newly assert, on a non-exclusive license theory, an intentional interference with prospective economic advantage claim against Plaintiff for having instructed IWI's predecessor in interest to deny RDF access to Plaintiff's Works. Thereafter, Dawkins and RDF voluntarily dismissed the First Action against Plaintiff, *et al.*, with prejudice.

Plaintiff's enforcement of its copyrights in this forum against Defendants is not driven by ulterior motives, but rather by an interest in redressing the harm caused to Plaintiff by Defendants by their unlawful and infringing conduct.  Although Plaintiff, *et al.*, elected to proceed against Dawkins and RDF in a second action[4] to specifically address the litigation conduct of Dawkins, RDF, and their counsel in the First Action, the matter of the $55,000 in attorney's fees, reduced from Bryan Cave's astronomical request for over $250,000 on one motion after the court determined that Bryan Cave engaged in the unnecessary practice of law, is anticipated to be mooted on appeal.

In any event, RDF's filing of yet another lawsuit against Plaintiff Upper Branch, related case no. CV 12-10694, in their belated attempt to resurrect their First Action that it previously dismissed with prejudice, ironically demonstrates that the argument Dawkins, *et al.*, relied upon in the Second Action, *i.e.* that they dismissed the First Action with prejudice in order to avoid costly legal fees, now rings hollow, and that they come to this Court with unclean hands.

In sum, the prior litigation, the preexisting failed business relationship among the parties, and Defendants' prior judicial admissions that Plaintiff owns the copyrights in the Works, conclusively demonstrates that these Defendants have adequate notice of how Plaintiff's factual allegations align with its asserted legal claims.  At a minimum, the FAC puts Defendants "on notice" of the legal claims being made against them as well as

---

[4] Prior litigation between Dawkins/RDF and Upper Branch, *et al.*: Los Angeles Superior Court, Case No. EC057388 ("Second Action").

the underlying factual underpinning, easily satisfying Fed. R. Civ. P. 8.  *Id*.  Additionally, Plaintiff's FAC states claims for relief that are plausible on their face and Defendants Motion is thus properly denied in its entirety.

## II.    SUMMARY OF RELEVANT FACTS

Plaintiff Upper Branch Productions, Inc. ("Plaintiff" or "Upper Branch") is a California corporation, (FAC (Dkt #19) ¶3) that owns several federally registered copyrights for fifteen (15) audio-visual works ("Works").  (FAC ¶¶ 13-15; FAC Ex. A.) Upper Branch created and sold these Works from its principal place of business in the Los Angeles area. (FAC ¶¶ 21, 23, 25.)

It brings this action against Defendants InnerWorkings, Inc. ("IWI"), Richard Dawkins Foundation For Reason and Science ("RDF"), Richard Dawkins Foundation Store ("RDF Store"), Richard Dawkins ("Dawkins"), Robin Cornwell ("Cornwell"), and Michael Cornwell ("Cornwell") [collectively herein all Defendants except IWI[5] are referred to herein as "Defendants".]

Josh Timonen ("Timonen") the independent contractor who designed and developed two websites for Dawkins (FAC ¶ 20) was a California citizen who, after building those websites filed a fictitious business name and then subsequently formed Plaintiff Upper Branch, a California production company.  (FAC ¶ 3.)

Plaintiff Upper Branch was formed in 2007 to own and operate an online store and to promote its products.  (FAC ¶ 21.)  The products created and sold by Plaintiff were specifically aligned with the causes advanced by Dawkins and RDF. (FAC ¶ 22.)  The parties were neither competitors nor partners but were friendly with one another at the time the store was created by Plaintiff.  (*See* FAC ¶ 20, 21, 22, 23.)  Dawkins was concerned of the appearance that his nameksake foundation was profiting from his

---

[5] IWI belatedly filed an Answer (Dkt #22) to Plaintiff's FAC on December 27, 2012, when such responsive pleading was due on December 24, 2012 based on Plaintiff's filing and service of its FAC on IWI on December 10, 2012. Fed. R. Civ. P. 15(a)(3) (14 days).

personal works and therefore Dawkins disclaimed any connection to Plaintiff's merchandising business.  (*See* FAC ¶¶ 22-24.)

Timonen on behalf of Plaintiff proposed to Dawkins that Plaintiff could create such Works, and thereafter Plaintiff created the Works, and sold those Works to the public.  (*See* FAC 21 - 25.)  Timonen proposed to Dawkins that Timonen could donate certain profits from the Plaintiff's store operation to RDF.  (FAC ¶ 24.)  In response, Dawkins told Timonen that he was not "moral[ly]" obligated to do so.  (FAC ¶ 24.)

Plaintiff sourced its own manufacturer to produce copies of the Works and deposited its master copies with Idea Media Services, LLC, IWI's predecessor-in-interest, so that such manufacturer could replicate copies of the Works for Plaintiff on a per-order basis as requested by Timonen or Norton on behalf of Plaintiff, only.  (FAC ¶ 17.)

At the end of 2009, Timonen was informed by Dawkins and Robin Cornwell on behalf of RDF that RDF was interested in buying out Plaintiff's store operation.  (FAC ¶ 26.)  Because the parties remained on friendly terms at such time, Timonen on behalf of Plaintiff agreed to transfer all of Plaintiff's store assets, including tangible inventory of Works and written copyright assignments for the Works, provided Plaintiff was compensated for its inventory and the costs and liabilities Plaintiff incurred as a result of the conveyance, transfer, and assignment of assets to RDF and related matters.  (FAC ¶ 27.)  From the end of 2009 until the time that Mike Cornwell and other RDF agents took physical possession of Plaintiff's store assets from its offices in Los Angeles, California, Dawkins and Robin Cornwell on behalf of RDF at all times led Timonen and Norton on behalf of Plaintiff believe that RDF intended to compensate Plaintiff for inventory, costs and liabilities.  (FAC ¶ 28-31.)  RDF took physical possession of Plaintiff's assets, and obtained written copyright assignments for just two (2) of the Works, but never compensated Plaintiff for the same, as was agreed.  (FAC ¶ 31.)  Plaintiff did not assign copyrights for the other thirteen (13) Works.  (*See* FAC ¶ 33.)

1          Instead of compensating Plaintiff, as RDF agents continuously represented and

2    as RDF had agreed it would, in October 2010, Dawkins and RDF instead sued Plaintiff,

3    Josh Timonen, and Upper Branch in Los Angeles Superior Court ("First Action").  (FAC

4    ¶¶ 41-42.)  However, Dawkins and RDF later dismissed their entire case against Plaintiff,

5    *et al.*, <u>with prejudice</u>.  (FAC ¶ 42.)  Costs were awarded to Plaintiff, *inter alia*.  (*Id.*)

6          However, in between the time that RDF took physical possession of Plaintiff's

7    assets and Dawkins and RDF filed the First Action against Plaintiff, *et al.*, Timonen had

8    learned that RDF through Dawkins, Robin Cornwell and Mike Cornwell had placed

9    direct orders with Plaintiff's manufacturer for copies of Plaintiff's Works, Timonen

10   demanded and again reiterated to Plaintiff's manufacturer that neither RDF, nor anyone

11   purporting to represent RDF, had Plaintiff's authorization to place direct orders for copies

12   of Plaintiff's Works.  (*See* FAC ¶ 37.)  Plaintiff had also demanded RDF to immediately

13   return Plaintiff's assets.  (FAC ¶ 38.)

14        Idea Media ignored Plaintiff's assertion of exclusive rights under copyright and

15   starting in June 2010 continued to copy and distribute copies of Plaintiff's Works to RDF

16   without Plaintiff's authorization.  (FAC ¶ 37.)

17        RDF has ignored Plaintiff's assertion of exclusive rights under copyright and the

18   Defendants continue to maintain their right to continue distributing and exploiting the

19   Works without Plaintiff's authorization, and without compensating Plaintiff.  (*See* FAC ¶

20   39.)

21        None of the Defendants are authorized by Plaintiff to exploit, reproduce, adapt,

22   distribute, sell, and/or perform Plaintiff's Works, or any of them.  (FAC ¶ 40.)

23        Defendants produced documents to Plaintiff in the First Action that evidenced e-

24   mail communications between Idea Media and Individual Defendants concerning

25   Individual Defendants requests for copies of the Works, representations that RDF owned

26   the copyrights in the Works, requests for removal of Plaintiff's copyright and logo from

27   the packaging of the Works, and the submission of new artwork files for Idea Media to

28   create and utilize in connection with the unauthorized copies of Plaintiff's Works Idea

Media agreed to produce for RDF's payment, despite specific notice from Plaintiff that all of the above actions were not authorized by Plaintiff.  (FAC ¶¶ 43-52.)

Accordingly, this action follows and for reasons stated herein, Defendants' untimely Motion is properly denied in its entirety[6].

## III.  INDIVIDUAL DEFENDANTS[7] ARE SUBJECT TO THE PERSONAL JURISDICTION OF THIS COURT.

When opposing a jurisdictional challenge made absent an evidentiary hearing, a plaintiff is required only to make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.  *See, e.g., Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003).  For purposes of Plaintiff's prima facie showing of personal jurisdiction, uncontroverted allegations in the FAC must be taken as true and conflicts between the facts contained in the parties' affidavits must be resolved in Plaintiff's favor.  *Brayton Purcell, LLP v. Recordon & Recordon*, 606 F. 3d 1124, 1130 (9th Cir. 2010) ("*Brayton II*").  If the Court decides the jurisdictional issue on the basis of the pleadings and supporting declarations, it must be presumed that the facts set forth therein can be proven.  *See Omeluk v. Langsten Sliip & Batbyggeri A/S*, 52 F.3d 267, 268 (9th Cir. 1995).

When there is no federal statute controlling the Court's exercise of personal jurisdiction, federal courts must look to the forum state's jurisdictional statute to determine whether it is proper to assert personal jurisdiction.  *See, e.g., id*.  The California long-arm statute provides that "[a] court of this state may exercise jurisdiction

---

[6] Defendants belatedly filed this Motion on December 27, 2012, and violated Local Rule 7-3 based on Defendants' first effort to conduct it obligatory pre-filing conference on Friday afternoon on December 21, 2012, preceding the Christmas holiday.  (C.D. Cal. Local Rule 7-3.)   Plaintiff's FAC was filed on December 10, 2012 (Dkt #19) and Defendants' responsive pleading was due on December 24, 2012.   Fed. R. Civ. P. 15(a)(3) (14 days).  Therefore, the instant motion may be denied as untimely.

[7] The two moving corporate defendants, RDF and RDF Store, do not challenge this Court's jurisdiction over them. Defs.' Mot. Dismiss ¶ 5.

1   on any basis not inconsistent with the Constitution of this state or of the United Stated."

2   Cal. Civ. Proc. Code § 410.10.  Thus, the Court's jurisdictional analysis under California

3   law and federal due process is the same.  *Yahoo! Inc. v. La Ligue Control Le Racisme Et*

4   *L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).

5       The Due Process Clause requires that a court exercise personal jurisdiction over a

6   defendant only if the defendant has "certain minimum contacts" with the forum state

7   "such that the maintenance of the suit does not offend traditional notions of fair play and

8   substantial justice."  *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.

9   95 (1945) (internal quotation marks omitted).  A court may exercise general jurisdiction

10  over a defendant whose contacts with the forum are so "continuous and systematic" that

11  personal jurisdiction is proper in any action.  *Burger King Corp. v. Rudzewicz,* 471 U.S.

12  462, 477-78, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).  Absent general jurisdiction, a

13  court may also exercise specific jurisdiction over a defendant where "jurisdiction [is]

14  based on their relationship between the defendant's forum contacts and the plaintiff's

15  claim." *Yahoo!*, 433 F.3d at 1205.

16      **A.    This Court Can Properly Exercise General Jurisdiction Over These**

17         **Individual Defendants.**

18      The standard for establishing general jurisdiction requires that the defendant's

19  contacts be substantial enough to approximate physical presence.  *Bancroft & Masters,*

20  *Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).  "Factors to be taken into

21  consideration are whether the defendant makes sales, solicits or engages in business in

22  the state, serves the state's markets, designates an agent for service of process, holds a

23  license, or is incorporated there." *Id*.  Occasional sales to residents of the forum state are

24  insufficient to create general jurisdiction.  *See Brand v. Menlove Dodge*, 796 F.2d 1070,

25  1073 (9th Cir. 1986).

26      The declaration of Josh Timonen filed concurrently herewith in support of this

27  Opposition demonstrates that these Individual Defendants *regularly* venture to California

28  for the purpose of conducting business, in the form of attending fundraising events and/or

1   for the purpose of giving speeches related to RDF's mission and stated goals, and that

2   such regular visits to California are advertised on Dawkins' website, richarddawkins.net.

3   (*See* Declaration of Josh Timonen ["Timonen Decl."] filed in support of this Opposition

4   ¶¶ 2-21.)

5       Defendants' argument that these Individual Defendants do not do business in this

6   state is patently false, (Mot. at 7,) and it would not be unreasonable for the Court to

7   exercise general jurisdiction over these Individual Defendants.

8   **B.    In the Alternative, At a Minimum, the Court May Exercise Specific**

9   **Jurisdiction Over these Individual Defendants.**

10      Individual Defendants have sufficient "minimum contacts" with California arising

11  out of, or related to, their operation of the RDF Store website which sells unauthorized

12  copies of Plaintiff's Works, their unauthorized inducement of IWI to manufacture

13  unauthorized copies of Plaintiff's Works, their personal and material contribution to

14  IWI's creation of unauthorized derivative artwork to accompany the DVD packaging of

15  Plaintiff's Works, and other wrongful conduct that individually targeted Plaintiff here, to

16  justify the exercise of specific jurisdiction in California.

17      In order for specific jurisdiction to exist: (1) the non-resident defendant must

18  purposefully direct his activities at, or consummate some transaction with, the forum state

19  or a resident thereof; or perform some act by which it purposefully avails itself of the

20  privilege of conducting activities in the forum, (2) the Plaintiff's claim must be one

21  which arises out of or relates to the defendant's forum-related activities; and (3) the

22  exercise of jurisdiction must be reasonable. *Yahoo!*, 433 F.3d at 1205.  If Plaintiff meets

23  its burden of satisfying the first two prongs, *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th

24  Cir. 1990), then the burden shifts to the Individual Defendants to set forth a "compelling

25  case" that the exercise of jurisdiction would not be reasonable. *Burger King,* 471 U.S. at

26  476-78.

27      Although it might not be readily apparent from Defendants' Motion, this is a

28  copyright infringement case, therefore it is proper for the court to evaluate the first prong

of the specific jurisdiction analysis using the purposeful availment or "effects" test expounded in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). *See Brayton Purcell, LLP, Recordon & Recordon*, 361 F. Supp. 2d 1135, 1140 (N.D. Cal. 2005) ("Brayton I").  In *Calder*, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum state satisfies the purposeful availment prong of the specific jurisdiction analysis. To establish personal jurisdiction under the *Calder* "effects" test, defendant must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state. *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state is sufficient to satisfy the *Calder* "effects" test.  *See Calder*, 465 U.S. at 789[8]; *Bankcroft & Masters, Inc. v. Augusta Nat. Inc.,* 223 F. 3d 1082, 1087 (9th Cir. 2000).   An allegation of willful copyright infringement, standing alone, can satisfy the *Calder* "effects" test if the act is aimed at a known forum resident.  *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 2007), rev'd on other grounds, *Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, 118 S.Ct. 1279, 140 L.Ed.2d 438 (1998) ("Columbia alleges . . . that Feltner willfully infringed copyright owned by Columbia which, as Feltner knew, had its principal place of business in California.  This fact alone is sufficient to establish the 'purposeful availment' requirement.") (citing *Calder*, 465 U.S. at 789-90).  *See also*

---

[8] For example, in *Calder* itself, the defendants were a reporter and an editor of a nationally-circulated tabloid newspaper whom plaintiff, a well-known California resident, accused of libel.  The defendants argued that the alleged wrong had no intended nexus with California and that they should be treated like "a welder employed in Florida who works on a boiler which subsequently explodes in California."  *Id*.  The Supreme Court rejected this proposed analogy, pointing out that "petitioners are not charged with mere untargeted negligence.  Rather, their intentional, and allegedly tortious, actions were expressly aimed at California." *Calder*, 465 U.S. at 789.  Defendants attempt to make the same argument here as petitioners did in *Calder*, and Defendants' arguments are likewise properly rejected.

*Brayton I*, 361 F. Supp. 2d at 1140 (noting that although later cases arguably limited *Columbia Pictures'* application in other contexts, "absent a clear indication to the contrary, this court is bound to follow *Columbia Pictures* since it is directly on point inasmuch as the cause of action here is for copyright infringement.")  Here, as discussed in Section V, below, Plaintiff has alleged sufficient claims for intentional indirect copyright infringement against these Individual Defendants, therefore the reasoning of *Columbia Pictures* supports the exercise of personal jurisdiction in this case.

Additionally, the *Calder* effects test is satisfied by the presence of facts in the FAC demonstrating individualized targeting by these Individual Defendants.  *Cf. Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 420 (9th Cir. 1997) (no showing that defendants even knew of the existence of the plaintiffs, let alone targeted them individually); *see also Gordy v. Daily News, L.P.*, 95 F.3d 829, 833 (9th Cir. 1996) (distinguishing certain cases holding that no personal jurisdiction existed under *Calder* on the ground that in those cases targeting was lacking).

Plaintiff has demonstrated purposeful availment by these Individual Defendants under the *Calder* effects test.   <u>First</u>, each of these Individual Defendants acted intentionally when they published intentionally misleading statements about RDF being the proprietor of the copyrights in the Works, induced IWI to intentionally reproduce unauthorized copies of Plaintiff's Works for RDF, materially contributed to IWI's unauthorized creation of derivative artwork to accompany the DVD packaging of Plaintiff's Works, sent emails to Plaintiff falsely representing that Plaintiff would be compensated for the conveying Plaintiff's store inventory and assets to RDF, among other intentional acts.  *See* FAC ¶¶ 16, 19, 20, 21, 24, 26, 27, 28, 29, 36, 43, 44, 45.  *See also Marlyn Nutraceuticals, Inc. v. Improvita Health Prods.*, 663 F. Supp. 2d 841, 850-51 (D.Ariz. 2009) (intentional act satisfied based on allegedly fraudulent misrepresentations in emails directed to plaintiff in forum).

<u>Second</u>, these intentional acts were expressly aimed at California because they individually targeted Plaintiff Upper Branch, a California corporation doing business

almost exclusively in California.  These Individual Defendants knew Upper Branch's principal place of business was in Los Angeles, California, knew that Josh Timonen (a decision maker for Upper Branch) was located in Los Angeles, California, communicated directly with Mr. Timonen and Ms. Norton in Los Angeles, California, physically took Plaintiff's store inventory from its office in Los Angeles, California, and obtained written copyright assignments from Plaintiff in Los Angeles, California, *inter alia,* under false pretenses.  *See, e.g.,* FAC ¶¶ 20, 21, 26, 27, 28, 29, 30, 36.  Based on these facts, for purposes of this Motion and which cannot be disputed by Defendants, it is plain that the actions of these Individual Defendants were "expressly aimed at the forum state." *Dole Food Co.*, 303 F.3d at 1112.  <u>Finally</u>, the harmful effects of those intentional acts were primarily caused, and felt, as the Individual Defendants knew they would be, in California.

The second requirement for specific jurisdiction is that contacts constituting purposeful availment must be the ones that give rise to the current suit.  This requirement is measured in terms of "but for" causation.  *See Ziegler v. Indian River County*, 64 F.3d 470, 474 (9th Cir. 1995).  This requirement is easily met here.  But for the intentional acts, Plaintiff would have no need to bring this suit.

The final requirement for specific jurisdiction – reasonableness – is found when jurisdiction comports with fair play and substantial justice. *See Burger King*, 471 U.S. at 476.  *Burger King* explicitly places upon the defendant the burden of demonstrating unreasonableness and requires the defendant to put on a "compelling case." *Id*. at 476-77,  The reasonableness determination requires the consideration of several specific factors: (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. *Id*.

1   Individual Defendants attempt no factual showing with regard to the *Burger King*
2   factors. Instead, Individual Defendants state without elaboration that jurisdiction would
3   be unreasonable.  Mot. at 12.  Dawkins himself previously sued Plaintiff for declaratory
4   relief of ownership of copyright in the Works in California.  FAC  ¶¶ 41-42.  Individual
5   Defendants support this assertion with one citation to a non-precedential 6th Circuit case
6   that has little to do with the facts alleged in the FAC.  Mot. at 12.  This is inadequate to
7   discharge *Burger King's* requirement that the defendant demonstrate a "compelling case,"
8   focused on the seven specific factors listed above, in order to establish unreasonableness.
9   Individual Defendants do not focus on the *Burger King* factors nor apply them to the
10  particular circumstances of this case.  Rather, they conveniently ignore them.  Therefore,
11  the reasonableness requirement is met.   In sum, Plaintiff has satisfied the criteria for
12  specific jurisdiction.

**C.   In the Alternative, Plaintiff Requests a Continuance of The Matter To Permit Plaintiff To Conduct Limited Jurisdictional Discovery.**

15  If the Court is somehow inclined to grant some or all of Defendants' Fed. R. Civ.
16  P. 12(b)(2) jurisdictional motion, then Plaintiff respectfully requests a continuance of the
17  motion in order to conduct limited jurisdictional discovery. A district court has broad
18  discretion to "permit discovery to aid in determining whether it has in personam
19  jurisdiction." *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 n.1 (9th Cir.
20  1977) (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24
21  (9th Cir. 1977). A court should allow a party to conduct discovery "where pertinent facts
22  bearing on the question of jurisdiction are controverted or where a more satisfactory
23  showing of the facts is necessary." *Id.* at 430 n.24 (citation and alteration omitted).
24  Discovery should be denied only "when it is clear that [the] discovery would not
25  demonstrate facts sufficient to constitute a basis for jurisdiction." *Id*. The Ninth Circuit
26  has held that denying jurisdictional discovery where further discovery might demonstrate
27  a basis for jurisdiction is an abuse of discretion. *Harris Rutsky & Co.*, 328 F.3d at 1135
28  [concluding that the district court abused its discretion in denying plaintiff's motion for

jurisdictional discovery and remanding the case to allow plaintiff the opportunity to develop the record and make a prima facie showing of jurisdictional facts].

Under the circumstances, Plaintiff respectfully submits that such alternative relief is reasonably granted.

## IV.   THE FIRST AMENDED COMPLAINT CLEARLY STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED.

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit Partn. v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998) (citation omitted). Consequently, there is a strong presumption against dismissal. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citation omitted). Plaintiff has easily met its burden here.

## V.   THE FIRST AMENDED COMPLAINT STATES PROPER CLAIMS FOR DIRECT, VICARIOUS AND CONTRIBUTORY COPYRIGHT INFRINGEMENT UPON WHICH RELIEF CAN BE GRANTED. DEFENDANTS' MOTION MISCHARACTERIZES PLAINTIFF'S FACTUAL ALLEGATIONS AND THE RELEVANT LAW.

### A.   Direct Copyright Infringement Claims against Foundation and RDF Store are Sufficiently Pled.

Direct infringement of a copyright requires showing: (a) ownership of a valid registered copyright; and (b) certain unauthorized actions made with respect to that copyright, including reproduction, creation of derivative works, distribution, and display. 17 U.S.C. § 106, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1159 (9th Cir. 2007) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001) and citing 17 U.S.C. § 501(a)). 17 U.S.C. § 106 states, in pertinent part:

> Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; ...

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; ...

(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly . . . .

Defendants misrepresent the factual allegations of the FAC by arguing spuriously that Plaintiff's claim of copyright ownership is based on, or contingent upon, the alleged fraud of Defendants. Mot. at 20:2-3.   On the contrary, the FAC clearly alleges that Plaintiff's copyright ownership in the Works **precedes** the alleged fraud of Defendants. (FAC ¶¶ 13, 15, 16, 21-25.)

To be clear, it is indeed specifically alleged (and was previously conceded by Defendants) that Upper Branch is the owner and author under copyright of the Works. (FAC ¶¶ 13-15, 34; FAC, Exh. A.)

As to two of the Works only, written assignments were executed by Josh Timonen on behalf of Plaintiff, but legal title to these copyrights never passed because no consideration was received by Plaintiff in return, as promised. (FAC ¶¶ 26-33, 35.) Moreover, these written assignments certainly are not "irrevocable," and the Defendants' Motion blatantly mischaracterize this fact as well as the character of the transaction. (Mot. at 20:23.)

There are no allegations in the FAC, because it is false, that Josh Timonen signed on behalf of Plaintiff written copyright assignments transferring Upper Branch's ownership of the remaining thirteen (13) copyrighted Works (which Defendants previously conceded were owned by Plaintiff).  Therefore, under 17 U.S.C. § 204(a), it is conclusive that no transfer of these copyrights was effected.  17 U.S.C. § 204(a) (a transfer of ownership of copyrighted material requires a writing to be valid).

Finally, because the infringement allegations arise out of a failed business relationship between Plaintiff and Defendants, *see* FAC ¶¶20-36, this fact tends to

1  indicate that it is easier for these Defendants to discern the content that they are alleged to

2  have infringed, and the Defendants' assertion that they do not know what they are alleged

3  to have infringed is a red herring.  *See, e.g., Arma v. Buyseason, Inc.,* 591 F. Supp. 2d

4  637, 644 (S.D.N.Y. 2008).  Therefore, Defendants have adequate notice of the way that

5  Plaintiff's factual allegations align with its asserted legal claims, and the Motion is

6  properly denied in its entirety.

7       Plaintiff has further alleged that Defendants IWI, and RDF, RDF Store, made

8  certain unauthorized actions with respect to Plaintiff's copyrights in the Works.  (FAC ¶¶

9  36-52.)  Thus, Plaintiff states a claim for direct infringement and the Defendants' Motion

10  is properly denied in its entirety.

11      **B.  Plaintiff's Contributory Infringement Claim Against Defendants Is**
12      **Sufficiently Pled And The Motion Is Properly Denied In Its Entirety.**

13      A claim for contributory infringement requires a showing that a party "(1) has

14  knowledge of another's infringement and (2) either (a) materially contributes to or (b)

15  induces that infringement."  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 795

16  (9th Cir. 2007).

17          ***1.  Defendants Have Knowledge of the Underlying Infringement.***

18      Here, Defendants plainly have knowledge of the underlying infringement.  It is

19  alleged that Plaintiff created the fifteen (15) copyrighted Works, (FAC ¶ 13, 21, 23, and

20  25,) that Defendants knew Plaintiff owned the copyrights in the Works because they later

21  attempted to obtain a written assignment for all of the Works (FAC ¶ 16), that Defendants

22  paid nothing to Plaintiff in exchange for Plaintiff's store assets (including an inventory of

23  the Works), (FAC ¶ 31,) later persuaded IWI to manufacture unauthorized copies of

24  Plaintiff's Works for RDF and RDF Store's sale and profit, and that all of these unlawful

25  acts were done with the approval or authorization of Dawkins. (FAC ¶¶ 45, 47, 88, and

26  89.)  Indeed, Defendants Dawkins and RDF previously unsuccessfully sued Plaintiff in

27  California for intentional interference with their prospective economic advantage for

28  instructing IWI's predecessor-in-interest to deny RDF access to its Works.  (*See* FAC ¶¶

16

37, 74, 83.)   Such spurious claims were voluntarily dismissed <u>with prejudice</u>.  (*See* FAC ¶¶ 41-42, 74.)

> ### 2.   *Defendants' Materially Contribute To or Induce the Underlying Infringement.*

Next, Plaintiff has demonstrated that the Defendants have materially contributed to or induced IWI's, RDF's, and RDF Store's direct infringement.

Again, Defendants attempt to mischaracterize Plaintiff's claim.  Plaintiff does not allege in the FAC that the Individual Defendants are "providing means to infringe" in the sense of furnishing a copyrighted work to another, who in turn wrongfully copies from the work. See *Mount v. Book-of-the-Month Club, Inc.*, 555 F.2d 1108 (2d Cir. 1977).

Instead, the FAC alleges that Plaintiff had, during the course of Plaintiff's business relationship with Idea Media Services, LLC, predecessor to Defendant IWI, deposited its masters with Idea Media Services "with advance instruction that from those master copies and files, Idea Media would create and duplicate copies of the Works on a per-order basis as authorized by Timonen or Norton on behalf of Plaintiff."  (FAC at ¶ 17, 74, 78.)  That "Idea Media knew that only Plaintiff could place orders for (its own) Works, and that no third parties, including the Dawkins Defendants, could place orders for copies of the Works without the express consent and authorization of Plaintiff."  (FAC at ¶ 18, 74, 79.)   That in June 2010 and again in November 2010, Plaintiff demanded and reiterated to Idea Media Services that RDF did not have authorization from Plaintiff to order copies of the Works directly from Idea Media.  (FAC ¶ 37, 74, 83.)  That despite this, Idea Media and RDF ignored Plaintiff's assertion of exclusive rights and thereafter committed the acts of direct infringement complained of.  (*Id.*)

It is further alleged in the FAC that Dawkins, R. Cornwell and M. Cornwell personally and unlawfully instructed IWI that RDF owned the copyrights in the Works, in order to induce IWI to manufacture unauthorized copies of Plaintiff's Works for RDF.  (FAC ¶¶ 45, 74, 88.)  Further, these Individual Defendants personally and unlawfully instructed IWI to create unauthorized derivative artwork to attach to the unauthorized

17

duplication of the DVD packaging of Plaintiff's Works, which then were unlawfully sold by RDF and RDF Store.   (FAC ¶¶ 45, 47, 74, 88, 89.)   All of the above unlawful infringement was on-going throughout the litigation that ensued among the parties starting in 2010 and continuing (FAC at ¶ 41), and Plaintiff now seeks to have this infringement cease once and for all.

The Motion should be denied in its entirety.

### C.   The Vicarious Infringement Claims Against Individual Defendants State Claims Upon Which Relief Can Be Granted.

A claim for vicarious infringement requires a showing that a party "has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Visa*, *supra*, at 802 (footnote omitted).

#### 1.   *Individual Defendants are personally liable for the conduct of RDF and the RDF Store as each of them exercises a sufficient level of control over RDF and the RDF Store with respect to the infringing activities.*

The test for right or ability to supervise infringing requires both "a legal right to stop or limit the directly infringing conduct . . . [and] the practical ability to do so." *Amazon.com*, 487 F.3d at 730. It is irrelevant whether a party chooses to exercise this right; a decision not to supervise does not remove the responsibility to do so. *Visa*, 494 F.3d at 816-17. It is also irrelevant whether the supervised direct infringers could still infringe through alternative methods even assuming proper supervision is exercised. *Id.* at 817.

In the Motion, Defendants: [1] do not contest that vicarious copyright infringement is sufficiently pled against the Foundation and the Store; and [2] do not contest that the first element of vicarious copyright infringement – "the right and ability to supervise the infringing conduct" (*Visa*, 494 F.3d at 802) – is sufficiently pled as to these Individual Defendants.  (*See* Mot. at 21-22.)

### 2.    *These Individual Defendants Have A Direct Financial Interest in Underlying Infringing Activity*

To establish a direct financial interest in the underlying infringing activity, a party must demonstrate a "causal relationship between the infringing activity" and a financial benefit, no matter how small that benefit is to the defendant. *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).

Plaintiff's Works serve as a "draw" that brings more attention to Dawkins, and RDF. These Individual Defendants have actively and materially contributed to and actively induced the underlying infringement of Plaintiff's Works in order to obtain greater publicity for Dawkins and RDF. *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263-64 (9th. Cir. 1996) (finding a swap meet operator liable as a vicarious infringer for (1) financially benefiting from the infringing activity of another while (2) having the right and ability to supervise the place where the infringement occurred); *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc*., 443 F.2d 1159, 1162-63 (2d Cir. 1971) (finding a local concert association liable as a contributory infringer for (1) materially contributing to the public performance of copyrighted works with (2) knowledge that such performances were infringing).

Additionally, the declaration of Robin Cornwell in support of the Ex Parte TRO in related case CV 12-10694 demonstrates that the ability of RDF to fundraise is directly related to the availability of these Works, or that these Works increases RDF's "customer base" and revenue accordingly. (Decl. of R. Cornwell ISO *ex parte* TRO in related case no. CV 12-10694, ¶19 [Dkt #9 in CV 12-10694].) RDF is alleged to be a direct infringer. Robin Cornwell is the "Executive Director" of RDF, Michael Cornwell is the "Operations Manager" of RDF" and RDF is Dawkins' own namesake foundation. All three of these Individual Defendants derive a financial benefit from RDF's ability to fundraise from its donors, as it secures their employment and position with the organization.

1    Here, Plaintiff has met its requirement to plead (a) a causal relationship between
2    the direct infringement and any benefit to these Individual Defendants; and (b) that the
3    alleged benefit to these Individual Defendants constitutes a financial benefit within the
4    meaning of the vicarious liability test.  *Visa*, 494 F.3d at 802.

5        Defendants' Motion to Dismiss should be denied in its entirety.

6    **VI.   PLAINTIFF'S CLAIM FOR FRAUD STATES A CLAIM UPON WHICH**
7    **RELIEF CAN BE GRANTED.**

8        Contrary to Defendants' argument, the fraud claim has been alleged with sufficient
9    particularity to comply with FRCP 9(b).  The allegations must be "specific enough to
10   give defendants notice of the particular misconduct which is alleged to constitute the
11   fraud charged so that they can defend against the charge and not just deny that they have
12   done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Scienter
13   may be averred generally, simply by saying that it existed. *See id*. at 1547; *see* Fed. R.
14   Civ. P. 9(b) ["Malice, intent, knowledge, and other condition of mind of a person may be
15   averred generally"]. As to matters peculiarly within the opposing party's knowledge,
16   pleadings based on information and belief may satisfy Fed. R. Civ. P. 9(b) if they also
17   state the facts on which the belief is founded.  *Wool v. Tandem Computers, Inc.*, 818 F.2d
18   1433, 1439 (9th Cir. 1987).

19       In their Motion, Defendants wrongfully contend that a fraud claim must be pled
20   with "a high degree of meticulousness." (Motion pg. 12:28). That is not the correct
21   standard and Defendants are simply mistaken.  Rather, this standard refers to the pleading
22   requirements of the Private Securities Litigation Reform Act, inapplicable here.  *Norcal*
23   *Waste Sys. v. Apropos Tech., Inc*., 2006 U.S. Dist. LEXIS 58516  *9, fn. 2. In any event,
24   Plaintiff has alleged in ¶¶129 – 131 of the FAC the "who, what, when, where, and how"
25   of the alleged fraud in the inducement.  The FAC sufficiently alleges "the time, place and
26   nature of the alleged fraudulent activities" [see *Wool,* 818 F.2d at 1439], and has also
27   sufficiently alleged "what is false or misleading about a statement, and why it is false" in
28   compliance with *In re GlenFed, Inc., Sec. Litig.*, 42 F.3d 1541 (9th Cir. 1994).  *Id.*

20

- The time: Starting in December 2009 (FAC ¶131)
- The place: Los Angeles (FAC ¶131)
- The nature of the fraudulent activities: False representations by RDF, Dawkins and Robin Cornwell to Plaintiff that "RDF would 'buy out the store' and provide monetary consideration to Plaintiff and compensate Plaintiff for all of its inventory and the costs and liabilities incurred by Plaintiff as a result of the conveyance, transfer and assignment of assets to RDF. . ." (FAC ¶130).
- What is false or misleading about a statement and why it is false: Fraudulently acquiring Plaintiff's assets and then selling Plaintiff's assets to the public "without ever having provided the promised monetary consideration or compensation to Plaintiff, as promised. . . ." (FAC ¶135).

Accordingly, the FAC contains sufficient allegations to maintain a fraud claim against RDF, Dawkins and Robin Cornwell.

## VII. THE CLAIMS FOR BREACH OF ORAL CONTRACT AND IMPLIED CONTRACT STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In their Motion, Defendants complain that terms of the alleged oral contract and/or implied contract are not sufficiently pled, and that the specific monetary consideration and the assets that are the subject of the oral contract are purportedly not pled with sufficient detail. Defendants also spuriously claim that they do not know which intellectual property works are the subject of the claim, even though all of the copyright registrations to the Works have been attached to the FAC.  (FAC ¶ 13; FAC, Ex. A.) However, each and every term does not have to be pled. Fed. R. Civ. P. 8(a)(2) reads as follows: "A pleading must contain a short, plain statement of the claim showing the pleader is entitled to relief and sufficient to put defendants fairly on notice of the claims against them."

Defendants argue that the alleged defects "are not minor nits to be picked despite an otherwise valid claim." (Mot. at 16:10). But that is precisely what the Defendants have done – they are nitpicking the general factual allegations in the hope of having the entire action summarily dismissed. For example, Defendants take issue with the allegations concerning the amount of monetary consideration that they allegedly agreed to pay for Plaintiff's assets.  (Mot. at 18).  However, Plaintiff is not required to state the precise dollar amount of consideration under Fed. R. Civ. P. 8.  *Id.*  As to the assets that Defendants agreed to purchase, to which they claim ignorance, (*see, e.g.* Mot. at 18:13), Plaintiff specifically alleges, *inter alia*, that Defendants agreed to "buy out the store" (*i.e.* all of the physical inventory), of which Defendants took physical possession. Under the circumstances, it is well within Defendants' knowledge to know the items of inventory that were taken, and the requirements of Fed. R. Civ. P. 8 have been satisfied here.  *Id.*

## A.    The Statute Of Limitations Does Not Bar The Contractual Claims.

Defendants argue that California's two-year statute of limitations for breach of oral contract bars the two contractual claims.  However, that is not the case. The statute of limitations does not begin to run from time of making oral contract, but from time cause of action accrues or as of date of breach of obligation.  *Niles v. Louis H. Rapoport & Sons, Inc*. 53 Cal.App.2d 644, 651, 128 P.2d 50 (1942).  Indeed, a contract may contemplate a delay for the repayment of money due on demand, in which case, the statute does not run until actual demand or the happening of the event designated in the contract as the limit of payment. *Greenfield v. Sudden Lumber Co*. 18 Cal. App. 2d 709, 206 P.2d 643 (1937).  Moreover, if a plaintiff is lulled into delaying the presentation of her claim by a continuous course of misleading conduct on the part of the defendant, such as promises to pay a debt, estoppel will prevent the defendant from using the statute of limitations to claim that the action is untimely. *Gaglione v. Coolidge* 134 Cal. App. 2d 518, 527, 286 P.2d 568 (1955).  Here, Defendants continually delayed payment on repeated assertions of the need for more information so that a figure could be reached and thereafter engaged settlement negotiations continually putting off the falsely promised

payment to Plaintiff.   (FAC   ¶¶ 38, 140, 142).   Moreover, to the extent that such exploitation of the Works continues, such ongoing breaches give rise to ongoing damages.   Under the circumstances, it is at a minimum a question of fact whether facts supporting estoppel exist here, and the instant motion at this stage of the case cannot be granted.

## VIII.  CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully submits that the instant Motion is properly denied in its entirety. Alternatively, if the Court is somehow inclined to grant any of the instant Motion, Plaintiff respectfully submits that it should grant Plaintiff leave to amend which, as the Court is aware, "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).

Dated:  January 7, 2013                Respectfully submitted,

                                       COSTA ABRAMS & COATE, LLP

                                       By:  /s/ Charles M. Coate
                                       Charles M. Coate
                                       Alan Abrams
                                       Attorneys For Plaintiff Upper Branch Productions, Inc.

## DECLARATION OF CHARLES M. COATE

I, CHARLES M. COATE, hereby declare as follows:

1.      I am a partner with the law firm of Costa, Abrams & Coate LLP, counsel of record for Upper Branch Productions, Inc. ("Plaintiff").  The matters set forth herein are true and correct and of my own personal knowledge, and if called upon to testify to these matters, I could and would do so competently.  I make this declaration in support of Plaintiff Upper Branch Productions, Inc.'s ("Plaintiff") opposition to the motion to dismiss filed by defendants The Richard Dawkins Foundation For Reason And Science (RDF), Richard Dawkins Foundation Store ("RDF Store"); Clinton Richard Dawkins ("Dawkins"), Robin Elisabeth Cornwell ("Robin Cornwell") and Michael Cornwell ("Mike Cornwell") [collectively "Defendants"].

2.      On December 13, 2012, my office served Defendants' counsel (Timothy Reynolds, Esq.) a "Notice of Unavailability of Counsel" stating that I would be unavailable from January 2-6, 2013.  Attached hereto and incorporated herein as **Exhibit "A"** is a true and correct copy of this document.

3.      I attach and incorporate herein as **Exhibit "B"** a true and correct copy of my prior declaration (physically omitting exhibits which are voluminous) but which was submitted in its entirety by Plaintiff and filed as Docket #13 in opposing the *ex parte* application for a temporary restraining order that was filed by Defendant RDF in the related case entitled The Richard Dawkins Foundation for Reason and Science v. Upper Branch Productions, Inc., CV 12-10694-MWF (RZx).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and was executed on this 7th day of January 2013, at Santa Monica, California.

CHARLES M. COATE

24

## <u>DECLARATION OF JOSH TIMONEN</u>

I, JOSH TIMONEN, hereby declare as follows:

1.     I am over eighteen (18) years of age and am a party to this action. The matters set forth herein are true and correct and of my own personal knowledge, and if called upon to testify to these matters, I could and would do so competently.  I make this declaration in support of plaintiff Upper Branch Productions, Inc. ("Plaintiff") opposition to the motion to dismiss filed by defendants The Richard Dawkins Foundation For Reason And Science (RDF), Richard Dawkins Foundation Store ("RDF Store"); Clinton Richard Dawkins ("Dawkins"), Robin Elisabeth Cornwell ("Robin Cornwell") and Michael Cornwell ("Mike Cornwell") [collectively "Defendants"].

2.     I met with Richard Dawkins, Robin Cornwell, and Michael Cornwell, in person, on several occasions over the preceding years (between 2006 and 2010), while they were in California either fundraising for RDF or giving talks on related matters and advertising the same on the richarddawkins.net website, a website I created and maintained for Dawkins personally on an independent contractor basis.  I reviewed my personal records in order to refresh my recollection concerning the dates of these events and also searched the archives of richarddawkins.net, on which I had catalogued such advertised information prior to the occurrence of the event, at Dawkins' request.

3.     On October 28, 2006, I met Dawkins in Los Angeles, California for a lunch meeting before Dawkins attended an event at the California Institute of Technology in Pasadena, California.  I advertised this event for Dawkins on richarddawkins.net.     *See* http://web.archive.org/web/20061031215722/http://www.richarddawkins.net/event,28,Cal-Tech-Beckman-Auditorium.

4.     On October 29, 2006, Dawkins attended an event in Menlo Park, California. I advertised this event for Dawkins on richarddawkins.net.     *See* http://web.archive.org/web/20080111064855/http://richarddawkins.net/          event,52, Keplers-Books-and-Magazines.

5.     On October 30, 2006, Dawkins attended an event in San Francisco, California.   I advertised this event for Dawkins on richarddawkins.net.   *See* http://web.archive.org/web/20080110221536/http://richarddawkins.net/  event,  47,The-Palace-of-Fine-Arts.

6.     On October 30, 2006, Dawkins attended an event in San Francisco, California.   I advertised this event for Dawkins on richarddawkins.net.   *See* http://web.archive.org/web/20080110221536/http://richarddawkins.net/event,47,The-Palace-of-Fine-Arts.

7.     On July 14, 2007, Dawkins attended an event at Menlo Park , California.  I advertised    this    event    for    Dawkins    on    richarddawkins.net.    *See* http://web.archive.org/web/20080110221520/http://richarddawkins.net/event,168,Keplers-Book-Store.

8.     On March 8, 2008, Dawkins and Robin Cornwell were in Berkeley, California attending an event, which I also attended.  This event was also advertised on Dawkins' website, richarddawkins.net.

9.     On March 9, 2008, Dawkins and Robin Cornwell attended an event at Stanford University in California.  This event was also advertised on Dawkins' website, richarddawkins.net.

10.     January 24th 2009: Los Angeles, CA. Robin Cornwell attended a meeting and gave a lecture at an event organized by a group called the "LA. Atheist United." I attended that meeting along with Ms. Norton.

11.     June 2009: Los Angeles, CA. Robin Cornwell gave talk at an organization called the Center for Inquiry (CFI).  I am informed and believe that she is now a board member of this organization.  I attended that talk by Robin Cornwell on that date.

12.     On October 5, 2009, Dawkins and Robin Cornwell attended a large fundraising event that was sponsored by RDF in Menlo Park, California.  I also attended this event.  Prior to this event, I met with Dawkins, Robin Cornwell, and Andy Thomson in Menlo Park, California,  and discussed the online store "transfer agreement" in person.

Maureen Norton was also present at this meeting.   At this meeting, RDF trustees, Dawkins and Cornwell, orally expressed agreement to move forward with the store transition as we describe it.

13.   In October 2009, Dawkins and Michael Cornwell attended the Atheist Alliance International (AAI) 2009 Conference in Burbank, California.  I also attended that conference and discussed various issues with Dawkins and Michael Cornwell pertaining to RDF at such conference.  Moreover, this conference was advertised on Dawkins' website, richarddawkins.net.

14.   On October 6, 2010, Dawkins as a part of his annual US Tour, spoke at the California Institute of Technology in Pasadena, California.  I found these facts advertised on Dawkins' website, richarddawkins.net.

15.   On October 7th 2011, Dawkins was interviewed by the radio station KPFK-FM in Los Angeles on the "The Michael Slate Show."  I found these facts advertised on Dawkins'website, richarddawkins.net.  *See* http://old.richarddawkins.net/videos/643188-us-book-tour-details-forrichard-dawkins-the-magic-of-reality.

16.   On April 4th 2012, Dawkins spoke at University of California at Santa Barbara in Santa Barbara, California, Robin Cornwell also attended that event.  I found these facts advertised on Dawkins' website, richarddawkins.net.   *See* http://richarddawkins.net/events/13#.UMFZ6Y7O1vk.

17.   On April 6 2012, Dawkins and Robin Cornwell spoke at an event in San Diego, California followed by a private reception at private home.  I found these facts advertised on Dawkins' website, richarddawkins.net.   *See* http://richarddawkinssandiego.com   and   http://old.richarddawkins.net/articles/645068-richard-dawkins-marchapril-2012-us-tour-dates.

18.   April 6, 2012: San Diego, CA. Robin Cornwell spoke at a lecture entitled: "A secular Society." I found this fact advertised on richarddawkins.net.   See http://richarddawkins.net/events/12#.UMFZyo7O1vk.

19.    On October 2012, Dawkins & Robin Cornwell lectured at an event in San Francisco, California, following a $1,000-per-plate private fundraiser.  I found these facts advertised on Dawkins' website, richarddawkins.net.   *See* http://richarddawkins.net/events/2012/10/11/you-areinvited-to-a-private-reception-with-richard-dawkins-adam-savage#.UMFVj6XjPwo.

20.    October 7th, 2012: Los Angeles, CA. Robin Cornwell spoke at a lecture organized by CFI: See http://www.cfiwest.org/calendar/FeedYourBrain.htm.

21.    Future events I found advertised on Dawkins' website, richarddawkins.net: "An evening with Matt Dillahunty, 1515 Hotel Circle South San Diego CA United States 92108,    Sat    Jan    12    at    07:00PM    to    08:30PM    PST."    *See* http://richarddawkins.net/events#.UOtfcqz-aSo.

22.    Dawkins is a best-selling author who continuously sells books and videos in California (e.g. through bookstores, the internet, etc.) to California residents, including the videos in question financed and produced by Upper Branch, and aside from engaging in RDF fundraising in California (RDF's largest donor is a California resident, Elon Musk)  Dawkins also continues to operate his personal website that intentionally reaches California (as well as elsewhere) and advertise his and RDF's continual connections with California.

23.    Robin Cornwell submitted a declaration in a California State Court action entitled *Josh Timonen et al. v. The Richard Dawkins Foundation for Reason and Science, et al.*, Los Angeles County Superior Court, Case No. EC 057388.  Therefore, it is likely that she anticipated being called as a witness in California relating to that state court action.  Furthermore, in her declaration, Robin Cornwell admits that she traveled to Los Angeles, California on July 18, 2011, to attend a mediation in that case. I also attended that mediation in Los Angeles, California.

24.    Robin  Cornwell was born in California.

25.    Robin Cornwell advertises that she worked in "the semiconductor industry in California" on http://www.darwindaybroward.com/speakers.html.

26.     Mike Cornwell has lived and been employed in California for many years. For instance, contrary to the insinuations in his sparse declarations, Mike Cornwell worked at a company called "Form Factor, Inc. from June 2004 – September 2005.  That company is located in the Bay Area of Northern California.  Mr. Cornwell also worked for a company called "Eyelit" in Fremont California from May 2008 – January 2009.   I found this information advertised on Mike Cornwell's Linked In page online at linkedin.com.

27.     I am informed and believe that Robin Cornwell and Michael Cornwell were married at one point and they lived in the following California cities: San Jose, Livermore, Mountain View, Menlo Park and Santa Clara.

28.     In an email that Mike Cornwell wrote to me on or about April 13, 2009, Mike Cornwell wrote, *inter alia*, that "hopefully I'll be heading out towards California if I'm able to get a contract I've been working towards. I'm pretty sure Robin [Cornwell] mentioned that if I'm out in San Jose, I'll be easily be able to come down for a weekend [to Los Angeles] and we can talk about how I can help with the store stuff in the future . . ."

29.     In an email that Mike Cornwell wrote to me on or about April 28, 2009, Mike Cornwell wrote, inter alia, that "I'm probably (90% likely) going to start a contract in San Jose on May 18th . . . I'll be in Colorado until probably May 11th then hopefully driving out to California to start work the following week after I find an apartment. I'll be flying back and forth to Colorado every other week or so like I've done for the last 10+ years."

30.     In an email that Mike Cornwell wrote to me on or about May 12, 2009, Mike Cornwell wrote, inter alia, that "I'm in Colorado one more day then am driving out toward California on Wednesday morning. . ."

31.     In an email that Mike Cornwell wrote to me on or about May 18, 2009, Mike Cornwell wrote, inter alia, that "It was good to see you, Maureen [Norton], your office and Goldie. Thanks for dinner. Hopefully I'll sort out where I'll be and what I'm doing in

1   the next few days. I'm right across from Magic Mountain and will be driving up to the

2   Bay Area tomorrow morning."

3        32.    Mike Cornwell also attended various conferences and events in California.

4   For instance, Mike Cornwell and I attended the AAI 2009 Conference that took place in

5   October 2009, in Burbank, California.

6        33.    I am informed and believe that Mike Cornwell traveled to the Bay Area,

7   California in March 2010.

8

9

10   I declare under penalty of perjury under the laws of the State of California that the

11   foregoing is true and correct and was executed on this 7TH day of January 2013, at

12   Portland, Oregon.

13

14                          JOSH TIMONEN

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OPP. TO MOTION TO DISMISS FAC
Case No. 12-CV-8789 MWF (RZx)

1   Alan Abrams, Esq. (SBN: 75637)
    Charles M. Coate, Esq. (SBN 140404)
2   ccoate@cacllp.com
    COSTA ABRAMS & COATE LLP
3   1221 Second Street, Third Floor
    Santa Monica, California  90401
4   Tel: (310) 576-6161
    Fax: (310) 576-6160
5   Attorneys for Plaintiff
    Upper Branch Productions, Inc.

6

7

8            **UNITED STATES DISTRICT COURT**

9            **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11   UPPER BRANCH PRODUCTIONS, INC., a California corporation, | Case No.: CV12-8789 MWF (RZx) |
| 12 | *Assigned to the Hon. Michael W. Fitzgerald* |
| 13 | |
| 14           Plaintiff, | **NOTICE OF UNAVAILABILITY OF COUNSEL** |
| 15 | |
| 16    vs. | |
| 17   INNERWORKINGS, INC., an Illinois corporation; THE RICHARD | |
| 18   DAWKINS FOUNDATION FOR | |
| 19   REASON AND SCIENCE, a | |
| 20   Delaware corporation; RICHARD DAWKINS FOUNDTAION | |
| 21   STORE, a Colorado limited liability | Action Filed:  October 12, 2012 |
| 22   company; CLINTON RICHARD | |
| 23   DAWKINS, an individual residing in England; ROBIN ELISABETH | |
| 24   CORNWELL, an individual residing | |
| 25   in the State of Colorado; MICHAEL CORNWELL, an individual residing | |
| 26   in the State of Colorado; and DOES | |
| 27   1 through 10, inclusive, | |
| 28         Defendants. | |

29

Ex. "A"

1

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that the undersigned will be out of town and unavailable for the time period of January 2nd through January 6th, 2013. Please kindly make a note of the same with regard to scheduling.

Respectfully submitted,

DATED: December 17, 2012     By: _____

Charles M. Coate
COSTA ABRAMS & COATE LLP
Attorneys for Plaintiff Upper Branch
Productions, Inc.

32

2

1

2

3

4

**PROOF OF SERVICE**

**STATE OF CALIFORNIA**                    )
                                           )
**COUNTY OF LOS ANGELES**                  )

5

6

7

8

   I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1221 Second Street, Third Fl., Santa Monica, CA 90401.  On December 13, 2012, I served the document described as NOTICE OF UNAVAILABILITY OF COUNSEL on the interested parties in this action by email as follows:

9

10

11

12

13

14

Timothy Reynolds, Esq.
Patrick J. Hagan, Esq.
Bryan Cave LLP
120 Broadway, #300
Santa Monica, CA 90401-2386
timothy.reynolds@bryancave.com
patrick.hagan@bryancave.com

15

16

17

Frank A. Konecny, Esq.
550 Montgomery St., # 200
San Francisco, CA 94111
faklaw@sbcglobal.net

18

19

20

[X]   **(BY EMAIL)** I emailed the above document to the listed email addresses listed above, and did not receive a notice that such email had not been received.

21

22

[X]   **(Federal)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

23

   Executed December 13, 2012, at Santa Monica, California.

24

25

Shian V. Brisbois

26

27

28

29

1  Charles M. Coate, Esq. (SBN 140404)
   COSTA ABRAMS & COATE LLP
2  1221 Second Street, Third Floor
   Santa Monica, California 90401
3  Tel: (310) 576-6161
   Fax: (310) 576-6160
4  ccoate@cacllp.com

5  Attorneys for Lead Case Plaintiff
   Upper Branch Productions, Inc.

6

7            **UNITED STATES DISTRICT COURT**

8       **FOR THE CENTRAL DISTRICT OF CALIFORNIA – WESTERN**
                        **DIVISION**
9

| | |
|---|---|
| 10  THE RICHARD DAWKINS FOUNDATION FOR REASON AND SCIENCE, a Delaware non-profit corporation, | Related Case No.: CV12-10694 CBM (AJWx) *Assigned to District Judge Consuelo B. Marshall* |
| 13          Plaintiff, | **DECLARATIONS OF CHARLES M. COATE AND JOSH TIMONEN IN SUPPORT OF OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| 14          vs. | |
| 15  UPPER BRANCH PRODUCTIONS, INC., a California corporation, | |
| 17          Defendant. | |
| 18  UPPER BRANCH PRODUCTIONS, INC., a California corporation, | [OPPOSITION TO EX PARTE APPLICATION; MEMORANDUM OF POINTS AND AUTHORITIES; AND EVIDENTIARY OBJECTIONS FILED CONCURRENTLY HEREWITH] |
| 20          Plaintiff, | |
| 22          vs. | |
| 23  INNERWORKINGS, INC., a Delaware corporation; THE RICHARD DAWKINS FOUNDATION FOR REASON AND SCIENCE, et al. | Lead Case No. CV-12-8789 MWF (RZx) *Assigned to District Judge Michael W. Fitzgerald* |
| 27          Defendants. | |

                            1

**Ex. "B"**

1

## DECLARATION OF CHARLES M. COATE

2   I, CHARLES M. COATE, hereby declare as follows:

3       1.      I am a partner with the law firm of Costa, Abrams & Coate LLP,

4   counsel of record for Upper Branch Productions, Inc. ("Lead Case Plaintiff"). The

5   matters set forth herein are true and correct and of my own personal knowledge,

6   and if called upon to testify to these matters, I could and would do so competently.

7   I make this declaration in support of Lead Case Plaintiff's opposition to the ex

8   parte application for temporary retraining order and preliminary injunction filed by

9   The Richard Dawkins Foundation For Reason And Science (otherwise referred to

10  by the parties as "RDF" or "RDFRS" or "Foundation").

11      2.      Attached hereto as **Exhibit "1"** is a true and correct copy of the

12  complaint that was filed by RDFRS and Clinton Richard Dawkins, as an individual

13  ("Dawkins"), against Josh Timonen, Maureen Norton, and Lead Case Plaintiff

14  Upper Branch Productions, Inc., on October 4, 2010 in the Los Angeles County

15  Superior Court, North Central District, bearing case no. EC054190 (hereafter

16  "EC054190").   Costa, Abrams & Coate LLP was counsel of record for Josh

17  Timonen, Maureen Norton, and Upper Branch Productions, Inc. in EC054190, as

18  well.

19      3.      Specifically, in EC054190, RDFRS and Dawkins in part sought a

20  declaration of ownership of the copyrights in the Works.   The complaint in

21  EC054190 alleged in pertinent part:

22          •         "On July 15, 2010, [Timonen, Norton, and Upper Branch

23                    Productions's] lawyer, Alan Abrams, Esq., sent an email

24                    to [RDFRS and Dawkins'] litigation counsel suggesting

25                    that "the RDF[RS] website (which . . . was created by

26                    Mr. Timonen) . . ., merchandise using the RDF[RS] logo

27                    created by Mr. Timonen, and audio-visual and musical

28

29

1   materials created and produced by Mr. Timonen" are all

2   'Mr. Timonen's intellectual property rights' which have

3   not been transferred or assigned to RDFRS or Dawkins."

4   **(Exhibit "1,"** at Complaint, Page 9, ¶ 33.)

5   • "In fact, <u>all</u> 'intellectual property' Defendant Timonen

6   created for [Dawkins and RDFRS] at <u>all</u> times and for

7   <u>any</u> purpose is a 'work for hire' commissioned and paid

8   for by [Dawkins and RDFRS]. Consequently, any

9   copyrights, trademarks or other intellectual property

10  rights pertaining to logos, merchandise, 'audio-visual or

11  musical materials created and produced by Mr. Timonen"

12  for [the Upper Branch Store, RDFRS or Dawkins] belong

13  to [RDFRS and Dawkins]." **(Exhibit "1,"** at Complaint,

14  Page 9, ¶ 34.)

15  • "An actual controversy has arisen and now exists

16  between [RDFRS and Dawkins] and [Timonen, Norton,

17  and Upper Branch Productions]. [RDFRS and Dawkins]

18  contend all of the intellectual property, logos,

19  trademarks, copyrights, merchandise, music and audio-

20  visual materials [Timonen, Norton, and Upper Branch

21  Productions] created for [RDFRS and Dawkins], any of

22  [the] websites and [the Upper Branch Store] were 'works

23  made for hire' that belong to [RDFRS and Dawkins.] . . .

24  (the 'Contested Rights')." **(Exhibit "1,"** at Complaint,

25  Page 16, ¶ 77.)

26  • Accordingly, Dawkins and RDFRS requested, *inter alia,*

27  "[f]or a judgment declaring all the Contested Rights

28

29

1                belong to [Dawkins and RDFRS] and invalidating any

2                purported or recorded claim of [Timonen, Norton, and

3                Upper Branch Productions] in or to the Contested

4                Rights." (**Exhibit "1,"** at Complaint, Page 18.)

5       4.     Josh Timonen, Maureen Norton, and Upper Branch Productions

6 sought to transfer EC054190 to federal court on the basis that it appeared from the

7 face of the complaint that RDFRS and Dawkins sought to adjudicate copyright

8 ownership in EC054190. EC054190 was ultimately remanded to the state court.

9       5.     Attached hereto as **Exhibit "2"** is a true and correct copy of [RDFRS

10 and Dawkins'] Brief in Support of Court's Order To Remand Action to State Court

11 ("Brief"). In such Brief, RDFRS and Dawkins specifically stated: "To be clear:

12 **Plaintiffs [RDFRS and Dawkins] expressly renounce any claim to federal**

13 **remedies or relief.** (emphasis in original)." (See **Exh. "2"** at Page 4, lines 1-2.)

14       6.     Attached as **Exhibit "3"** is a true and correct copy of the First

15 Amended Complaint ("FAC") filed by RDFRS and Dawkins against Josh

16 Timonen, Maureen Norton, and Lead Case Plaintiff Upper Branch Productions,

17 Inc. in EC054190.

18       7.     Attached as **Exhibit "4"** is a true and correct copy of the Second

19 Amended Complaint ("SAC") filed by RDFRS and Dawkins against Josh

20 Timonen, Maureen Norton, and Lead Case Plaintiff Upper Branch Productions,

21 Inc. in EC054190.

22       8.     Specifically, in EC054190, RDFRS and Dawkins further alleged in

23 the FAC and SAC in pertinent part as follows:

24              •        "Defendant Timonen agreed when he first started doing

25                any work for the foundation that <u>all</u> IP he created for

26                Plaintiffs [RDFRS and Dawkins] at all times and for any

27

28

29

1    purpose would belong to RDFRS." (**Exhs "3" and "4"**

2    at FAC ¶ 34 and SAC ¶ 34.)

3    •    "Even with respect to items of IP for which Defendants

4         [Josh Timonen, Maureen Norton, and Upper Branch

5         Productions, Inc.] did not sign 'work for hire' contracts

6         or assignments of copyright, <u>Plaintiffs [RDFRS and</u>

7         <u>Dawkins] have permanent nonexclusive licenses to use</u>

8         <u>and commercially exploit these intellectual property</u>

9         <u>rights for the benefit of RDFRS, by virtue of the parties'</u>

10        <u>conduct and operation of law</u> . . . " (Emphasis Added.)

11        (**Exhs. "3" and "4"** FAC ¶ 36 and SAC ¶ 36.)

12    •    "The conduct of the parties giving rise to Plaintiffs'

13        permanent nonexclusive licenses to Defendants'

14        purported IP include, without limitation, these facts:

15            a.  All the disputed IP items were commissioned

16                and paid for by Plaintiffs…

17            d.  All of them were created solely and explicitly

18                for Plaintiffs' benefit . . ."

19        (**Exhs. "3" and "4"** FAC ¶ 37 and SAC ¶ 37.)

20    9.    The above allegations by RDFRs and Dawkins in Paras. 36 and 37 of

21    the FAC and SAC in EC054190 were incorporated into RDFRS' subsequent

22    claims against Lead Case Plaintiff Upper Branch Productions for breach of

23    contract, breach of the covenant of good faith and fair dealing and intentional

24    interference with its contractual relations with Idea Media (the successor in interest

25    to lead case defendant Innerworkings, Inc.) (**See Exhs. "3" and "4".**)

26    10.    Attached as **Exhibit "5"** is a true and correct copy of a motion to

27    compel further responses to inspection demands and compliance as agreed upon,

28

29

1    and request for sanctions, that was filed by my office in EC054190 on May 13,

2    2011. Its contents were true and correct.

3        11.    Attached as **Exhibit "6"** is a true and correct copy of the Notice of

4    Ruling granting in part the motion to compel further responses and request for

5    sanctions that was filed by my office in EC054190 on June 22, 2011.

6        12.    Attached as **Exhibit "7"** is a true and correct copy of the Stipulation

7    re: Mediation and Continuance of Filing of Cross-Complaint in EC054190.

8        13.    Attached as **Exhibit "8"** is a true and correct copy of a motion for

9    terminating sanctions that was filed by my office in EC054190. Its contents were

10   and are true and correct.

11       14.    Attached as **Exhibit "9"** is a true and correct copy of RDFRS and

12   Dawkins' request for dismissal without prejudice of EC054190 dated July 18,

13   2011.

14       15.    Attached as **Exhibit "10"** is a true and correct copy of my clients' "ex

15   parte application" to dismiss the SAC in EC054190 with prejudice or to place the

16   motion for terminating sanctions back on calendar. Its contents were and are true

17   and correct.

18       16.    Attached as **Exhibit "11"** is a true and correct copy of the reporter's

19   transcript of proceedings that took place in the EC054190 on August 2, 2011. I

20   attended that hearing and this transcript accurately reflects the dialogue that

21   transpired on the record that day.

22       17.    Attached as **Exhibit "12"** is a true and correct copy of the request for

23   dismissal with prejudice filed by RDFRS and Dawkins in EC054190 dated July 27,

24   2011.

25       18.    Attached as **Exhibit "13"** is a true and correct copy of the Court's

26   Minute Order from EC054190 dated August 2, 2011, wherein the Court granted

27

28

29

1  the "ex parte application" filed by Josh Timonen, Maureen Norton, and Upper

2  Branch Productions, Inc. and dismissed EC054190 with prejudice.

3       19.    Costs were thereafter awarded against RDFRS and Dawkins in

4  EC054190 in favor of Josh Timonen, Maureen Norton, and Upper Branch

5  Productions.

6       20.    Attached hereto as **Exhibit "14"** is a true and correct copy of the First

7  Amended Complaint filed by Upper Branch Productions, Inc. against

8  InnerWorkings, Inc., RDFRS, Dawkins, et al. on December 10, 2012 in the United

9  States District Court, Western Division, bearing case no. CV12-8789 MWF (RZx).

10       21.    I was informed by Timothy Reynolds of Bryan Cave LLP that the

11  instant application was filed with the Court the morning of December 14, 2012.

12  Despite the fact that Bryan Cave's counsel of record Patrick Hagan works out of

13  the Santa Monica office approximately three blocks away from my own, this office

14  was not provided full copies of all application papers until approximately 4:00 p.m.

15  Also, despite a number of requests by e-mail as to the case number and judicial

16  assignment of this matter, I was not furnished this complete information by

17  opposing counsel on Friday, December 14, 2012, and I subsequently first learned

18  of the assigned judicial officer by accessing PACER on Saturday, December 15,

19  2012. Under the circumstances, it is my belief that the service of papers in this

20  matter in no way complied with this Court's Civility and Professionalism

21  Guidelines regarding service of papers (Civility and Professionalism Guidelines at

22  Para. 3 Service of Papers: "We will not serve papers in order to take advantage of

23  an opponent's known absence from the office or at a time or in a manner designed

24  to inconvenience an adversary, such as late on Friday afternoon or the day

25  preceding a secular or religious holiday.")

26

27

28

29

1    I declare under penalty of perjury under the laws of the State of California

2  that the foregoing is true and correct and was executed on this 17th day of

3  December 2012, at Santa Monica, California.

4

5  _____

6

7        CHARLES M. COATE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29