Alan Abrams, Esq. (SBN: 75637)
Charles M. Coate, Esq. (SBN: 140404)
Email: ccoate@cacllp.com
COSTA, ABRAMS & COATE, LLP
1221 Second Street, Third Floor
Santa Monica, CA 90401
Telephone: (310) 576-6161
 Facsimile: (310) 576-6160

Attorneys for Plaintiff
Upper Branch Productions, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UPPER BRANCH PRODUCTIONS, INC., a California corporation,<br><br>              Plaintiff,<br><br>       vs.<br><br>INNERWORKINGS, INC., a Delaware corporation; THE RICHARD DAWKINS FOUNDATION FOR REASON AND SCIENCE, a Delaware corporation; RICHARD DAWKINS FOUNDATION STORE, a Colorado limited liability company; CLINTON RICHARD DAWKINS, an individual residing in England; ROBIN ELISABETH CORNWELL, an individual residing in the State of Colorado; MICHAEL CORNWELL, an individual residing in the State of Colorado; and DOES 1 through 10, inclusive,<br><br>              Defendants. | Case No. CV-12-8789 MWF (RZx)<br><br>Related to CV-12-10694 MWF (RZx)<br><br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) COPYRIGHT INFRINGEMENT**<br>**(2) CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br>**(3) VICARIOUS COPYRIGHT INFRINGEMENT**<br>**(4) FRAUD**<br>**(5) BREACH OF ORAL CONTRACT - *IN THE ALTERNATIVE***<br>**(6) BREACH OF IMPLIED CONTRACT - *IN THE ALTERNATIVE***<br><br><br>**DEMAND FOR JURY TRIAL** |

1

Plaintiff Upper Branch Productions, Inc. ("Upper Branch" or "Plaintiff"), by its counsel, alleges against Defendants InnerWorkings, Inc. ("IWI" or "Defendant"), The Richard Dawkins Foundation For Reason And Science ("RDF" or "Defendant"), Richard Dawkins Foundation Store ("RDF Store" or "Defendant"), Clinton Richard Dawkins ("Dawkins" or "Defendant"), Robin Elisabeth Cornwell ("Robin Cornwell" or "Defendant"), and Michael Cornwell ("Mike Cornwell" or "Defendant") as follows:

## JURISDICTION AND VENUE

1.     This Court has subject-matter jurisdiction over the claims relating to the Copyright Act (17 U.S.C. §§ 101, 501) pursuant to 28 U.S.C. § 1331 (federal subject matter jurisdiction), 28 U.S.C. § 1332 (diversity jurisdiction), and 28 U.S.C. § 1338(a) (any act of Congress relating to copyrights, patents and trademarks).  This Court has subject matter jurisdiction over the related state law claims under 28 U.S.C. § 1367 (action asserting state claims joined with substantial and related federal claims under the copyright laws).

2.     This Court has personal jurisdiction over Defendants because Defendants are doing business in the State of California, and venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this lawsuit, as well as substantial injury to Plaintiff, have occurred or will occur in this District as a result of Defendants' acts of copyright infringement and impending acts of copyright infringement, as alleged in detail below.  Venue is also proper in this Judicial District pursuant to 28 U.S.C § 1400(a) in that Defendants may be found in this District in light of their extensive commercial activities in this District.

## THE PARTIES

3.     Plaintiff Upper Branch Productions, Inc. ("Upper Branch" or "Plaintiff") was and is now, and at all relevant times mentioned herein, a California corporation with its principal place of business located in Los Angeles County, California.    Josh Timonen ("Timonen") formally commenced doing business as "Upper Branch" when he registered this DBA with the Los Angeles County Recorder's Office on or about June 12, 2007.  Timonen thereafter formally incorporated Plaintiff Upper Branch Productions, Inc. with the office of the

California Secretary of State on or about April 23, 2008.  Timonen was and is now, and at all relevant times mentioned herein, an officer and employee of Upper Branch.  Maureen Norton ("Norton") was at relevant times mentioned herein an employee of Upper Branch.

4.     Plaintiff is informed and believes that Defendant InnerWorkings, Inc. ("IWI" or "Defendant") is a corporation incorporated under the laws of the state of Delaware with a principal place of business at 600 W. Chicago Ave. #850, Chicago, IL 60654.  Plaintiff is informed and believes that Defendant IWI purchased Idea Media Services, LLC, a limited liability company organized under the laws of the state of Illinois with a principal place of business at 1700 W. Hubbard Street, Chicago, IL 60622.

5.     Plaintiff is informed and believes that Defendant The Richard Dawkins Foundation For Reason And Science ("RDF" or "Defendant") is a Non-Stock Non-Profit Corporation incorporated under the laws of the State of Delaware with a principal place of business in the State of Colorado.

6.     Plaintiff is informed and believes that Defendant Richard Dawkins Foundation Store ("RDF Store" or "Defendant) is a limited liability company organized on or about May 27, 2010, under the laws of the state of Colorado with a principal place of business at 1605 Meridian Market View, Unit 124, PMB 381, Falcon, CO 80831.

7.     Plaintiff is informed and believes that Defendant Clinton Richard Dawkins ("Dawkins" or "Defendant") is a British citizen who resides in Oxford, England.  Dawkins is the admitted founder of RDF as well as its United Kingdom sister organization the Richard Dawkins Foundation for Reason and Science, Ltd.   According to RDF's website <richarddawkins.net>, Defendant Dawkins is an officer and/or managing agent of RDF. Plaintiff is further informed and believes that Dawkins continues to ultimately maintain the right to supervise and control his namesake foundation RDF and his namesake store RDF Store in terms of the infringing activity as set forth below.  Further, Plaintiff is informed and believes and on that basis alleges that Dawkins knew or had reason to know of infringing activity set forth below and intentionally induced or materially contributed to the infringing activity set forth below.

8.      Plaintiff is informed and believes that Defendant Robin Elisabeth Cornwell ("Robin Cornwell" or "Defendant") is a former citizen of the State of Colorado, who now resides in the District of Columbia, and is an officer and/or managing agent of Defendants RDF and RDF Store.

9.      Plaintiff is informed and believes that Michael Cornwell ("Mike Cornwell" or "Defendant") is a citizen of the State of Colorado, and is an employee of Defendant RDF and/or Defendant RDF Store.  Plaintiff is further informed and believes that Mike Cornwell is operating the RDF Store out of his home in Elbert, Colorado.

10.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendant DOES 1 through 10, inclusive, and presently unknown to Plaintiff, who therefore sues these Defendants by such fictitious names.  Plaintiff is informed and believes and thereon alleges that each of the DOE Defendants was and is either intentionally, negligently, or in some other manner, the cause or contributing cause of, or otherwise responsible for, the damages suffered by Plaintiff.  Plaintiff will amend this Complaint to allege the true names and capacities of each DOE Defendants, together with such allegations as may be appropriate, when their names have been ascertained.

11.     Plaintiff is further informed and believes and thereon alleges that at all relevant times mentioned herein, each Defendant was the agent, servant, employee, partner, joint venture and/or franchisee of each of the remaining Defendants herein, and was at all times acting within the course and scope of said agency, service, employment, partnership, joint venture and/or franchise.  Moreover, Plaintiff is informed and believes, and based thereon alleges, that each act or omission hereinafter alleged on the part of any one Defendant was done with the approval and consent and was ratified by each of the remaining Defendants.

SECOND AMENDED COMPLAINT

# FACTUAL BACKGROUND

## Upper Branch Owns Copyrights In and To Multiple Works

12.     Plaintiff owns valid and registered copyrights in and to each of the fifteen (15) DVDs, artwork, DVD menus, and other audiovisual works at issue here, and these works are described in the copyright certificates collectively attached hereto as **Exhibit "A."**  Each such work contains a large number of creative elements wholly original to Plaintiff, which are copyrightable subject matter under the laws of the United States (hereafter, such works shall be collectively referred to as the "Works").

13.     Plaintiff is the assignee of any and all intellectual property rights in the Works including all rights under copyright of Timonen, individually and d/b/a Upper Branch, created prior to the formal incorporation of Plaintiff Upper Branch and the copyright owner of the results and proceeds of Timonen's services following such incorporation.

## Upper Branch Owned and Operated The Online Store

14.     In or about 2006, Josh Timonen and Richard Dawkins orally agreed that Josh Timonen would from Los Angeles, California design and develop a website for Richard Dawkins.  Timonen was paid certain independent contractor fees for these website services.

15.     During this time, Richard Dawkins represented to Josh Timonen, orally and in writing through emails, that he was attempting to register, and having difficulty registering, RDF in the United Kingdom ("UK") as a registered charity in the UK because the British Charities Commission ("BCC") was concerned over a number of issues, including concerns that RDF would be promoting the works of Dawkins, which, in the BCC's view, would violate BCC regulations in two ways: First, it was relayed that the BCC expressed concern that as a charity organized for educational and scientific purposes, RDF in the UK would be required to present materials related to the issues of religion and creationism in an unbiased, balanced and

neutral fashion, whereas Dawkins' works presented views on religion and creationism from a particularly biased perspective.  Second, it was also relayed that the BCC was concerned that the sale of Dawkins' works on the RDF website would confer an impermissible private benefit to Dawkins as a platform for promotion of his work.

16.   As a result of these asserted BCC "restrictions," Richard Dawkins represented to Josh Timonen that Dawkins would require two websites -- one for Richard Dawkins, personally, and one for RDF, which would link to Dawkins' personal website.  Again, Josh Timonen was paid certain independent contractor fees for these website services.

17.   In or about June 2007, Josh Timonen orally agreed with Richard Dawkins, and Robin Cornwell (who at the time was only a volunteer for RDF), that Josh Timonen d/b/a Upper Branch would create and operate, independently and autonomously from Richard Dawkins and his namesake foundation, RDF, an online store ("Store"), which, in Dawkins' words was "not directly concerned with RDF[]'[s] activities."

18.   In connection therewith, Richard Dawkins permitted Josh Timonen to link the Upper Branch Store website to Richard Dawkins' personal website, and although Richard Dawkins' personal website was linked to RDF's website, there was no direct link between the Upper Branch Store website and RDF's website.

19.   At all times hereunder, Upper Branch was an independent business, and Mr. Timonen autonomously ran and operated Upper Branch, and the Upper Branch Store, which specialized in selling goods which publicized the issues and causes(s) which were also supported and advanced by Dawkins and RDF.

20.   Upper Branch operated the Store from a location within Los Angeles, California.

21.   On or about July 25, 2007, with respect to the proposed donation of profits to RDF after payment of business expenses, salaries, benefits and taxes of Upper Branch, Richard Dawkins <richard.dawkins@zoo.ox.ac.uk> emailed Timonen in Los Angeles, copying Robin Cornwell <web.master@rdfrs.org>, and represented in writing: "**it's your baby, your profits, your tax . . . as for whether [Upper Branch] should make a donation to [RDFRS], I don't think you should feel any moral obligations in that regard**." (Emphasis added.)

6

These emails were previously produced to Dawkins and RDF in EC054190, see underline infra at 57, *et seq.*, bates stamped DEF000005 through DEF000009.

22.     In reasonable reliance upon the foregoing material representations and assurances from Dawkins and Cornwell, and having no reason to believe that such representations were false in any way, Timonen was induced to and relied upon the same and understood that the parties had in fact reached agreement.  Indeed, Timonen d/b/a Upper Branch created and operated the Upper Branch Store, independently and autonomously, until April 2008, at which point Timonen caused Upper Branch to be formally incorporated and to thereafter independently and autonomously operate the Store until May, 2010.  Neither Richard Dawkins, nor RDF, nor Robin Cornwell provided any capitalization for Upper Branch or ever paid taxes on its behalf.  Neither Richard Dawkins, nor RDF, nor Robin Cornwell were ever directors, officers, employees or shareholders of Upper Branch either.

23.     Upper Branch created all of the goods that were sold in the Store, determined how much those goods would be sold for, paid for all costs associated with the manufacturing of said goods, as well as all costs of operating the Store, including Upper Branch operating costs, building lease costs, Upper Branch employee benefits and salary, and all local, state and federal costs.  Upper Branch plowed any excess operating revenues (after expenses) to expansion of the Store inventory and productions, including the Works, and on one occasion contributed $30,000 to the Ayaan Hirsi Ali Security Fund, funneling this charitable contribution through RDF for tax reasons, only, and not due to any "moral obligation" or other obligation which Richard Dawkins disclaimed in his email of July 25, 2007, supra at 21.

24.     Separate and apart from the Store operation, Richard Dawkins requested Josh Timonen to continue developing and managing the websites for Dawkins and RDF in exchange for certain independent contractor fees for these separate services.

///
///
///
///

SECOND AMENDED COMPLAINT

**<u>Richard Dawkins and RDF Fail To Compensate Upper Branch For Upper Branch's Conveyance of Store Assets and Operations to RDF; Richard Dawkins and RDF Instead File A Civil Lawsuit Against Upper Branch, *et al.*, in Los Angeles Superior Court, Alleging "Criminal" Conduct, Claims Which The Court Later Dismissed With Prejudice.</u>**

25.     In or about December, 2009, Robin Cornwell and Maureen Norton discussed the possibility of Upper Branch conveying the Store operations and assets to RDF.   Robin Cornwell had represented to Josh Timonen and Maureen Norton that RDF had obtained its 501(c)(3) status in the United States and, through corporate transactions, had been restructured and been "uncoupled" from RDF in the UK.  It was also relayed that as a result, RDF in the US was, at that point in time, permitted to begin operating its own "online store" and to profit from a merchandising enterprise, whereas previously, Plaintiff was led to understand that RDF in the US was not permitted to profit from any such merchandising enterprise.

26.     As a result of the foregoing representations, it was agreed that Upper Branch would convey the Store assets, operations, and inventory, and in exchange, RDF would compensate Upper Branch for its Store inventory as well as the financial, legal, and tax liabilities that had been incurred by Upper Branch and which would be incurred by Upper Branch as a result of the Store conveyance.

27.     In connection therewith, on December 29, 2009, at 5:34 PM, Robin Cornwell <elizabeth.cornwell@mac.com> on behalf of Richard Dawkins and RDF, emailed Josh Timonen and Maureen Norton:

> "Hi Josh and Maureen,
> ...
> Richard [Dawkins] has agreed to spend some time in the US as soon as his book is finished - and that includes time in Burbank to film vignettes.  ... So think about how much time Richard [Dawkins] should spend in Los Angeles...
>
> So think about the possibilities of what we need Richard [Dawkins] to do...
>
> ...

8

Another thing to think about is whether or not you both want to come out to Colorado to meet with the accounting people. If so we can go over the way to buy out the store and budget for more staff. All very boring I know. . . but necessary. I will try to make it as painless as possible. Your tax accountant will need to be involved, and of course we will cover the additional costs."

A copy of this email was subsequently produced by Upper Branch, *et al.*, to Dawkins and RDF in EC054190, see <u>infra</u> at 57, *et seq.*, bates stamped DEF000025.

28.    In connection therewith, on January 12, 2010, at 8:28 AM, Robin Cornwell <robin.cornwell@gmail.com> on behalf of Richard Dawkins and RDF, emailed Josh Timonen:

"Hi Josh,
...
When would be a good time to meet up and go through the grueling necessity of budgets, buying out the Store, . . . etc.??? Is there a time in January that would work for you?"

A copy of this email exchange was subsequently produced by Upper Branch, *et al.*, to Dawkins and RDF in EC054190, see <u>infra</u> at 57, *et seq.*, bates stamped DEF000023 to DEF000024.

29.    In connection therewith, on January 27, 2010, at 5:10 PM, Robin Cornwell <robin.cornwell@gmail.com> on behalf of Richard Dawkins and RDF, emailed Josh Timonen and Maureen Norton:

"Hey,

Met with Steve Gaines today to talk about bringing the Store under RDF[]. The main thing is to make certain you don't have any surprise expenses or tax issues in terms of this change over. And, we want to try to do this fairly quickly.

What we need to get is a current inventory and its value.

SECOND AMENDED COMPLAINT

Also, a general idea of what is sold in terms of merchandize... so perhaps the last three months?
...
We should definitely plan on you both coming out [to Colorado] in March. . . .

The other thing we need to do is all the Trademarks: RDF TV, OUT Campaign, NBGA, Goodness for Goodness' Sake . . . . Now that we are no longer just playing at this Foundation stuff, we have to get our shit together. What a pain."

A copy of this email was subsequently produced by Upper Branch, et al., to Dawkins and RDF in EC054190, see <u>infra</u> at 57, *et seq.*, bates stamped DEF000022.

30.     In connection therewith, on February 3, 2010, Robin Cornwell on behalf of RDF circulated meeting minutes via email to Josh Timonen, Maureen Norton and RDF Trustees, including Richard Dawkins, et al., which represented:

"1.  Moving the merchandizing, website, and all the film production under RDFRS.  Steve [Gaines] will be looking at the particular issues surrounding this transition.
...
Concerning this move, it is critical that Upper Branch does not incur any costs, including tax, legal or financial responsibilities.

Maureen Norton has provided RDFRS with a current inventory of stock, and current liabilities and revenues.  Additionally, she will provide a P & L statement for 2009 in order for us to budget for 2010 and beyond.

In terms of the DVDs, the most important issue is to put into place all of the legal ownership."

A copy of these meeting minutes were subsequently produced by Upper Branch, et al., to Dawkins and RDF in EC054190, see <u>infra</u> at 57, *et seq.*, bates stamped DEF000010 through DEF000016.

31.     In connection therewith, on or about March 9, 2010, at 3:23 PM, Robin Cornwell

circulated by email to Richard Dawkins, Claire Enders, Todd Stiefel, Andy Thomson, among others, and carbon copying Josh Timonen, meeting minutes Robin Cornwell authored to document for the RDF Trustees an in-person meeting among Josh Timonen, Maureen Norton, Robin Cornwell, Jill Chalmers, and Steve Gaines on March 5, 2010.   The following was documented in these meeting minutes:

> **"Upper Branch and the Store**
>
> As the Trustees are aware, the British Charities Commission put strict controls on the Foundation's activities concerning potential benefits to Richard [Dawkins].   Thus, when the US Foundation owned the UK Foundation, the website RichardDawkins.net along with the activit[y] of the selling merchandize was owned and operated by Upper Branch Productions - a company owned by Josh Timonen. . . . With the decoupling of the two Foundations, the US Foundation is free to own the websites and store.
>
> . . .
>
> To the main point we have two issues: RichardDawkins.net being the website for the US Foundation and moving all the merchandize from the Store to the Foundation. . . .
> Upper Branch will donate the merchandize to the Foundation.  This provides a tax break for Upper Branch, but we must also consider that Upper Branch has been paying taxes and accounting fees while operating the business [over the last three years].  Most of the profits from sales have been plowed into the operation, including new merchandize, filming, editing, and other associated costs such as part time staff.
>
> . . .
>
> The Store is not only self-sustaining, but has grown substantially.
>
> . . .
>
> Maureen Norton has prepared and submitted the inventory and the transition of stock should go smoothly.
>
> . . .

---

SECOND AMENDED COMPLAINT

> Another matter in this transition is making certain that we have all the appropriate documentation in terms of ownership of the DVD rights, all films, photos, images, logos and properties are assigned to the Foundation."

A copy of these meeting minutes were subsequently produced by Upper Branch, et al., to Dawkins and RDF in EC054190, see infra at 57, *et seq.*, bates stamped DEF000026 through DEF000032.

32.   In connection therewith, on Tuesday, May 18, 2010, the following emails were exchanged between Robin Cornwell <robin.cornwell@mac.com> on behalf of Richard Dawkins and RDF, and Josh Timonen <joshtimonen@gmail.com> on behalf of Upper Branch. These emails were also selectively produced by Richard Dawkins and RDF to Upper Branch, *et al.* in EC054190, see infra at 57, *et seq.*, bates stamped RDFRS, et al. DOX 1 -- 000106 through RDFRS, et al. DOX 1 -- 000109:

> (a)   At 2:41 PM, Robin Cornwell wrote to Josh Timonen:
>
> "Dear Josh,
> ...
> As you know, we were in the middle of moving the financial aspects of the Store to the Foundation as well as all the rights of all footage, DVD, logos, as well as hard drives, equipment, insurance, leases, software, maintenance contracts, etc., along with the assumption by RDF of all appropriate liabilities that Upper Branch had.
> ...
> When we were discussing the transfer of the Store to the Foundation, you and Maureen both said that neither the Foundation nor Richard owed Upper Branch any funds.  It was all a matter of transferring all the property and assets in such a way so that neither you nor Upper Branch would be affected in any negative way regarding taxes.  We want to continue in this vein.
> ...
> We also need to discuss the finances for the Store since it opened.  Maureen kindly sent the [profit and loss statements] for 2009 and 2010, but we will need more detail, and for all years of operation.  Given our non-profit status and our need to make certain there are no "private inurement" issues, it is in everyone's best interest to work together on this as none of us want to accidentally violate any IRS

12

regulations.  Additionally, knowing the historic details of the Store allows us to prepare more accurate budgets for the future.
...
I am asking you to please stop copying all the Trustees on your communications and work directly with me on this transition and all the financial issues.  The Trustees are in full agreement on this request."


(RDFRS, et al. DOX 1 -- 000106 through RDFRS, et al. DOX 1 -- 000109.)


(b)     at 2:42 p.m., Robin Cornwell emails Maureen Norton separately:

"Dear Maureen
. . .
The Trustees have given me the responsibility to direct the transition and be the point person, along with any assistance from others I may determine is needed.  This is a difficult situation and has been a tremendous drain on the time and resources of the Trustees.  I think we should be able to handle this transition without bringing so many people into the mix.  The Trustees have made their decisions and I have been charged to implement it."


(c)     at 3:08 p.m., Maureen Norton emails Robin Cornwell:

"Our accountant is coming to our office tomorrow to get the books in order.  We are in the process of inventorying all of our product and listing all of our outstanding debt.  We will have tax liabilities for 2009 and 2010".

(d)     at 5:31 p.m., Robin Cornwell responds by reply email to Maureen Norton:

"Thank you Maureen, I appreciate your help on these issues."


(e)     At 11:35 PM, Josh Timonen wrote to Robin Cornwell:


"Hi Robin,


I'm working on going through things at our office, organizing equipment, drives, etc.  We are also getting paperwork and numbers ready, and I should be able to write you more tomorrow about it all.

13

Josh"

(RDFRS, et al. DOX 1 -- 000106.)

33.  In connection therewith, on <u>Friday, May 21, 2010,</u> the following emails were exchanged between Robin Cornwell <elisabeth.cornwell@mac.com> on behalf of Richard Dawkins and RDF, and Josh Timonen <joshtimonen@gmail.com> on behalf of Upper Branch. These emails were also selectively produced by Richard Dawkins and RDF to Upper Branch, *et al.* in EC054190, see <u>infra</u> at 57, *et seq.*, bates stamped RDFRS, et al. DOX 1 -- 000098 through RDFRS, et al. DOX 1 -- 0000101:

(a)  At 10:37 AM, Robin Cornwell wrote to Josh Timonen:

"Josh,

. . . Richard [Dawkins] . . .has resigned from being a Trustee of the US Foundation...

In order to move forward, I would prefer emailing you directly as you are the owner of Upper Branch.  If you choose to make Maureen your authorized agent representing Upper Branch, then I need that in writing from you.

Unfortunately, it appears that you feel the Foundation has more financial obligations to you, about which we disagree but we need to sit down and discuss in an open professional manner.  Therefore, in order for our accountants to understand the situation, I do need to receive the full disclosure of the Upper Branch financials since you began working with Richard and then later with RDF[].

It would help a great deal if you could clearly lay out one by one what you expect from the Foundation and from Richard [Dawkins] in terms of this transition.  Richard [Dawkins] shall be taking a break from the Foundation, and will no longer be consulted on any of the Foundation issues - this is his choice.  It has just simply been too much for him. . . .

Please let me know how you wish to proceed, I understand that your meeting with Greg [Langer] has been postponed until next week,

14

which we hope will provide you with enough time to have all the financial information of the Store, the projects, and the inventory of the footage, equipment, etc. available.  We will have the legal documents for signing over the assets and liabilities for the Store and all other assets . . . One of the things we will need are the bank statements for the Store since its inception.  ... Given Richard [Dawkins'] state of mind and his profound sadness of personal loss, he has asked me to be his authorized agent in terms [sic] all purchases made through his personal funds.  He simply does not want to deal with these matters directly any more.  I hope you will have [sic] enough respect and personal concern for Richard to honor his request to be left out of these matters."

(RDFRS, et al. DOX 1 -- 000100 to RDFRS, et al. DOX 1 -- 000101.)

(b)      At 6:15 PM, Robin Cornwell wrote to Josh Timonen:

"...
We had offered to accept the lease and we wanted the transition to go smoothly.
...
I will be out next week to pick up all the contents, equipment etc.  ... I will likely be out on Wednesday and we will pick up everything before the end of the first week of June.
...
Our accountants will need to discuss these issues with your accountant. I am sorry you felt that you would be left holding the bag. That was never ever what we intended, and never in a single email did we convey that at any time."

(RDFRS, et al. DOX 1 -- 000098.)

34.      In connection therewith, on <u>Monday, May 24, 2010</u>, the following emails were exchanged between Robin Cornwell <elisabeth.cornwell@mac.com> on behalf of Richard Dawkins and RDF, and Josh Timonen <joshtimonen@gmail.com> on behalf of Upper Branch. These emails were also selectively produced by Richard Dawkins and RDF to Upper Branch, *et al.* in EC054190, see <u>infra</u> at 57, *et seq.*, bates stamped RDFRS, et al. DOX 1 -- 000083 through RDFRS, et al. DOX 1 -- 000095:

SECOND AMENDED COMPLAINT

1

2          (a)      At 10:36 AM, Josh Timonen wrote to Robin Cornwell:

3      "It isn't possible for you to come clear out the Store in two days
       (Wed).  In Maureen's email, she said "the end of the month".  We
4      have now closed down the [S]tore but have 116 pending orders, and
5      we will not leave our customers high and dry.  If you could please
       respond to the specifics of the inventory, that will help us move
6      forward."

7
       (RDFRS, et al. DOX 1 -- 000095.)
8

9
10         (b)      At 10:14 AM MDT, Robin Cornwell wrote to Josh Timonen:

11     "The inventory is being reviewed.  We are not rushing through this.
       We still need all of the financials from the [S]tore operations.  . . .
12     Additionally without all the bank and financial statements from the
13     [S]tore it will be impossible to determine any financial obligations.
       You were very concerned that RDF[] and Richard [Dawkins] would
14     leave you 'holding the bag'.  Richard [Dawkins] is particularly
       crushed you would accuse him or his Foundation of this.  So, to
15     make certain this does not happen nothing will be done without
16     great caution."

17     (RDFRS, et al. DOX 1 -- 000094 to 000095.)
18

19         (c)      At 1:51 PM EDT,  Josh Timonen wrote to Robin Cornwell:

20     "As we said earlier, the end of the month would be the right time to
       come out, May 31st.  Wednesday is too soon."
21
22     (RDFRS, et al. DOX 1 -- 000092.)

23         (d)      At 10:55 AM, Robin Cornwell wrote to Josh Timonen:

24     "We already made arrangements for Wednesday to meet with you."
25
26     (RDFRS, et al. DOX 1 -- 000090.)

27         (e)      At 2:16 PM EDT, Josh Timonen wrote to Robin Cornwell:

28     "Robin, I think its past the point of us having a meeting.  I've been
       offended to the point where I wouldn't be able to sit in the same

16

room with you.  Let's just keep the lines of communication open so we can work through these logistics."

(RDFRS, et al. DOX 1 -- 000090.)

(f)      At 2:28 PM, Robin Cornwell wrote to Josh Timonen:

I am afraid this is unacceptable. You need to reconsider a decision that has such a tremendous impact.

(RDFRS, et al. DOX 1 -- 000088.)

(g)      At 5:51:21 PM EDT, Josh Timonen wrote to Robin Cornwell:

"Robin, what is unacceptable?"

(RDFRS, et al. DOX 1 -- 000088)

(h)      At 3:05 PM, Robin Cornwell wrote to Josh Timonen:

"Josh,

A meeting was set up for Wednesday May 26, and we do need to meet in order to begin the transition. Waiting until the end of this month is not possible given the documents, inventory, and financial issues that remain open. We can begin to go through these documents and view the software setup used to operate the Store. We also have legal documents to go through with you, and we want to make certain that you understand them and are comfortable with them.  Additionally, we need obtain access to the warehouse and begin to box things up as we start the inventory count process. I will contact your accountant; however I only received email with the contact information Friday afternoon, thus I did not contact your accountant over the weekend.

robin

(RDFRS, et al. DOX 1 -- 000087.)

(i)      At 3:16 PM, Robin Cornwell wrote to Josh Timonen:

"Josh

It is unacceptable that you are refusing to meet on Wednesday.  We are not arriving to move anything from the Store, we wanted to sit

17

down and go through all the documents.  . . .

We cannot sign off on any inventories, accounting, finances until we go over all the documentation.
...
For all of this to be worked out you need to keep your agreement to meet on Wednesday.  We need to transition the accounts, the software, etc.

Greg [Langer] and I will be at the warehouse to meet with you to discuss the transition on Wednesday."

(RDFRS, et al. DOX 1 -- 000083.)

(j)      At 6:26 PM EDT, Josh Timonen wrote to Robin Cornwell, and Greg Langer <glikeminds@gmail.com>:

"...
Whatever documents you are interested in having me sign, please email them and I will review them.

As for the inventory, it is  updated daily as orders are processed in Shopify. Graham is shipping out the remaining 116 orders and we will reprint and submit the final inventory.
...
I will continue my efforts for a smooth transition of the office contents and store inventory.  ... Obviously we will need to be in continual contact over the next year regarding expenses and 2009 and 2010 tax liabilities.  We don't have to have everything sorted out by the end of the month."

(RDFRS, et al. DOX 1 -- 000086 to RDFRS, et al. DOX 1 -- 000087.)

(k)      At 6:50 PM EDT, Josh Timonen wrote to Robin Cornwell:

"I have agreed to meet with Greg [Langer] as planned."

(RDFRS, et al. DOX 1 -- 000083.)

35.      In connection therewith, on June 3, 2010, at 5:17 p.m., Josh Timonen emailed Robin Cornwell, Greg Langer, Todd Stiefel, and Andy Thomson:

SECOND AMENDED COMPLAINT

"Hi Robin,

Our accountant has advised that we be paid for the stock that you now have in your possession.  If we don't receive money for the stock costs, we are told it will reduce our 'purchases' and cause a greater tax burden.  We have sales tax, payroll taxes, DVDs, etc., that need to be paid out of Upper Branch.  We will also have tax liabilities for 2009 and 2010.  I suggest you send us the cost ($23k).  We're hoping this amount will cover all of these costs, but we won't know for certain until we get numbers back from our bookkeeper.
We also need to deal with transferring the rights from Upper Branch Productions, Inc. to RDF on all of the DVD titles.  There are also several titles that we will need to do a transfer of copyright ownership on."

A copy of this email was subsequently produced by Upper Branch, et al., to Dawkins and RDF in EC054190, see _infra_ at 57, _et seq._, bates stamped DEF000791 to DEF000792.

36.     In connection therewith, on June 3, 2010, at 5:47 p.m., Robin Cornwell emails Josh Timonen and carbon copies Greg Langer, Todd Stiefel, and Andy Thomson, and Steve Gaines:

"Dear Josh,
Please let me know what other invoices you have pending and send them to me.  Could you expand on the RDFRS DVD titles and the rights?"

A copy of this email was subsequently produced by Upper Branch, et al., to Dawkins and RDF in EC054190, see _infra_ at 57, _et seq._, bates stamped DEF000792.

37.     In connection therewith, on June 4, 2010, at 12:45 PM, Josh Timonen sends a reply email to Robin Cornwell, carbon copying Greg Langer, Todd Stiefel, Andy Thomson, and Steve Gaines:

"We will need to draft 'assignment of rights'/copyright transferring the rights from Upper Branch Productions, Inc. to RDFRS on

19

several of the DVD titles.:"

A copy of this email was subsequently produced by Upper Branch, et al., to Dawkins and RDF in EC054190, see infra at 57, *et seq.*, bates stamped DEF000792.

38.   In reasonable reliance upon the foregoing material representations and assurances from Robin Cornwell, on behalf of Richard Dawkins and RDF, that Upper Branch would be compensated for inventory as well as the financial, legal, and tax liabilities it incurred as a result of the conveyance of the Store operations, RDF, under the guise of such agreement requested and received from Upper Branch all proprietary details concerning the Store operations, inventory and assets, thereby enabling RDF to abscond with the Store operations, inventory and assets from Upper Branch without compensating Upper Branch for any of the inventory, financial, legal, and tax liabilities, as was agreed.

39.   At the time all of the above representations were made by Richard Dawkins and Robin Cornwell on behalf of Richard Dawkins and RDF, Robin Cornwell knew that the representations were false when made, or that Robin Cornwell made the representations recklessly and without regard for their truth.  At the time these representations were made, Josh Timonen and Maureen Norton for Upper Branch were ignorant of the falsity of these representations and reasonably believed them to be true.

40.   In reasonable reliance on the representations, and having no reason to believe that such representation was false in any way, Upper Branch was induced to perform and did perform completely by, inter alia, handing over all proprietary details concerning the Store operations, inventory and assets, to RDF, and assigning to RDF the Upper Branch Store operations, inventory, and assets, including two (2) written copyright assignments for certain Works, before Upper Branch was ever compensated for the inventory as well as the financial, legal, and tax liabilities they incurred as a result of said assignment, as promised.

41.   Upper Branch's reliance on the representations by Robin Cornwell on behalf of Richard Dawkins and RDF was justified because Robin Cornwell expressly asserted her authority to act on behalf of Richard Dawkins and RDF, and Robin Cornwell confirmed that

she had legal and institutional authority to make the promise she made on behalf of Richard Dawkins and RDF.

42.     It was only after Upper Branch fully performed that it discovered Robin Cornwell, Richard Dawkins, and RDF had no intention of compensating Upper Branch for the inventory, incurred financial, legal, and tax liabilities, as promised.  Had it known these true facts, Upper Branch would not have rendered performance as agreed.

43.     Moreover, Upper Branch is informed and believes that in the furtherance of such fraud, that the BCC's tax treatment of Richard Dawkins' website was misrepresented by Dawkins and Cornwell as well given their violation of an Order by the Los Angeles Superior Court in EC054190, see infra at 57, *et seq.*, to produce evidence in support of such claims.

44.     Without any legal right or justification, Robin Cornwell, Richard Dawkins, and RDF fraudulently acquired the Upper Branch Store operation, inventory, and assets, including tangible copies of all Upper Branch Works and written copyright assignments for two (2) of the Works, and Mike Cornwell and RDF Store are now operating the Store from Mike Cornwell's home residence, selling Upper Branch inventory and assets to the public, without ever having compensated Upper Branch for the inventory, and its incurred financial, legal, and tax liabilities, as promised.

45.     Timonen and Norton reasonably having no reason to believe that such telephone and email representations made by Dawkins and Robin Cornwell on behalf of Defendant RDF were false in any way, were on behalf of Plaintiff induced in Los Angeles, California to perform and did perform completely in or about June 2010 by, inter alia, permitting Defendant RDF (through Robin Cornwell, Mike Cornwell, and Greg Langer) to take physical possession of Plaintiff's inventory from Los Angeles, California, including tangible copies of the Works, and assigning to RDF certain of Plaintiff's assets including written copyright assignments as to certain of the Works, including those attached hereto in **Exhibit "B,"** before Plaintiff was ever paid any of the agreed upon and promised monetary consideration for its inventory, the transfer thereof, or for Plaintiff's incurred costs and liabilities, as promised by these Defendants.  Attached hereto and incorporated by reference herein as **Exhibit "B"** are true and

correct copies of the two (2) short form copyright assignments Plaintiff executed in Los Angeles, California in reliance upon such misrepresentations.

46.     At the time the representations were made and Plaintiff entered into the agreement, and at subsequent times when Robin Cornwell and RDF agents Mike Cornwell and Greg Langer on behalf of RDF took physical possession in Los Angeles, California of Plaintiff's assets including written copyright assignments to two works specified below, Timonen and Norton on behalf of Plaintiff did not know the material representations or material omissions of fact by Dawkins, Robin Cornwell, Mike Cornwell and Greg Langer on behalf of Defendant RDF were false, but believed them to be true and reasonably relied on them.  Had they known the true facts, they would not have rendered performance on behalf of Plaintiff without consideration.

47.     It was only after Plaintiff fully performed in Los Angeles, California the agreement, and all of such inventory had been removed from Plaintiff's place of business in Los Angeles, that they discovered Defendant RDF had no intention of "buy[ing] out the store" or providing the promised consideration or paying the agreed consideration to Plaintiff for its inventory, the transfer thereof, including the costs and liabilities incurred by Plaintiff as a result of the conveyance, transfer and assignment of assets to RDF and related matters, as promised by Defendants.

48.     Without any legal right or justification and in contravention of the contractual agreement between the parties, Defendant RDF fraudulently acquired Plaintiff's assets, including Plaintiff's inventory consisting of Plaintiff's tangible copies of the Works, inter alia, and copyright assignments attached hereto as **Exhibit "B,"** and commenced selling Plaintiff's assets to the public, including unauthorized copies of Plaintiff's copyrighted Works, without ever having provided the promised monetary consideration or compensation to Plaintiff, as promised by Defendants to Timonen and Norton on behalf of Plaintiff in Los Angeles.

49.     Apart from the two short form copyright assignments attached hereto as **Exhibit "B,"** pertaining to those Works entitled "Atheist Alliance International (AAI) 2007" (PA1609844, 2007) and "Pat Condell Anthology Feb. 2007 - Feb. 2008" (PA1646005, 2008),

which were obtained on the basis of the fraud of Defendants herein, and which Upper Branch seeks to rescind, there are no other documents purportedly transferring any of Plaintiff's copyright interests in or to any of the Works to Defendants RDF.

50.   The apparent consent of Upper Branch to the assignment of Upper Branch Store operations, inventory, and assets, and the subsequent execution of two (2) written copyright assignments, was not real, mutual, or free in that it was obtained through fraud as herein alleged.

51.   Any and all apparent consent of Upper Branch to the assignment of Upper Branch Store operations, inventory, and assets, and execution of two (2) written copyright assignments, was obtained from Upper Branch solely through the fraud of Robin Cornwell on behalf of Richard Dawkins and RDF.  Significantly, Upper Branch would not have agreed to assign the Store operations, inventory, and assets for free, had it not been for the fraud of Robin Cornwell on behalf of Richard Dawkins and RDF.

52.   Defendants now wrongfully exercise dominion over the Upper Branch Store operations, inventory, and assets, including tangible copies of the Upper Branch Works.

53.   Upper Branch rightfully owns the Store operations, inventory, and assets, including the tangible copies of the Upper Branch Works.

54.   Defendants intentionally took possession of the Upper Branch Store operations, inventory, and assets, including the Upper Branch Works, and then refused to pay Upper Branch for their conveyance of the same.

55.   RDF is now operating the Upper Branch Store and exploiting the Upper Branch Store inventory and assets to the public through the Internet, inter alia.

56.   Due to the fraud of Defendants (except IWI), much of which occurred in Los Angeles, no consideration supports any transfer, conveyance or assignment of any copyrights in the Works to Defendants (except IWI).

57.   In or about October, 2010, Dawkins and RDF filed and served a civil complaint ("Complaint") against Upper Branch, *et al.*, in Los Angeles Superior Court ("LASC" or "Court"), bearing case no. EC054190, alleging multiple causes of action, for: (1) Breach of

SECOND AMENDED COMPLAINT

Oral Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Breach of Fiduciary Duty; (4) Fraud; (5) Embezzlement; (6) Declaratory Relief; and (7) Imposition of Constructive Trust.

58.     The "Embezzlement" cause of action recited five sections of the California Penal Code (Sections 503, 504, 506, 507, 508, and 532(a)) which Dawkins and RDF claimed were violated by the alleged conduct of Upper Branch, *et al.*, in operation of the Upper Branch Store.

59.     Richard Dawkins and RDF then published a copy of this Complaint on RDF's website, in their bid to wage a very distasteful public internet smear campaign against Upper Branch, *et al.*, on their offensive claims of criminality, including the purported violations of Penal Code provisions contained in the civil Complaint.

60.     The Declaratory Relief claim falsely alleged that the Works, and other intellectual property created by Upper Branch and Josh Timonen were "works for hire" for RDF, and alleged a dispute with Mr. Timonen and Upper Branch over ownership of these Works and other intellectual property, and sought a declaration that such Works and materials and intellectual property belonged to RDF.

61.     Upper Branch, et al., took issue with this Complaint, *inter alia*, because the questions of copyright ownership raised in the complaint for the Works in question could not be "works for hire" for RDF because Mr. Timonen and Upper Branch were never employees of RDF, and because there was no written agreement marking these "works for hire" as required by U.S. Copyright Law.

62.     In response, Dawkins and RDF amended their Complaint in EC054190, materially altering the prior allegation of ownership of the Works as "works for hire" to newly allege the existence of a non-exclusive license and acknowledged that the Works were owned by Upper Branch.  This amended complaint also alleged a new cause of action for Interference with Prospective Economic Advantage in substitution for the Declaratory Relief claim based upon Upper Branch's assertion of its rights, as copyright owner of the Works, to Idea Media, the laboratory holding physical materials embodying the Works and supplying unauthorized

1  copies to RDF and Dawkins.

2      63.    On January 28, 2011, the Court while granting a demurrer instructed RDF and

3  Dawkins to replead their criminal "Embezzlement" claim as a recognized civil claim.

4      64.    Flouting the Court's instructions, RDF and Dawkins filed a second amended

5  complaint in EC054190, again filed a criminal "Embezzlement" claim and added a new,

6  second "criminal" claim for "Larceny."

7      65.    In EC054190, RDF and Dawkins admitted that it was "illegal" for RDF to own

8  and operate an for-profit online store merchandising operation because of restrictions imposed

9  upon RDF by the BCC.   However, RDF and Dawkins also changed once again their

10  allegations in this regard, as well, alleging instead in their second amended complaint, and for

11  the first time in EC054190, that the Trustees of RDF only "believed" that a direct operation of

12  the a for-profit online store merchandising operation by RDF was "legally impermissible" but

13  that their purported belief was "incorrect" due to erroneous advice from counsel.

14      66.    Upper Branch is informed and believes that that the BCC's tax treatment of

15  Richard Dawkins' website, e.g. <u>supra</u> at 15 and 25, was misrepresented by Richard Dawkins

16  and Robin Cornwell as well given their violation of an Order by the Los Angeles Superior

17  Court in EC054190 to produce evidence in support of such claims.

18      67.    On May 7, 2011, the Court dismissed with prejudice RDF and Dawkins'

19  "criminal" claims for Embezzlement and Larceny.   At the hearing, the Court questioned

20  counsel for RDF and Dawkins as to why a civil claim for conversion was not pled, and in

21  response, counsel for RDF and Dawkins stated that it was a "tactical" decision for RDF and

22  Dawkins.

23      68.    Richard Dawkins, RDF, and their counsel in EC054190 were sanctioned by the

24  Court for their failure to comply with their discovery obligations in refusing to produce

25  requisite documents in support of their purported claims in EC054190.   An order compelling

26  production of numerous document categories without objections or privilege was issued but

27  not complied with.   Accordingly, a motion for terminating sanctions, and alternatively issue

28  sanctions and evidentiary sanctions was pending and set for hearing when Richard Dawkins

SECOND AMENDED COMPLAINT

and RDF purported to dismiss their Complaint in EC054190.

69.     On August 3, 2011, Dawkins and RDF dismissed their complaint in EC054190 with prejudice and a costs judgment was subsequently entered in favor of Upper Branch, *et al.* in EC054190.

70.     According to a string of email communications collectively attached hereto as **Exhibit "C,"** starting in or about June 2010, Richard Dawkins by and through Robin Cornwell and Mike Cornwell requested Andrew Chalkey to begin deleting Josh Timonen's name from authorship of articles posted on RDF's website that referenced the Works created by Upper Branch, *inter alia*.  In October, 2010, Richard Dawkins also appears to have later lamented to Andrew Chalkey: "I feel strongly that it was wrong to ask you to delete Josh's name from authorship of articles.  It is simply a matter of historical fact that he wrote them".

71.     At such time, Andrew Chalkley was an independent contractor performing website/internet services for both Richard Dawkins Ltd UK and RDF in the UK, who had worked with Josh Timonen on website projects for Richard Dawkins personally and RDF, such as RichardDawkins.net, RichardDawkinsFoundation.org, OutCampaign.org, among others.

72.     Further, according to the email communications collectively attached hereto as **Exhibit "C,"** on or about June 23, 2010, Mike Cornwell emailed Andrew Chalkley, copying Robin Cornwell:

> This all getting very messy legal wise.  We need to update/sanitize other references as well[.]  As an example this video which has a "By Josh Timonen" needs to say "Presented by RDFRS" . . . all of these . . . should replace Josh's name with presented by the Richard Dawkins Foundation.  On ones with someone else listed, like Judy Diamond . . . then her name should go before 'presented by the Richard Dawkins Foundation' many of them already have an RDFRS credit so just need to delete reference to Josh.

73.     According to RDF's website <richarddawkins.net>, Robin Cornwell is  now representing to the public that she is to be credited with the creation of the Upper Branch Works, i.e. "[h]er innovative ideas include... the Four Horsemen and other DVDs".  See

1   http://www.richarddawkins.net/home/about.

2   **Upper Branch Cease and Desist Demands and Defendants Subsequent Copyright**

3   **Infringement of Upper Branch Works**

4   74.   Between the years 2007 and 2010, Upper Branch had deposited "master" copies

5   of Upper Branch Works and "master" computer files of the artwork created by Upper Branch

6   to accompany the Works with Idea Media, with advance instruction that from those master

7   copies and files, Idea Media would create and duplicate copies of the Works on a per-order

8   basis as authorized by Timonen or Norton on behalf of Upper Branch.  The depositing of these

9   master copies and files provided RDF with access to these Works.

10   75.   RDF and Richard Dawkins produced documents to Upper Branch in EC054190

11   that evidenced email communications among Idea Media, Robin Cornwell, and Mike

12   Cornwell, concerning these individual Defendants' requests for copies of the DVDs,

13   representations that RDF owned the copyrights in the DVDs, requests for removal of Upper

14   Branch's copyright and logo from the packaging of the DVDs, and the submission of new

15   artwork files for Idea Media to create and utilize in connection with the unauthorized copies of

16   Upper Branch's DVDs that Idea Media agreed to produce for RDF's payment, despite specific

17   notice from Upper Branch that all of the above actions were not authorized by Upper Branch.

18   76.   Specifically, the produced emails evidenced that:

19   (a)   On Thursday, June 17, 2010, at 10:42 AM, Mark Steiner of Idea Media

20   wrote to Mike Cornwell confirming an order for 1,000 copies of "The Four Horsemen" (a

21   work copyrighted by Upper Branch), and the request for removal of Upper Branch's logo from

22   the DVD wrap:

23   "Hello Mike,

24   It was nice meeting you today.  I'm sorry Tom Walsh isn't currently in the office
to assist.   He'll be in the office on Monday.

25   ...

26   We'll get an exact (almost exact see below) repress of 1,000 "The 4 Horsemen"
retail ready DVD9's underway for you right away.

27   We will remove the upperbrach logo from the DVD wrap and reproof it for
you...

28   This DVD also contains a 4 panel 4/4 insert... please confirm that there are no

1  changes to this artwork."

2

3  (RDFRS, et al. DOX 1 -- 003657.)

4

5  (b)  On June 21, 2010, at 11:53 AM MDT, Tom Walsh of Idea Media wrote to

6  Mike Cornwell, copying Mark Steiner:

7

8  "Hi Mike,
   I am checking to see if we still have the "original" artwork files...

9  We still have the artwork plates and films created but we might not

10  be able to remove the logo.  UNLESS we still have the original
   artwork files.. I should know shortly."

11

12  (RDFRS, et al. DOX 1 -- 003659.)

13

14  (c)  On June 21, 2010, at 12:43 PM, Mike Cornwell wrote to Tom Walsh at

15  Idea Media, copying Mark Steiner:  "I thought you had all of the artwork and I just need to

16  proof it after you removed the Upper Branch logo."  (RDFRS, et al. DOX 1 -- 003659.)

17

18  (d)  On June 21, 2010, at 2:03 PM MDT, Tom Walsh of Idea Media wrote to

19  Mike Cornwell: "Ok I found the old artwork but they are flattened PDF files so all I can do is

20  "black out" over the logo".  (RDFRS, et al. DOX 1 -- 003665.)

21

22  (e)  On June 22, 2010, at 7:48 AM, Maureen Norton of Upper Branch wrote

23  to Tom Walsh of Idea Media: "Hi Tom, Has anyone contacted you from The Richard Dawkins

24  Foundation...? Please be advised that if anyone places a direct order with you for one of our

25  titles it needs to be approved by us first.  Thanks, Maureen".  (RDFRS, et al. DOX 1 --

26  003679.)

27

28  (f)  On June 22, 2010, at 9:31 AM, Tom Walsh of Idea Media wrote to

28

Maureen Norton of Upper Branch: "Hi Maureen, Yes they just placed a re-order. I cannot be in the middle of your issues though." (RDFRS, et al. DOX 1 -- 003678 through RDFRS, et al. DOX 1 -- 003679.)

(g)     On June 22, 2010, at 11:49 AM, Maureen Norton of Upper Branch wrote to Tom Walsh of Idea Media: "The contract for these titles is with Upper Branch so you do need to be in the middle... We are not authorizing any other companies other than Upper Branch to place orders for these titles." (RDFRS, et al. DOX 1 -- 003678.)

(h)     On June 22, 2010, at 11:10 AM MDT, Tom Walsh of Idea Media wrote to Mike Cornwell: "Please contact Maureen at Upper Branch. She is advising me that all orders need to go through her... I can't get in the middle of this nor do I have time to go back and forth with her. Please contact her and let me know". (RDFRS, et al. DOX 1 -- 003673.)

(i)     On June 22, 2010, at 12:16 PM, Tom Walsh of Idea Media wrote to Maureen Norton of Upper Branch: "Mike [Cornwell] is going to call you to work this out... this job is on hold till I hear back from one of you...thanks" (RDFRS, et al. DOX 1 -- 003676.)

(j)     Shortly after Tom Walsh of Idea Media forwards the above thread of emails between himself and Maureen Norton, to Robin Cornwell and Mike Cornwell, on June 22, 2010, at 1:47 PM, Robin Cornwell wrote to Tom Walsh of Idea Media, carbon copying Steve Gaines, Greg Langer, and Mike Cornwell: " Tom - we own all the DVDs that are associated with the Richard Dawkins Foundation. Just to clarify." (RDFRS, et al. DOX 1 -- 003681.)

(k)     On June 22, 2010, at 2:51 PM, Tom Walsh of Idea Media wrote to Robin Cornwell in response: "Thank you, Elisabeth... please fill out the order confirmation and

SECOND AMENDED COMPLAINT

[Intellectual Property Rights] form and fax back to me."  (RDFRS, et al. DOX 1 -- 003680.)

(l)     On June 22, 2010, at 1:59 PM, Robin Cornwell wrote to Tom Walsh, copying Mike Cornwell: "Mike is authorized, and he will get that out to you." (RDFRS, et al. DOX 1 -- 003680.)

(m)    On November 5, 2010, after Josh Timonen on behalf of Upper Branch sent Idea Media a further cease and desist email, Idea Media forwarded such cease and desist email to RDF Store and requested to be advised about the same.  In response, Mike Cornwell wrote to Idea Media: "Josh Timonen does not own legal rights to these."  (RDFRS, et al. DOX 1 --  003717 through RDFRS, et al. DOX 1 -- 003721.)

77.    Indeed, in or about June 2010, and again in or about November 2010, Upper Branch twice demanded Idea Media, and RDF to cease and desist from infringing on Upper Branch's exclusive rights, that RDF was not authorized to place orders for copies of Upper Branch Works and that Idea Media was not authorized to produce copies of Upper Branch Works for RDF.  On both occasions, Josh Timonen and Maureen Norton on behalf of Upper Branch communicated these cease and desist demands to Idea Media in writing by email.

78.    Starting in or about June 2010, these Defendants began exploiting, reproducing, performing, adapting, selling and distributing the copyrighted material in the Works in DVD format in the United States.  Unless enjoined or restrained, Defendants' conduct threatens to further infringe Plaintiff's copyright interests.

79.    Plaintiff has notified Defendants that they are not authorized to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them, and Plaintiff has demanded that they cease and desist from any such potential infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, but Plaintiff is informed and believes and on that basis alleges that Defendants continue to maintain otherwise including their right to continue distributing and exploiting the Works without Plaintiff's authorization and in infringement of Plaintiff's exclusive rights.

80.     None of the Defendants are authorized by Plaintiff to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them.

81.     Plaintiff is informed and believes and on that basis alleges that Defendant IWI has infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works by exploiting, reproducing, performing, adapting, selling and/or distributing, without proper authorization, Plaintiff's Works, to and/or for Defendants RDF and RDF Store, so that these Defendants can exploit, reproduce, perform, adapt, sell and/or distribute these unauthorized copies of Plaintiff's Works to the public via Defendant RDF and/or RDF Store's website, on the internet, and at conventions, and public lectures, among other ways, in further infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works.

82.     Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendant IWI of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants RDF and RDF Store are vicariously infringing the Works. Plaintiff is informed and believes and on that basis alleges that Defendants RDF and/or RDF Store are profiting directly from the infringing activity of Defendant IWI because these Defendants by and through Robin Cornwell and/or Mike Cornwell place orders with IWI for copies of the Works and thereafter sell the same to the public for profit, *inter alia*. As a result, these Defendants have the right and ability to control the infringing activity of Defendant IWI, and they exercise that right and ability by infringing on Upper Branch Works.

83.     Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendant IWI of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants RDF, RDF Store, Robin Cornwell, and Mike Cornwell have directed and materially contributed to the same. Plaintiff is informed and believes and on that basis alleges that these Defendants have falsely represented to IWI that RDF is the copyright owner of the Works in order to induce IWI to manufacture copies of Plaintiff's Works for RDF and/or RDF Store, and have instructed IWI to remove and/or "black out" Plaintiff's logo from the artwork accompanying the DVD packaging of certain Works, and/or attach "new artwork or packaging" created by RDF to Plaintiff's Works, *inter alia*. Plaintiff is informed

and believes and on that basis alleges that these Defendants knew or had reason to know of the infringing activity of IWI but took steps to avoid acknowledging the infringing activity and instead intentionally induced and/or materially contributed to IWI's infringing activity.

84.     Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendants RDF and RDF Store of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants Robin Cornwell and Mike Cornwell are vicariously infringing the Works because these Defendants are procuring unauthorized copies of the Works for RDF and RDF Store, Robin Cornwell is now taking credit for the "idea" of these Works which Robin Cornwell has admitted are centrally important to the goal and purpose of RDF, Mike Cornwell is selling copies of these Works out of his residential home address which houses the RDF Store operation, these Works are the primary goods sold through the RDF Store, and these individual Defendants are directing and/or supervising RDF and RDF Store's sales, distributions and/or exploitation of the unauthorized copies of the Works to the public.

85.     Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendants RDF and RDF Store of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants IWI, Robin Cornwell, and Mike Cornwell have directed and/or materially contributed to the same.  Plaintiff is informed and believes and on that basis alleges that these Defendants knew or had reason to know of the infringing activity of RDF and RDF Store but took steps to avoid acknowledging the infringing activity and instead intentionally induced and/or materially contributed to the infringing activity of RDF and RDF Store.

86.     Defendants acts of direct and indirect copyright infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works have been willful, intentional, and purposeful, in knowing disregard of Plaintiff's rights under the Copyright Act.

87.     By reason of the Defendants' infringement and threatened infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss and damage to their ownership rights in the Works.

88.     Further irreparable harm to Plaintiff is imminent as a result of Defendants' conduct, and Plaintiff is without an adequate remedy at law.  Plaintiff is entitled to an injunction restraining Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of copyright infringement.

89.     Plaintiff is further entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' acts of copyright infringement.  Plaintiff is at present unable to ascertain the full extent of the monetary damage it has suffered by reason of Defendants' acts of copyright infringement, but Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Plaintiff has sustained damage in an amount exceeding $500,000.

90.     Plaintiff is further entitled to recover from Defendants the gains, profits and advantages it has obtained as a result of its acts of copyright infringement.  Plaintiff is at present unable to ascertain the full extent of the gains, profits and advantages Defendants have obtained by reason of their acts of copyright infringement, but Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants have obtained such gains, profits and advantages in an amount exceeding $500,000.

SECOND AMENDED COMPLAINT

**CLAIMS FOR RELIEF**

**FIRST CLAIM FOR RELIEF**

**(DIRECT COPYRIGHT INFRINGEMENT IN VIOLATION OF THE COPYRIGHT ACT, 17 U.S.C. §§ 101, *ET SEQ.*)**

**[Against Defendants IWI, RDF, and RDF Store]**

91.      Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 90, inclusive, as if fully set forth herein.

92.      Plaintiff owns valid and registered copyrights in and to each of the fifteen (15) DVDs, artwork, DVD menus, and other audiovisual works at issue here, and these works are described in the copyright certificates collectively attached hereto as **Exhibit "A."**   Each such work contains a large number of creative elements wholly original to Plaintiff, which are copyrightable subject matter under the laws of the United States (hereafter, such works shall be collectively referred to as the "Works").

93.      Plaintiff is the assignee of any and all intellectual property rights in the Works including all rights under copyright of Timonen, individually and d/b/a Upper Branch, created prior to the formal incorporation of Plaintiff Upper Branch and the copyright owner of the results and proceeds of Timonen's services following such incorporation.

94.      Between the years 2007 and 2010, Upper Branch had deposited "master" copies of Upper Branch Works and "master" computer files of the artwork created by Upper Branch to accompany the Works with Idea Media, with advance instruction that from those master copies and files, Idea Media would create and duplicate copies of the Works on a per-order basis as authorized by Timonen or Norton on behalf of Upper Branch.  The depositing of these master copies and files provided RDF with access to these Works.

95.      Between the years 2007 and 2010, Upper Branch had deposited "master" copies of Upper Branch Works and "master" computer files of the artwork created by Upper Branch to accompany the Works with Idea Media, with advance instruction that from those master copies and files, Idea Media would create and duplicate copies of the Works on a per-order basis as authorized by Timonen or Norton on behalf of Upper Branch.  The depositing of these

34

1    master copies and files provided RDF with access to these Works.

2        96.    RDF and Richard Dawkins produced documents to Upper Branch in EC054190

3    that evidenced email communications among Idea Media, Robin Cornwell, and Mike

4    Cornwell, concerning these individual Defendants' requests for copies of the DVDs,

5    representations that RDF owned the copyrights in the DVDs, requests for removal of Upper

6    Branch's copyright and logo from the packaging of the DVDs, and the submission of new

7    artwork files for Idea Media to create and utilize in connection with the unauthorized copies of

8    Upper Branch's DVDs that Idea Media agreed to produce for RDF's payment, despite specific

9    notice from Upper Branch that all of the above actions were not authorized by Upper Branch.

10       97.    Specifically, the produced emails evidenced that:

11       (a)    On Thursday, June 17, 2010, at 10:42 AM, Mark Steiner of Idea Media

12   wrote to Mike Cornwell confirming an order for 1,000 copies of "The Four Horsemen" (a

13   work copyrighted by Upper Branch), and the request for removal of Upper Branch's logo from

14   the DVD wrap:

15        "Hello Mike,
         It was nice meeting you today.  I'm sorry Tom Walsh isn't currently in the office
16       to assist.   He'll be in the office on Monday.
         ...
17       We'll get an exact (almost exact see below) repress of 1,000 "The 4 Horsemen"
         retail ready DVD9's underway for you right away.
18       We will remove the upperbrach logo from the DVD wrap and reproof it for
         you...
19       This DVD also contains a 4 panel 4/4 insert... please confirm that there are no
         changes to this artwork."
20

21

22
         (RDFRS, et al. DOX 1 -- 003657.)
23

24
         (b)    On June 21, 2010, at 11:53 AM MDT, Tom Walsh of Idea Media wrote to
25
     Mike Cornwell, copying Mark Steiner:
26

27
         "Hi Mike,
28       I am checking to see if we still have the "original" artwork files...

                                              35

We still have the artwork plates and films created but we might not be able to remove the logo.  UNLESS we still have the original artwork files.. I should know shortly."

(RDFRS, et al. DOX 1 -- 003659.)

(c)     On June 21, 2010, at 12:43 PM, Mike Cornwell wrote to Tom Walsh at Idea Media, copying Mark Steiner:  "I thought you had all of the artwork and I just need to proof it after you removed the Upper Branch logo."  (RDFRS, et al. DOX 1 -- 003659.)

(d)     On June 21, 2010, at 2:03 PM MDT, Tom Walsh of Idea Media wrote to Mike Cornwell: "Ok I found the old artwork but they are flattened PDF files so all I can do is "black out" over the logo".  (RDFRS, et al. DOX 1 -- 003665.)

(e)     On June 22, 2010, at 7:48 AM, Maureen Norton of Upper Branch wrote to Tom Walsh of Idea Media: "Hi Tom, Has anyone contacted you from The Richard Dawkins Foundation...? Please be advised that if anyone places a direct order with you for one of our titles it needs to be approved by us first.  Thanks, Maureen".  (RDFRS, et al. DOX 1 -- 003679.)

(f)     On June 22, 2010, at 9:31 AM, Tom Walsh of Idea Media wrote to Maureen Norton of Upper Branch: "Hi Maureen, Yes they just placed a re-order.  I cannot be in the middle of your issues though."  (RDFRS, et al. DOX 1 -- 003678 through RDFRS, et al. DOX 1 -- 003679.)

(g)     On June 22, 2010, at 11:49 AM, Maureen Norton of Upper Branch wrote to Tom Walsh of Idea Media: "The contract for these titles is with Upper Branch so you do need to be in the middle... We are not authorizing any other companies other than Upper Branch to place orders for these titles."  (RDFRS, et al. DOX 1 -- 003678.)

36

1

2    (h)  On June 22, 2010, at 11:10 AM MDT, Tom Walsh of Idea Media wrote to

3 Mike Cornwell: "Please contact Maureen at Upper Branch.  She is advising me that all orders

4 need to go through her... I can't get in the middle of this nor do I have time to go back and

5 forth with her.  Please contact her and let me know".  (RDFRS, et al. DOX 1 -- 003673.)

6

7    (i)  On June 22, 2010, at 12:16 PM, Tom Walsh of Idea Media wrote to

8 Maureen Norton of Upper Branch: "Mike [Cornwell] is going to call you to work this out...

9 this job is on hold till I hear back from one of you...thanks"  (RDFRS, et al. DOX 1 --

10 003676.)

11

12    (j)  Shortly after Tom Walsh of Idea Media forwards the above thread of

13 emails between himself and Maureen Norton, to Robin Cornwell and Mike Cornwell, on June

14 22, 2010, at 1:47 PM, Robin Cornwell wrote to Tom Walsh of Idea Media, carbon copying

15 Steve Gaines, Greg Langer, and Mike Cornwell: " Tom - we own all the DVDs that are

16 associated with the Richard Dawkins Foundation. Just to clarify."  (RDFRS, et al. DOX 1 --

17 003681.)

18

19    (k)  On June 22, 2010, at 2:51 PM, Tom Walsh of Idea Media wrote to Robin

20 Cornwell in response: "Thank you, Elisabeth... please fill out the order confirmation and

21 [Intellectual Property Rights] form and fax back to me."  (RDFRS, et al. DOX 1 -- 003680.)

22

23    (l)  On June 22, 2010, at 1:59 PM, Robin Cornwell wrote to Tom Walsh,

24 copying Mike Cornwell: "Mike is authorized, and he will get that out to you." (RDFRS, et al.

25 DOX 1 -- 003680.)

26    (m)  On November 5, 2010, after Josh Timonen on behalf of Upper Branch

27 sent Idea Media a further cease and desist email, Idea Media forwarded such cease and desist

28 email to RDF Store and requested to be advised about the same.  In response, Mike Cornwell

---

wrote to Idea Media: "Josh Timonen does not own legal rights to these."  (RDFRS, et al. DOX 1 --  003717 through RDFRS, et al. DOX 1 -- 003721.)

98.    Indeed, in or about June 2010, and again in or about November 2010, Upper Branch twice demanded Idea Media, and RDF to cease and desist from infringing on Upper Branch's exclusive rights, that RDF was not authorized to place orders for copies of Upper Branch Works and that Idea Media was not authorized to produce copies of Upper Branch Works for RDF.  On both occasions, Josh Timonen and Maureen Norton on behalf of Upper Branch communicated these cease and desist demands to Idea Media in writing by email.

99.    Starting in or about June 2010, these Defendants began exploiting, reproducing, performing, adapting, selling and distributing the copyrighted material in the Works in DVD format in the United States.  Unless enjoined or restrained, Defendants' conduct threatens to further infringe Plaintiff's copyright interests.

100.    Plaintiff has notified Defendants that they are not authorized to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them, and Plaintiff has demanded that they cease and desist from any such potential infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, but Plaintiff is informed and believes and on that basis alleges that Defendants continue to maintain otherwise including their right to continue distributing and exploiting the Works without Plaintiff's authorization and in infringement of Plaintiff's exclusive rights.

101.    None of the Defendants are authorized by Plaintiff to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them.

102.    Plaintiff is informed and believes and on that basis alleges that Defendant IWI has infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works by exploiting, reproducing, performing, adapting, selling and/or distributing, without proper authorization, Plaintiff's Works, to and/or for Defendants RDF and RDF Store, so that these Defendants can exploit, reproduce, perform, adapt, sell and/or distribute these unauthorized copies of Plaintiff's Works to the public via Defendant RDF and/or RDF Store's website, on

the internet, and at conventions, and public lectures, among other ways, in further infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works.

103.    Defendants acts of direct copyright infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works have been willful, intentional, and purposeful, in knowing disregard of Plaintiff's rights under the Copyright Act.

104.    By reason of the Defendants' infringement and threatened future infringement, Plaintiff has sustained and will contribute to sustain substantial injury, loss and damage to their ownership rights in the Works.

105.    Further irreparable harm to Plaintiff is imminent as a result of Defendants' conduct, and Plaintiff is without an adequate remedy at law.   Plaintiff is entitled to an injunction restraining Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of copyright infringement.

106.    Plaintiff is further entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' acts of copyright infringement.   Plaintiff is at present unable to ascertain the full extent of the monetary damage it has suffered by reason of Defendants' acts of copyright infringement, but Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Plaintiff has sustained damage in an amount exceeding $500,000.

107.    Plaintiff is further entitled to recover from Defendants the gains, profits and advantages it has obtained as a result of its acts of copyright infringement.   Plaintiff is at present unable to ascertain the full extent of the gains, profits and advantages Defendants have obtained by reason of their acts of copyright infringement, but Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants have obtained such gains, profits and advantages in an amount exceeding $500,000.

SECOND AMENDED COMPLAINT

**SECOND CLAIM FOR RELIEF**

**(CONTRIBUTORY COPYRIGHT INFRINGEMENT)**

**[Against ALL Defendants]**

108.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 90, inclusive, as if fully set forth herein.

109.    Plaintiff owns valid and registered copyrights in and to each of the fifteen (15) DVDs, artwork, DVD menus, and other audiovisual works at issue here, and these works are described in the copyright certificates collectively attached hereto as **Exhibit "A."** Each such work contains a large number of creative elements wholly original to Plaintiff, which are copyrightable subject matter under the laws of the United States (hereafter, such works shall be collectively referred to as the "Works").

110.    Plaintiff is the assignee of any and all intellectual property rights in the Works including all rights under copyright of Timonen, individually and d/b/a Upper Branch, created prior to the formal incorporation of Plaintiff Upper Branch and the copyright owner of the results and proceeds of Timonen's services following such incorporation.

111.    Between the years 2007 and 2010, Upper Branch had deposited "master" copies of Upper Branch Works and "master" computer files of the artwork created by Upper Branch to accompany the Works with Idea Media, with advance instruction that from those master copies and files, Idea Media would create and duplicate copies of the Works on a per-order basis as authorized by Timonen or Norton on behalf of Upper Branch.  The depositing of these master copies and files provided RDF with access to these Works.

112.    Between the years 2007 and 2010, Upper Branch had deposited "master" copies of Upper Branch Works and "master" computer files of the artwork created by Upper Branch to accompany the Works with Idea Media, with advance instruction that from those master copies and files, Idea Media would create and duplicate copies of the Works on a per-order basis as authorized by Timonen or Norton on behalf of Upper Branch.  The depositing of these master copies and files provided RDF with access to these Works.

113.    RDF and Richard Dawkins produced documents to Upper Branch in EC054190

that evidenced email communications among Idea Media, Robin Cornwell, and Mike Cornwell, concerning these individual Defendants' requests for copies of the DVDs, representations that RDF owned the copyrights in the DVDs, requests for removal of Upper Branch's copyright and logo from the packaging of the DVDs, and the submission of new artwork files for Idea Media to create and utilize in connection with the unauthorized copies of Upper Branch's DVDs that Idea Media agreed to produce for RDF's payment, despite specific notice from Upper Branch that all of the above actions were not authorized by Upper Branch.

114. Specifically, the produced emails evidenced that:

(a) On Thursday, June 17, 2010, at 10:42 AM, Mark Steiner of Idea Media wrote to Mike Cornwell confirming an order for 1,000 copies of "The Four Horsemen" (a work copyrighted by Upper Branch), and the request for removal of Upper Branch's logo from the DVD wrap:

> "Hello Mike,
> It was nice meeting you today. I'm sorry Tom Walsh isn't currently in the office to assist. He'll be in the office on Monday.
> ...
> We'll get an exact (almost exact see below) repress of 1,000 "The 4 Horsemen" retail ready DVD9's underway for you right away.
> We will remove the upperbrach logo from the DVD wrap and reproof it for you...
> This DVD also contains a 4 panel 4/4 insert... please confirm that there are no changes to this artwork."

> (RDFRS, et al. DOX 1 -- 003657.)

(b) On June 21, 2010, at 11:53 AM MDT, Tom Walsh of Idea Media wrote to Mike Cornwell, copying Mark Steiner:

> "Hi Mike,
> I am checking to see if we still have the "original" artwork files...
> We still have the artwork plates and films created but we might not be able to remove the logo. UNLESS we still have the original artwork files.. I should know shortly."

SECOND AMENDED COMPLAINT

(RDFRS, et al. DOX 1 -- 003659.)

(c)     On June 21, 2010, at 12:43 PM, Mike Cornwell wrote to Tom Walsh at Idea Media, copying Mark Steiner:  "I thought you had all of the artwork and I just need to proof it after you removed the Upper Branch logo."  (RDFRS, et al. DOX 1 -- 003659.)

(d)     On June 21, 2010, at 2:03 PM MDT, Tom Walsh of Idea Media wrote to Mike Cornwell: "Ok I found the old artwork but they are flattened PDF files so all I can do is "black out" over the logo".  (RDFRS, et al. DOX 1 -- 003665.)

(e)     On June 22, 2010, at 7:48 AM, Maureen Norton of Upper Branch wrote to Tom Walsh of Idea Media: "Hi Tom, Has anyone contacted you from The Richard Dawkins Foundation...? Please be advised that if anyone places a direct order with you for one of our titles it needs to be approved by us first.  Thanks, Maureen".  (RDFRS, et al. DOX 1 -- 003679.)

(f)     On June 22, 2010, at 9:31 AM, Tom Walsh of Idea Media wrote to Maureen Norton of Upper Branch: "Hi Maureen, Yes they just placed a re-order.  I cannot be in the middle of your issues though."  (RDFRS, et al. DOX 1 -- 003678 through RDFRS, et al. DOX 1 -- 003679.)

(g)     On June 22, 2010, at 11:49 AM, Maureen Norton of Upper Branch wrote to Tom Walsh of Idea Media: "The contract for these titles is with Upper Branch so you do need to be in the middle... We are not authorizing any other companies other than Upper Branch to place orders for these titles."  (RDFRS, et al. DOX 1 -- 003678.)

(h)     On June 22, 2010, at 11:10 AM MDT, Tom Walsh of Idea Media wrote to

42

Mike Cornwell: "Please contact Maureen at Upper Branch. She is advising me that all orders need to go through her... I can't get in the middle of this nor do I have time to go back and forth with her. Please contact her and let me know". (RDFRS, et al. DOX 1 -- 003673.)

(i)    On June 22, 2010, at 12:16 PM, Tom Walsh of Idea Media wrote to Maureen Norton of Upper Branch: "Mike [Cornwell] is going to call you to work this out... this job is on hold till I hear back from one of you...thanks" (RDFRS, et al. DOX 1 -- 003676.)

(j)    Shortly after Tom Walsh of Idea Media forwards the above thread of emails between himself and Maureen Norton, to Robin Cornwell and Mike Cornwell, on June 22, 2010, at 1:47 PM, Robin Cornwell wrote to Tom Walsh of Idea Media, carbon copying Steve Gaines, Greg Langer, and Mike Cornwell: " Tom - we own all the DVDs that are associated with the Richard Dawkins Foundation. Just to clarify." (RDFRS, et al. DOX 1 -- 003681.)

(k)    On June 22, 2010, at 2:51 PM, Tom Walsh of Idea Media wrote to Robin Cornwell in response: "Thank you, Elisabeth... please fill out the order confirmation and [Intellectual Property Rights] form and fax back to me." (RDFRS, et al. DOX 1 -- 003680.)

(l)    On June 22, 2010, at 1:59 PM, Robin Cornwell wrote to Tom Walsh, copying Mike Cornwell: "Mike is authorized, and he will get that out to you." (RDFRS, et al. DOX 1 -- 003680.)

(m)    On November 5, 2010, after Josh Timonen on behalf of Upper Branch sent Idea Media a further cease and desist email, Idea Media forwarded such cease and desist email to RDF Store and requested to be advised about the same. In response, Mike Cornwell wrote to Idea Media: "Josh Timonen does not own legal rights to these." (RDFRS, et al. DOX 1 --  003717 through RDFRS, et al. DOX 1 -- 003721.)

43

115.   Indeed, in or about June 2010, and again in or about November 2010, Upper Branch twice demanded Idea Media, and RDF to cease and desist from infringing on Upper Branch's exclusive rights, that RDF was not authorized to place orders for copies of Upper Branch Works and that Idea Media was not authorized to produce copies of Upper Branch Works for RDF.  On both occasions, Josh Timonen and Maureen Norton on behalf of Upper Branch communicated these cease and desist demands to Idea Media in writing by email.

116.   Starting in or about June 2010, these Defendants began exploiting, reproducing, performing, adapting, selling and distributing the copyrighted material in the Works in DVD format in the United States.  Unless enjoined or restrained, Defendants' conduct threatens to further infringe Plaintiff's copyright interests.

117.   Plaintiff has notified Defendants that they are not authorized to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them, and Plaintiff has demanded that they cease and desist from any such potential infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, but Plaintiff is informed and believes and on that basis alleges that Defendants continue to maintain otherwise including their right to continue distributing and exploiting the Works without Plaintiff's authorization and in infringement of Plaintiff's exclusive rights.

118.   None of the Defendants are authorized by Plaintiff to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them.

119.   Plaintiff is informed and believes and on that basis alleges that Defendant IWI has infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works by exploiting, reproducing, performing, adapting, selling and/or distributing, without proper authorization, Plaintiff's Works, to and/or for Defendants RDF and RDF Store, so that these Defendants can exploit, reproduce, perform, adapt, sell and/or distribute these unauthorized copies of Plaintiff's Works to the public via Defendant RDF and/or RDF Store's website, on the internet, and at conventions, and public lectures, among other ways, in further infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works.

SECOND AMENDED COMPLAINT

120.    Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendant IWI of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants RDF, RDF Store, Robin Cornwell, and Mike Cornwell have directed and materially contributed to the same.  Plaintiff is informed and believes and on that basis alleges that these Defendants have falsely represented to IWI that RDF is the copyright owner of the Works in order to induce IWI to manufacture copies of Plaintiff's Works for RDF and/or RDF Store, and have instructed IWI to remove and/or "black out" Plaintiff's logo from the artwork accompanying the DVD packaging of certain Works, and/or attach "new artwork or packaging" created by RDF to Plaintiff's Works, *inter alia*.  Plaintiff is informed and believes and on that basis alleges that these Defendants knew or had reason to know of the infringing activity of IWI but took steps to avoid acknowledging the infringing activity and instead intentionally induced and/or materially contributed to IWI's infringing activity.

121.    Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendants RDF and RDF Store of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants IWI, Robin Cornwell, and Mike Cornwell have directed and/or materially contributed to the same.  Plaintiff is informed and believes and on that basis alleges that these Defendants knew or had reason to know of the infringing activity of RDF and RDF Store but took steps to avoid acknowledging the infringing activity and instead intentionally induced and/or materially contributed to the infringing activity of RDF and RDF Store.

122.    Defendants acts of indirect copyright infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works have been willful, intentional, and purposeful, in knowing disregard of Plaintiff's rights under the Copyright Act.

123.    By reason of the Defendants' infringement and threatened infringement, Plaintiff has sustained and will contribute to sustain substantial injury, loss and damage to their ownership rights in the Works.

124.    Further irreparable harm to Plaintiff is imminent as a result of Defendants' conduct, and Plaintiff is without an adequate remedy at law.  Plaintiff is entitled to an

injunction restraining Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of copyright infringement.

125.   Plaintiff is further entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' acts of copyright infringement.   Plaintiff is at present unable to ascertain the full extent of the monetary damage it has suffered by reason of Defendants' acts of copyright infringement, but Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Plaintiff has sustained damage in an amount exceeding $500,000.

126.   Plaintiff is further entitled to recover from Defendants the gains, profits and advantages it has obtained as a result of its acts of copyright infringement.   Plaintiff is at present unable to ascertain the full extent of the gains, profits and advantages Defendants have obtained by reason of their acts of copyright infringement, but Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants have obtained such gains, profits and advantages in an amount exceeding $500,000.

**THIRD CLAIM FOR RELIEF**

**(VICARIOUS COPYRIGHT INFRINGEMENT)**

**[Against ALL Defendants EXCEPT IWI]**

127.   Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 90, inclusive, as if fully set forth herein.

128.   Plaintiff owns valid and registered copyrights in and to each of the fifteen (15) DVDs, artwork, DVD menus, and other audiovisual works at issue here, and these works are described in the copyright certificates collectively attached hereto as **Exhibit "A."**  Each such work contains a large number of creative elements wholly original to Plaintiff, which are copyrightable subject matter under the laws of the United States (hereafter, such works shall be collectively referred to as the "Works").

129.   Plaintiff is the assignee of any and all intellectual property rights in the Works including all rights under copyright of Timonen, individually and d/b/a Upper Branch, created

prior to the formal incorporation of Plaintiff Upper Branch and the copyright owner of the results and proceeds of Timonen's services following such incorporation.

130.   Between the years 2007 and 2010, Upper Branch had deposited "master" copies of Upper Branch Works and "master" computer files of the artwork created by Upper Branch to accompany the Works with Idea Media, with advance instruction that from those master copies and files, Idea Media would create and duplicate copies of the Works on a per-order basis as authorized by Timonen or Norton on behalf of Upper Branch.  The depositing of these master copies and files provided RDF with access to these Works.

131.   Between the years 2007 and 2010, Upper Branch had deposited "master" copies of Upper Branch Works and "master" computer files of the artwork created by Upper Branch to accompany the Works with Idea Media, with advance instruction that from those master copies and files, Idea Media would create and duplicate copies of the Works on a per-order basis as authorized by Timonen or Norton on behalf of Upper Branch.  The depositing of these master copies and files provided RDF with access to these Works.

132.   RDF and Richard Dawkins produced documents to Upper Branch in EC054190 that evidenced email communications among Idea Media, Robin Cornwell, and Mike Cornwell, concerning these individual Defendants' requests for copies of the DVDs, representations that RDF owned the copyrights in the DVDs, requests for removal of Upper Branch's copyright and logo from the packaging of the DVDs, and the submission of new artwork files for Idea Media to create and utilize in connection with the unauthorized copies of Upper Branch's DVDs that Idea Media agreed to produce for RDF's payment, despite specific notice from Upper Branch that all of the above actions were not authorized by Upper Branch.

133.   Specifically, the produced emails evidenced that:

(a)   On Thursday, June 17, 2010, at 10:42 AM, Mark Steiner of Idea Media wrote to Mike Cornwell confirming an order for 1,000 copies of "The Four Horsemen" (a work copyrighted by Upper Branch), and the request for removal of Upper Branch's logo from the DVD wrap:

"Hello Mike,
It was nice meeting you today.  I'm sorry Tom Walsh isn't currently in the office

47

to assist.   He'll be in the office on Monday.
...
We'll get an exact (almost exact see below) repress of 1,000 "The 4 Horsemen"
retail ready DVD9's underway for you right away.
We will remove the upperbrach logo from the DVD wrap and reproof it for
you...
This DVD also contains a 4 panel 4/4 insert... please confirm that there are no
changes to this artwork."

(RDFRS, et al. DOX 1 -- 003657.)


(b)      On June 21, 2010, at 11:53 AM MDT, Tom Walsh of Idea Media wrote to
Mike Cornwell, copying Mark Steiner:


"Hi Mike,
I am checking to see if we still have the "original" artwork files...
We still have the artwork plates and films created but we might not
be able to remove the logo.   UNLESS we still have the original
artwork files.. I should know shortly."

(RDFRS, et al. DOX 1 -- 003659.)


(c)      On June 21, 2010, at 12:43 PM, Mike Cornwell wrote to Tom Walsh at
Idea Media, copying Mark Steiner:  "I thought you had all of the artwork and I just need to
proof it after you removed the Upper Branch logo."  (RDFRS, et al. DOX 1 -- 003659.)


(d)      On June 21, 2010, at 2:03 PM MDT, Tom Walsh of Idea Media wrote to
Mike Cornwell: "Ok I found the old artwork but they are flattened PDF files so all I can do is
"black out" over the logo".  (RDFRS, et al. DOX 1 -- 003665.)


(e)      On June 22, 2010, at 7:48 AM, Maureen Norton of Upper Branch wrote
to Tom Walsh of Idea Media: "Hi Tom, Has anyone contacted you from The Richard Dawkins

48

Foundation...? Please be advised that if anyone places a direct order with you for one of our titles it needs to be approved by us first.  Thanks, Maureen".  (RDFRS, et al. DOX 1 -- 003679.)

(f)    On June 22, 2010, at 9:31 AM, Tom Walsh of Idea Media wrote to Maureen Norton of Upper Branch: "Hi Maureen, Yes they just placed a re-order.  I cannot be in the middle of your issues though."  (RDFRS, et al. DOX 1 -- 003678 through RDFRS, et al. DOX 1 -- 003679.)

(g)    On June 22, 2010, at 11:49 AM, Maureen Norton of Upper Branch wrote to Tom Walsh of Idea Media: "The contract for these titles is with Upper Branch so you do need to be in the middle... We are not authorizing any other companies other than Upper Branch to place orders for these titles."  (RDFRS, et al. DOX 1 -- 003678.)

(h)    On June 22, 2010, at 11:10 AM MDT, Tom Walsh of Idea Media wrote to Mike Cornwell: "Please contact Maureen at Upper Branch.  She is advising me that all orders need to go through her... I can't get in the middle of this nor do I have time to go back and forth with her.  Please contact her and let me know".  (RDFRS, et al. DOX 1 -- 003673.)

(i)    On June 22, 2010, at 12:16 PM, Tom Walsh of Idea Media wrote to Maureen Norton of Upper Branch: "Mike [Cornwell] is going to call you to work this out... this job is on hold till I hear back from one of you...thanks"  (RDFRS, et al. DOX 1 -- 003676.)

(j)    Shortly after Tom Walsh of Idea Media forwards the above thread of emails between himself and Maureen Norton, to Robin Cornwell and Mike Cornwell, on June 22, 2010, at 1:47 PM, Robin Cornwell wrote to Tom Walsh of Idea Media, carbon copying Steve Gaines, Greg Langer, and Mike Cornwell: " Tom - we own all the DVDs that are

associated with the Richard Dawkins Foundation. Just to clarify." (RDFRS, et al. DOX 1 -- 003681.)

(k)   On June 22, 2010, at 2:51 PM, Tom Walsh of Idea Media wrote to Robin Cornwell in response: "Thank you, Elisabeth... please fill out the order confirmation and [Intellectual Property Rights] form and fax back to me." (RDFRS, et al. DOX 1 -- 003680.)

(l)   On June 22, 2010, at 1:59 PM, Robin Cornwell wrote to Tom Walsh, copying Mike Cornwell: "Mike is authorized, and he will get that out to you." (RDFRS, et al. DOX 1 -- 003680.)

(m)   On November 5, 2010, after Josh Timonen on behalf of Upper Branch sent Idea Media a further cease and desist email, Idea Media forwarded such cease and desist email to RDF Store and requested to be advised about the same. In response, Mike Cornwell wrote to Idea Media: "Josh Timonen does not own legal rights to these." (RDFRS, et al. DOX 1 --  003717 through RDFRS, et al. DOX 1 -- 003721.)

134.   Indeed, in or about June 2010, and again in or about November 2010, Upper Branch twice demanded Idea Media, and RDF to cease and desist from infringing on Upper Branch's exclusive rights, that RDF was not authorized to place orders for copies of Upper Branch Works and that Idea Media was not authorized to produce copies of Upper Branch Works for RDF. On both occasions, Josh Timonen and Maureen Norton on behalf of Upper Branch communicated these cease and desist demands to Idea Media in writing by email.

135.   Starting in or about June 2010, these Defendants began exploiting, reproducing, performing, adapting, selling and distributing the copyrighted material in the Works in DVD format in the United States. Unless enjoined or restrained, Defendants' conduct threatens to further infringe Plaintiff's copyright interests.

136.   Plaintiff has notified Defendants that they are not authorized to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them, and

Plaintiff has demanded that they cease and desist from any such potential infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, but Plaintiff is informed and believes and on that basis alleges that Defendants continue to maintain otherwise including their right to continue distributing and exploiting the Works without Plaintiff's authorization and in infringement of Plaintiff's exclusive rights.

137.   None of the Defendants are authorized by Plaintiff to exploit, reproduce, adapt, distribute, sell, and/or perform Plaintiff's Works, or any of them.

138.   Plaintiff is informed and believes and on that basis alleges that Defendant IWI has infringed Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works by exploiting, reproducing, performing, adapting, selling and/or distributing, without proper authorization, Plaintiff's Works, to and/or for Defendants RDF and RDF Store, so that these Defendants can exploit, reproduce, perform, adapt, sell and/or distribute these unauthorized copies of Plaintiff's Works to the public via Defendant RDF and/or RDF Store's website, on the internet, and at conventions, and public lectures, among other ways, in further infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works.

139.   Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendant IWI of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants RDF and RDF Store are vicariously infringing the Works. Plaintiff is informed and believes and on that basis alleges that Defendants RDF and/or RDF Store are profiting directly from the infringing activity of Defendant IWI because these Defendants by and through Robin Cornwell and/or Mike Cornwell place orders with IWI for copies of the Works and thereafter sell the same to the public for profit, *inter alia*.  As a result, these Defendants have the right and ability to control the infringing activity of Defendant IWI, and they exercise that right and ability by infringing on Upper Branch Works.

140.   Plaintiff is informed and believes and on that basis alleges with respect to the direct infringement by Defendants RDF and RDF Store of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works, Defendants Robin Cornwell and Mike Cornwell are vicariously infringing the Works because these Defendants are procuring unauthorized copies

of the Works for RDF and RDF Store, Robin Cornwell is now taking credit for the "idea" of these Works which Robin Cornwell has admitted are centrally important to the goal and purpose of RDF, Mike Cornwell is selling copies of these Works out of his residential home address which houses the RDF Store operation, these Works are the primary goods sold through the RDF Store, and these individual Defendants are directing and/or supervising RDF and RDF Store's sales, distributions and/or exploitation of the unauthorized copies of the Works to the public.

141.    Defendants acts of indirect copyright infringement of Plaintiff's exclusive rights under 17 U.S.C. § 106 in and to the Works have been willful, intentional, and purposeful, in knowing disregard of Plaintiff's rights under the Copyright Act.

142.    By reason of the Defendants' infringement and threatened infringement, Plaintiff has sustained and will continue to sustain substantial injury, loss and damage to their ownership rights in the Works.

143.    Further irreparable harm to Plaintiff is imminent as a result of Defendants' conduct, and Plaintiff is without an adequate remedy at law.   Plaintiff is entitled to an injunction restraining Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert with them from engaging in further such acts of copyright infringement.

144.    Plaintiff is further entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' acts of copyright infringement.   Plaintiff is at present unable to ascertain the full extent of the monetary damage it has suffered by reason of Defendants' acts of copyright infringement, but Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Plaintiff has sustained damage in an amount exceeding $500,000.

145.    Plaintiff is further entitled to recover from Defendants the gains, profits and advantages it has obtained as a result of its acts of copyright infringement.   Plaintiff is at present unable to ascertain the full extent of the gains, profits and advantages Defendants have obtained by reason of their acts of copyright infringement, but Plaintiff is informed and

believes, and on the basis of such information and belief alleges, that Defendants have obtained such gains, profits and advantages in an amount exceeding $500,000.

## FOURTH CLAIM FOR RELIEF

## (FRAUD)

### [Against Defendants  RDF, Dawkins, and Robin Cornwell]

146.    Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 90, inclusive, as if fully set forth herein.

### Upper Branch Owned and Operated The Online Store

147.    In or about 2006, Josh Timonen and Richard Dawkins orally agreed that Josh Timonen would from Los Angeles, California design and develop a website for Richard Dawkins.  Timonen was paid certain independent contractor fees for these website services.

148.    During this time, Richard Dawkins represented to Josh Timonen, orally and in writing through emails, that he was attempting to register, and having difficulty registering, RDF in the United Kingdom ("UK") as a registered charity in the UK because the British Charities Commission ("BCC") was concerned over a number of issues, including concerns that RDF would be promoting the works of Dawkins, which, in the BCC's view, would violate BCC regulations in two ways: First, it was relayed that the BCC expressed concern that as a charity organized for educational and scientific purposes, RDF in the UK would be required to present materials related to the issues of religion and creationism in an unbiased, balanced and neutral fashion, whereas Dawkins' works presented views on religion and creationism from a particularly biased perspective.  Second, it was also relayed that the BCC was concerned that the sale of Dawkins' works on the RDF website would confer an impermissible private benefit to Dawkins as a platform for promotion of his work.

149.    As a result of these asserted BCC "restrictions," Richard Dawkins represented to Josh Timonen that Dawkins would require two websites -- one for Richard Dawkins, personally, and one for RDF, which would link to Dawkins' personal website.  Again, Josh Timonen was paid certain independent contractor fees for these website services.

150.   In or about June 2007, Josh Timonen orally agreed with Richard Dawkins, and Robin Cornwell (who at the time was only a volunteer for RDF), that Josh Timonen d/b/a Upper Branch would create and operate, independently and autonomously from Richard Dawkins and his namesake foundation, RDF, an online store ("Store"), which, in Dawkins' words was "not directly concerned with RDF[]'[s] activities."

151.   In connection therewith, Richard Dawkins permitted Josh Timonen to link the Upper Branch Store website to Richard Dawkins' personal website, and although Richard Dawkins' personal website was linked to RDF's website, there was no direct link between the Upper Branch Store website and RDF's website.

152.   At all times hereunder, Upper Branch was an independent business, and Mr. Timonen autonomously ran and operated Upper Branch, and the Upper Branch Store, which specialized in selling goods which publicized the issues and causes(s) which were also supported and advanced by Dawkins and RDF.

153.   Upper Branch operated the Store from a location within Los Angeles, California.

154.   On or about July 25, 2007, with respect to the proposed donation of profits to RDF after payment of business expenses, salaries, benefits and taxes of Upper Branch, Richard Dawkins <richard.dawkins@zoo.ox.ac.uk> emailed Timonen in Los Angeles, copying Robin Cornwell <web.master@rdfrs.org>, and represented in writing: "**it's your baby, your profits, your tax . . . as for whether [Upper Branch] should make a donation to [RDFRS], I don't think you should feel any moral obligations in that regard**." (Emphasis added.) These emails were previously produced to Dawkins and RDF in EC054190, see infra at 57, *et seq.*, bates stamped DEF000005 through DEF000009.

155.   In reasonable reliance upon the foregoing material representations and assurances from Dawkins and Cornwell, and having no reason to believe that such representations were false in any way, Timonen was induced to and relied upon the same and understood that the parties had in fact reached agreement.  Indeed, Timonen d/b/a Upper Branch created and operated the Upper Branch Store, independently and autonomously, until April 2008, at which point Timonen caused Upper Branch to be formally incorporated and to

thereafter independently and autonomously operate the Store until May, 2010. Neither Richard Dawkins, nor RDF, nor Robin Cornwell provided any capitalization for Upper Branch or ever paid taxes on its behalf. Neither Richard Dawkins, nor RDF, nor Robin Cornwell were ever directors, officers, employees or shareholders of Upper Branch either.

156.    Upper Branch created all of the goods that were sold in the Store, determined how much those goods would be sold for, paid for all costs associated with the manufacturing of said goods, as well as all costs of operating the Store, including Upper Branch operating costs, building lease costs, Upper Branch employee benefits and salary, and all local, state and federal costs. Upper Branch plowed any excess operating revenues (after expenses) to expansion of the Store inventory and productions, including the Works, and on one occasion contributed $30,000 to the Ayaan Hirsi Ali Security Fund, funneling this charitable contribution through RDF for tax reasons, only, and not due to any "moral obligation" or other obligation which Richard Dawkins disclaimed in his email of July 25, 2007, supra at 21.

157.    Separate and apart from the Store operation, Richard Dawkins requested Josh Timonen to continue developing and managing the websites for Dawkins and RDF in exchange for certain independent contractor fees for these separate services.

**Richard Dawkins and RDF Fail To Compensate Upper Branch For Upper Branch's Conveyance of Store Assets and Operations to RDF; Richard Dawkins and RDF Instead File A Civil Lawsuit Against Upper Branch, *et al.*, in Los Angeles Superior Court, Alleging "Criminal" Conduct, Claims Which The Court Later Dismissed With Prejudice.**

158.    In or about December, 2009, Robin Cornwell and Maureen Norton discussed the possibility of Upper Branch conveying the Store operations and assets to RDF. Robin Cornwell had represented to Josh Timonen and Maureen Norton that RDF had obtained its 501(c)(3) status in the United States and, through corporate transactions, had been restructured and been "uncoupled" from RDF in the UK. It was also relayed that as a result, RDF in the US was, at that point in time, permitted to begin operating its own "online store" and to profit from a merchandising enterprise, whereas previously, Plaintiff was led to understand that RDF in the US was not permitted to profit from any such merchandising enterprise.

159.   As a result of the foregoing representations, it was agreed that Upper Branch would convey the Store assets, operations, and inventory, and in exchange, RDF would compensate Upper Branch for its Store inventory as well as the financial, legal, and tax liabilities that had been incurred by Upper Branch and which would be incurred by Upper Branch as a result of the Store conveyance.

160.   In connection therewith, on December 29, 2009, at 5:34 PM, Robin Cornwell <elizabeth.cornwell@mac.com> on behalf of Richard Dawkins and RDF, emailed Josh Timonen and Maureen Norton:

> "Hi Josh and Maureen,
> ...
> Richard [Dawkins] has agreed to spend some time in the US as soon as his book is finished - and that includes time in Burbank to film vignettes.  ... So think about how much time Richard [Dawkins] should spend in Los Angeles...
>
> So think about the possibilities of what we need Richard [Dawkins] to do...
>
> ...
>
> Another thing to think about is whether or not you both want to come out to Colorado to meet with the accounting people.  If so we can go over the way to buy out the store and budget for more staff.  All very boring I know. . . but necessary.  I will try to make it as painless as possible.  Your tax accountant will need to be involved, and of course we will cover the additional costs."

A copy of this email was subsequently produced by Upper Branch, *et al.*, to Dawkins and RDF in EC054190, see <u>infra</u> at 57, *et seq.*, bates stamped DEF000025.

161.   In connection therewith, on January 12, 2010, at 8:28 AM, Robin Cornwell <robin.cornwell@gmail.com> on behalf of Richard Dawkins and RDF, emailed Josh Timonen:

> "Hi Josh,
> ...

> When would be a good time to meet up and go through the grueling necessity of budgets, buying out the Store, . . . etc.??? Is there a time in January that would work for you?"

A copy of this email exchange was subsequently produced by Upper Branch, *et al.*, to Dawkins and RDF in EC054190, see <u>infra</u> at 57, *et seq.*, bates stamped DEF000023 to DEF000024.

162.    In connection therewith, on January 27, 2010, at 5:10 PM, Robin Cornwell <robin.cornwell@gmail.com> on behalf of Richard Dawkins and RDF, emailed Josh Timonen and Maureen Norton:

> "Hey,
>
> Met with Steve Gaines today to talk about bringing the Store under RDF[].   The main thing is to make certain you don't have any surprise expenses or tax issues in terms of this change over.   And, we want to try to do this fairly quickly.
>
> What we need to get is a current inventory and its value.
>
> Also, a general idea of what is sold in terms of merchandize... so perhaps the last three months?
> ...
> We should definitely plan on you both coming out [to Colorado] in March. . . .
>
> The other thing we need to do is all the Trademarks: RDF TV, OUT Campaign, NBGA, Goodness for Goodness' Sake . . . . Now that we are no longer just playing at this Foundation stuff, we have to get our shit together.   What a pain."

A copy of this email was subsequently produced by Upper Branch, et al., to Dawkins and RDF in EC054190, see <u>infra</u> at 57, *et seq.*, bates stamped DEF000022.

163.    In connection therewith, on February 3, 2010, Robin Cornwell on behalf of RDF circulated meeting minutes via email to Josh Timonen, Maureen Norton and RDF Trustees,

including Richard Dawkins, et al., which represented:

> "1. Moving the merchandizing, website, and all the film production under RDFRS.  Steve [Gaines] will be looking at the particular issues surrounding this transition.
> ...
> Concerning this move, it is critical that Upper Branch does not incur any costs, including tax, legal or financial responsibilities.
>
> Maureen Norton has provided RDFRS with a current inventory of stock, and current liabilities and revenues.  Additionally, she will provide a P & L statement for 2009 in order for us to budget for 2010 and beyond.
>
> In terms of the DVDs, the most important issue is to put into place all of the legal ownership."

A copy of these meeting minutes were subsequently produced by Upper Branch, et al., to Dawkins and RDF in EC054190, see _infra_ at 57, _et seq._, bates stamped DEF000010 through DEF000016.

164.    In connection therewith, on or about March 9, 2010, at 3:23 PM, Robin Cornwell circulated by email to Richard Dawkins, Claire Enders, Todd Stiefel, Andy Thomson, among others, and carbon copying Josh Timonen, meeting minutes Robin Cornwell authored to document for the RDF Trustees an in-person meeting among Josh Timonen, Maureen Norton, Robin Cornwell, Jill Chalmers, and Steve Gaines on March 5, 2010.  The following was documented in these meeting minutes:

> **"Upper Branch and the Store**
>
> As the Trustees are aware, the British Charities Commission put strict controls on the Foundation's activities concerning potential benefits to Richard [Dawkins].  Thus, when the US Foundation owned the UK Foundation, the website RichardDawkins.net along with the activit[y] of the selling merchandize was owned and operated by Upper Branch Productions - a company owned by Josh Timonen. . . . With the decoupling of the two Foundations, the US Foundation is free to own the websites and store.

58

. . .

To the main point we have two issues: RichardDawkins.net being the website for the US Foundation and moving all the merchandize from the Store to the Foundation. . . .

Upper Branch will donate the merchandize to the Foundation.  This provides a tax break for Upper Branch, but we must also consider that Upper Branch has been paying taxes and accounting fees while operating the business [over the last three years].  Most of the profits from sales have been plowed into the operation, including new merchandize, filming, editing, and other associated costs such as part time staff.

. . .

The Store is not only self-sustaining, but has grown substantially.

. . .

Maureen Norton has prepared and submitted the inventory and the transition of stock should go smoothly.

. . .

Another matter in this transition is making certain that we have all the appropriate documentation in terms of ownership of the DVD rights, all films, photos, images, logos and properties are assigned to the Foundation."

A copy of these meeting minutes were subsequently produced by Upper Branch, et al., to Dawkins and RDF in EC054190, see <u>infra</u> at 57, *et seq.*, bates stamped DEF000026 through DEF000032.

165.  In connection therewith, on <u>Tuesday, May 18, 2010</u>, the following emails were exchanged between Robin Cornwell <robin.cornwell@mac.com> on behalf of Richard Dawkins and RDF, and Josh Timonen <joshtimonen@gmail.com> on behalf of Upper Branch. These emails were also selectively produced by Richard Dawkins and RDF to Upper Branch, *et al.* in EC054190, see <u>infra</u> at 57, *et seq.*, bates stamped RDFRS, et al. DOX 1 -- 000106

through RDFRS, et al. DOX 1 -- 000109:

(a)    At 2:41 PM, Robin Cornwell wrote to Josh Timonen:

"Dear Josh,

...

As you know, we were in the middle of moving the financial aspects of the Store to the Foundation as well as all the rights of all footage, DVD, logos, as well as hard drives, equipment, insurance, leases, software, maintenance contracts, etc., along with the assumption by RDF of all appropriate liabilities that Upper Branch had.

...

When we were discussing the transfer of the Store to the Foundation, you and Maureen both said that neither the Foundation nor Richard owed Upper Branch any funds. It was all a matter of transferring all the property and assets in such a way so that neither you nor Upper Branch would be affected in any negative way regarding taxes. We want to continue in this vein.

...

We also need to discuss the finances for the Store since it opened. Maureen kindly sent the [profit and loss statements] for 2009 and 2010, but we will need more detail, and for all years of operation. Given our non-profit status and our need to make certain there are no "private inurement" issues, it is in everyone's best interest to work together on this as none of us want to accidentally violate any IRS regulations. Additionally, knowing the historic details of the Store allows us to prepare more accurate budgets for the future.

...

I am asking you to please stop copying all the Trustees on your communications and work directly with me on this transition and all the financial issues. The Trustees are in full agreement on this request."

(RDFRS, et al. DOX 1 -- 000106 through RDFRS, et al. DOX 1 -- 000109.)

(b)    at 2:42 p.m., Robin Cornwell emails Maureen Norton separately:

"Dear Maureen

. . .

The Trustees have given me the responsibility to direct the transition and be the point person, along with any assistance from others I may determine is needed. This is a difficult situation and has been a tremendous drain on the time and resources of the Trustees. I think

60

we should be able to handle this transition without bringing so many people into the mix.  The Trustees have made their decisions and I have been charged to implement it."

(c)     at 3:08 p.m., Maureen Norton emails Robin Cornwell:

"Our accountant is coming to our office tomorrow to get the books in order.  We are in the process of inventorying all of our product and listing all of our outstanding debt.  We will have tax liabilities for 2009 and 2010".

(d)     at 5:31 p.m., Robin Cornwell responds by reply email to Maureen Norton:

"Thank you Maureen, I appreciate your help on these issues."


(e)     At 11:35 PM, Josh Timonen wrote to Robin Cornwell:


"Hi Robin,

I'm working on going through things at our office, organizing equipment, drives, etc.  We are also getting paperwork and numbers ready, and I should be able to write you more tomorrow about it all.

Josh"

(RDFRS, et al. DOX 1 -- 000106.)


166.    In connection therewith, on Friday, May 21, 2010, the following emails were exchanged between Robin Cornwell <elisabeth.cornwell@mac.com> on behalf of Richard Dawkins and RDF, and Josh Timonen <joshtimonen@gmail.com> on behalf of Upper Branch. These emails were also selectively produced by Richard Dawkins and RDF to Upper Branch, et al. in EC054190, see infra at 57, et seq., bates stamped RDFRS, et al. DOX 1 -- 000098 through RDFRS, et al. DOX 1 -- 0000101:

(f)     At 10:37 AM, Robin Cornwell wrote to Josh Timonen:

"Josh,

. . . Richard [Dawkins] . . .has resigned from being a Trustee of the US Foundation...

In order to move forward, I would prefer emailing you directly as you are the owner of Upper Branch.  If you choose to make Maureen your authorized agent representing Upper Branch, then I need that in writing from you.

Unfortunately, it appears that you feel the Foundation has more financial obligations to you, about which we disagree but we need to sit down and discuss in an open professional manner.  Therefore, in order for our accountants to understand the situation, I do need to receive the full disclosure of the Upper Branch financials since you began working with Richard and then later with RDF[].

It would help a great deal if you could clearly lay out one by one what you expect from the Foundation and from Richard [Dawkins] in terms of this transition.  Richard [Dawkins] shall be taking a break from the Foundation, and will no longer be consulted on any of the Foundation issues - this is his choice.  It has just simply been too much for him.  . . .

Please let me know how you wish to proceed, I understand that your meeting with Greg [Langer] has been postponed until next week, which we hope will provide you with enough time to have all the financial information of the Store, the projects, and the inventory of the footage, equipment, etc. available.  We will have the legal documents for signing over the assets and liabilities for the Store and all other assets . . . One of the things we will need are the bank statements for the Store since its inception.  ... Given Richard [Dawkins'] state of mind and his profound sadness of personal loss, he has asked me to be his authorized agent in terms [sic] all purchases made through his personal funds.  He simply does not want to deal with these matters directly any more.  I hope you will have [sic] enough respect and personal concern for Richard to honor his request to be left out of these matters."

(RDFRS, et al. DOX 1 -- 000100 to RDFRS, et al. DOX 1 -- 000101.)

(g)      At 6:15 PM, Robin Cornwell wrote to Josh Timonen:

"...

62

We had offered to accept the lease and we wanted the transition to go smoothly.
...
I will be out next week to pick up all the contents, equipment etc. ... I will likely be out on Wednesday and we will pick up everything
before the end of the first week of June.
...
Our accountants will need to discuss these issues with your accountant. I am sorry you felt that you would be left holding the bag. That was never ever what we intended, and never in a single email did we convey that at any time."

(RDFRS, et al. DOX 1 -- 000098.)

167.   In connection therewith, on <u>Monday, May 24, 2010</u>, the following emails were exchanged between Robin Cornwell <elisabeth.cornwell@mac.com> on behalf of Richard Dawkins and RDF, and Josh Timonen <joshtimonen@gmail.com> on behalf of Upper Branch. These emails were also selectively produced by Richard Dawkins and RDF to Upper Branch, *et al.* in EC054190, see <u>infra</u> at 57, *et seq.*, bates stamped RDFRS, et al. DOX 1 -- 000083 through RDFRS, et al. DOX 1 -- 000095:

(h)   At 10:36 AM, Josh Timonen wrote to Robin Cornwell:

"It isn't possible for you to come clear out the Store in two days (Wed). In Maureen's email, she said "the end of the month". We have now closed down the [S]tore but have 116 pending orders, and we will not leave our customers high and dry. If you could please respond to the specifics of the inventory, that will help us move forward."

(RDFRS, et al. DOX 1 -- 000095.)

(i)   At 10:14 AM MDT, Robin Cornwell wrote to Josh Timonen:

"The inventory is being reviewed. We are not rushing through this. We still need all of the financials from the [S]tore operations. . . . Additionally without all the bank and financial statements from the [S]tore it will be impossible to determine any financial obligations. You were very concerned that RDF[] and Richard [Dawkins] would

63

leave you 'holding the bag'.  Richard [Dawkins] is particularly crushed you would accuse him or his Foundation of this.  So, to make certain this does not happen nothing will be done without great caution."

(RDFRS, et al. DOX 1 -- 000094 to 000095.)

(j)      At 1:51 PM EDT,  Josh Timonen wrote to Robin Cornwell:

"As we said earlier, the end of the month would be the right time to come out, May 31st.  Wednesday is too soon."

(RDFRS, et al. DOX 1 -- 000092.)

(k)      At 10:55 AM, Robin Cornwell wrote to Josh Timonen:

"We already made arrangements for Wednesday to meet with you."

(RDFRS, et al. DOX 1 -- 000090.)

(l)      At 2:16 PM EDT, Josh Timonen wrote to Robin Cornwell:

"Robin, I think its past the point of us having a meeting.  I've been offended to the point where I wouldn't be able to sit in the same room with you.  Let's just keep the lines of communication open so we can work through these logistics."

(RDFRS, et al. DOX 1 -- 000090.)

(m)      At 2:28 PM, Robin Cornwell wrote to Josh Timonen:

I am afraid this is unacceptable. You need to reconsider a decision that has such a tremendous impact.

(RDFRS, et al. DOX 1 -- 000088.)

(n)      At 5:51:21 PM EDT, Josh Timonen wrote to Robin Cornwell:

"Robin, what is unacceptable?"

(RDFRS, et al. DOX 1 -- 000088)

(o)      At 3:05 PM, Robin Cornwell wrote to Josh Timonen:
"Josh,

64

A meeting was set up for Wednesday May 26, and we do need to meet in order to begin the transition. Waiting until the end of this month is not possible given the documents, inventory, and financial issues that remain open. We can begin to go through these documents and view the software setup used to operate the Store. We also have legal documents to go through with you, and we want to make certain that you understand them and are comfortable with them.  Additionally, we need obtain access to the warehouse and begin to box things up as we start the inventory count process. I will contact your accountant; however I only received email with the contact information Friday afternoon, thus I did not contact your accountant over the weekend.

robin

(RDFRS, et al. DOX 1 -- 000087.)

(p)     At 3:16 PM, Robin Cornwell wrote to Josh Timonen:

"Josh

It is unacceptable that you are refusing to meet on Wednesday.  We are not arriving to move anything from the Store, we wanted to sit down and go through all the documents.  . . .

We cannot sign off on any inventories, accounting, finances until we go over all the documentation.
...
For all of this to be worked out you need to keep your agreement to meet on Wednesday.  We need to transition the accounts, the software, etc.

Greg [Langer] and I will be at the warehouse to meet with you to discuss the transition on Wednesday."

(RDFRS, et al. DOX 1 -- 000083.)

(q)     At 6:26 PM EDT, Josh Timonen wrote to Robin Cornwell, and Greg Langer <glikeminds@gmail.com>:

"...

SECOND AMENDED COMPLAINT

Whatever documents you are interested in having me sign, please email them and I will review them.

As for the inventory, it is  updated daily as orders are processed in Shopify. Graham is shipping out the remaining 116 orders and we will reprint and submit the final inventory.

...

I will continue my efforts for a smooth transition of the office contents and store inventory.  ... Obviously we will need to be in continual contact over the next year regarding expenses and 2009 and 2010 tax liabilities.  We don't have to have everything sorted out by the end of the month."

(RDFRS, et al. DOX 1 -- 000086 to RDFRS, et al. DOX 1 -- 000087.)

(r)     At 6:50 PM EDT, Josh Timonen wrote to Robin Cornwell:

"I have agreed to meet with Greg [Langer] as planned."

(RDFRS, et al. DOX 1 -- 000083.)

168.    In connection therewith, on June 3, 2010, at 5:17 p.m., Josh Timonen emailed Robin Cornwell, Greg Langer, Todd Stiefel, and Andy Thomson:

"Hi Robin,

Our accountant has advised that we be paid for the stock that you now have in your possession.  If we don't receive money for the stock costs, we are told it will reduce our 'purchases' and cause a greater tax burden.  We have sales tax, payroll taxes, DVDs, etc., that need to be paid out of Upper Branch.  We will also have tax liabilities for 2009 and 2010.  I suggest you send us the cost ($23k).  We're hoping this amount will cover all of these costs, but we won't know for certain until we get numbers back from our bookkeeper.

We also need to deal with transferring the rights from Upper Branch Productions, Inc. to RDF on all of the DVD titles.  There are also several titles that we will need to do a transfer of copyright ownership on."

A copy of this email was subsequently produced by Upper Branch, et al., to Dawkins and RDF in EC054190, see infra at 57, et seq., bates stamped DEF000791 to DEF000792.

169.   In connection therewith, on June 3, 2010, at 5:47 p.m., Robin Cornwell emails Josh Timonen and carbon copies Greg Langer, Todd Stiefel, and Andy Thomson, and Steve Gaines:

> "Dear Josh,
> Please let me know what other invoices you have pending and send them to me.  Could you expand on the RDFRS DVD titles and the rights?"

A copy of this email was subsequently produced by Upper Branch, et al., to Dawkins and RDF in EC054190, see infra at 57, *et seq.*, bates stamped DEF000792.

170.   In connection therewith, on June 4, 2010, at 12:45 PM, Josh Timonen sends a reply email to Robin Cornwell, carbon copying Greg Langer, Todd Stiefel, Andy Thomson, and Steve Gaines:

> "We will need to draft 'assignment of rights'/copyright transferring the rights from Upper Branch Productions, Inc. to RDFRS on several of the DVD titles.:"

A copy of this email was subsequently produced by Upper Branch, et al., to Dawkins and RDF in EC054190, see infra at 57, *et seq.*, bates stamped DEF000792.

171.   In reasonable reliance upon the foregoing material representations and assurances from Robin Cornwell, on behalf of Richard Dawkins and RDF, that Upper Branch would be compensated for inventory as well as the financial, legal, and tax liabilities it incurred as a result of the conveyance of the Store operations, RDF, under the guise of such agreement requested and received from Upper Branch all proprietary details concerning the Store operations, inventory and assets, thereby enabling RDF to abscond with the Store operations, inventory and assets from Upper Branch without compensating Upper Branch for any of the inventory, financial, legal, and tax liabilities, as was agreed.

172.   At the time all of the above representations were made by Richard Dawkins and

Robin Cornwell on behalf of Richard Dawkins and RDF, Robin Cornwell knew that the representations were false when made, or that Robin Cornwell made the representations recklessly and without regard for their truth. At the time these representations were made, Josh Timonen and Maureen Norton for Upper Branch were ignorant of the falsity of these representations and reasonably believed them to be true.

173. In reasonable reliance on the representations, and having no reason to believe that such representation was false in any way, Upper Branch was induced to perform and did perform completely by, inter alia, handing over all proprietary details concerning the Store operations, inventory and assets, to RDF, and assigning to RDF the Upper Branch Store operations, inventory, and assets, including two (2) written copyright assignments for certain Works, before Upper Branch was ever compensated for the inventory as well as the financial, legal, and tax liabilities they incurred as a result of said assignment, as promised.

174. Upper Branch's reliance on the representations by Robin Cornwell on behalf of Richard Dawkins and RDF was justified because Robin Cornwell expressly asserted her authority to act on behalf of Richard Dawkins and RDF, and Robin Cornwell confirmed that she had legal and institutional authority to make the promise she made on behalf of Richard Dawkins and RDF.

175. It was only after Upper Branch fully performed that it discovered Robin Cornwell, Richard Dawkins, and RDF had no intention of compensating Upper Branch for the inventory, incurred financial, legal, and tax liabilities, as promised. Had it known these true facts, Upper Branch would not have rendered performance as agreed.

176. Moreover, Upper Branch is informed and believes that in the furtherance of such fraud, that the BCC's tax treatment of Richard Dawkins' website was misrepresented by Dawkins and Cornwell as well given their violation of an Order by the Los Angeles Superior Court in EC054190, see infra at 57, *et seq.*, to produce evidence in support of such claims.

177. Without any legal right or justification, Robin Cornwell, Richard Dawkins, and RDF fraudulently acquired the Upper Branch Store operation, inventory, and assets, including tangible copies of all Upper Branch Works and written copyright assignments for two (2) of

the Works, and Mike Cornwell and RDF Store are now operating the Store from Mike Cornwell's home residence, selling Upper Branch inventory and assets to the public, without ever having compensated Upper Branch for the inventory, and its incurred financial, legal, and tax liabilities, as promised.

178.   Timonen and Norton reasonably having no reason to believe that such telephone and email representations made by Dawkins and Robin Cornwell on behalf of Defendant RDF were false in any way, were on behalf of Plaintiff induced in Los Angeles, California to perform and did perform completely in or about June 2010 by, inter alia, permitting Defendant RDF (through Robin Cornwell, Mike Cornwell, and Greg Langer) to take physical possession of Plaintiff's inventory from Los Angeles, California, including tangible copies of the Works, and assigning to RDF certain of Plaintiff's assets including written copyright assignments as to certain of the Works, including those attached hereto in **Exhibit "B,"** before Plaintiff was ever paid any of the agreed upon and promised monetary consideration for its inventory, the transfer thereof, or for Plaintiff's incurred costs and liabilities, as promised by these Defendants.  Attached hereto and incorporated by reference herein as **Exhibit "B"** are true and correct copies of the two (2) short form copyright assignments Plaintiff executed in Los Angeles, California in favor of RDF in reliance upon such misrepresentations.

179.   At the time the representations were made and Plaintiff entered into the agreement, and at subsequent times when Robin Cornwell and RDF agents Mike Cornwell and Greg Langer on behalf of RDF took physical possession in Los Angeles, California of Plaintiff's assets including written copyright assignments to two works specified below, Timonen and Norton on behalf of Plaintiff did not know the material representations or material omissions of fact by Dawkins, Robin Cornwell, Mike Cornwell and Greg Langer on behalf of Defendant RDF were false, but believed them to be true and reasonably relied on them.  Had they known the true facts, they would not have rendered performance on behalf of Plaintiff without consideration.

180.   It was only after Plaintiff fully performed in Los Angeles, California the agreement, and all of such inventory had been removed from Plaintiff's place of business in

Los Angeles, that they discovered Defendant RDF had no intention of "buy[ing] out the store" or providing the promised consideration or paying the agreed consideration to Plaintiff for its inventory, the transfer thereof, including the costs and liabilities incurred by Plaintiff as a result of the conveyance, transfer and assignment of assets to RDF and related matters, as promised by Defendants.

181.   Without any legal right or justification and in contravention of the contractual agreement between the parties, Defendant RDF fraudulently acquired Plaintiff's assets, including Plaintiff's inventory consisting of Plaintiff's tangible copies of the Works, inter alia, and copyright assignments attached hereto as **Exhibit "B,"** and commenced selling Plaintiff's assets to the public, including unauthorized copies of Plaintiff's copyrighted Works, without ever having provided the promised monetary consideration or compensation to Plaintiff, as promised by Defendants to Timonen and Norton on behalf of Plaintiff in Los Angeles.

182.   Apart from the two short form copyright assignments attached hereto as **Exhibit "B,"** pertaining to those Works entitled "Atheist Alliance International (AAI) 2007" (PA1609844, 2007) and "Pat Condell Anthology Feb. 2007 - Feb. 2008" (PA1646005, 2008), which were obtained on the basis of the fraud of Defendants herein, and which Upper Branch seeks to rescind, there are no other documents purportedly transferring any of Plaintiff's copyright interests in or to any of the Works to Defendants RDF.

183.   The apparent consent of Upper Branch to the assignment of Upper Branch Store operations, inventory, and assets, and the subsequent execution of two (2) written copyright assignments, was not real, mutual, or free in that it was obtained through fraud as herein alleged.

184.   Any and all apparent consent of Upper Branch to the assignment of Upper Branch Store operations, inventory, and assets, and execution of two (2) written copyright assignments, was obtained from Upper Branch solely through the fraud of Robin Cornwell on behalf of Richard Dawkins and RDF.  Significantly, Upper Branch would not have agreed to assign the Store operations, inventory, and assets for free, had it not been for the fraud of Robin Cornwell on behalf of Richard Dawkins and RDF.

185.    Defendants now wrongfully exercise dominion over the Upper Branch Store operations, inventory, and assets, including tangible copies of the Upper Branch Works.

186.    Upper Branch rightfully owns the Store operations, inventory, and assets, including the tangible copies of the Upper Branch Works.

187.    Defendants intentionally took possession of the Upper Branch Store operations, inventory, and assets, including the Upper Branch Works, and then refused to pay Upper Branch for their conveyance of the same.

188.    RDF is now operating the Upper Branch Store and exploiting the Upper Branch Store inventory and assets to the public through the Internet, inter alia.

189.    Due to the fraud of Defendants (except IWI), much of which occurred in Los Angeles, no consideration supports any transfer, conveyance or assignment of any copyrights in the Works to Defendants (except IWI).

190.    In or about October, 2010, Dawkins and RDF filed and served a civil complaint ("Complaint") against Upper Branch, *et al.*, in Los Angeles Superior Court ("LASC" or "Court"), bearing case no. EC054190, alleging multiple causes of action, for: (1) Breach of Oral Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Breach of Fiduciary Duty; (4) Fraud; (5) Embezzlement; (6) Declaratory Relief; and (7) Imposition of Constructive Trust.

191.    The "Embezzlement" cause of action recited five sections of the California Penal Code (Sections 503, 504, 506, 507, 508, and 532(a)) which Dawkins and RDF claimed were violated by the alleged conduct of Upper Branch, *et al.*, in operation of the Upper Branch Store.

192.    Richard Dawkins and RDF then published a copy of this Complaint on RDF's website, in their bid to wage a very distasteful public internet smear campaign against Upper Branch, *et al.*, on their offensive claims of criminality, including the purported violations of Penal Code provisions contained in the civil Complaint.

193.    The Declaratory Relief claim falsely alleged that the Works, and other intellectual property created by Upper Branch and Josh Timonen were "works for hire" for

RDF, and alleged a dispute with Mr. Timonen and Upper Branch over ownership of these Works and other intellectual property, and sought a declaration that such Works and materials and intellectual property belonged to RDF.

194.   Upper Branch, et al., took issue with this Complaint, *inter alia*, because the questions of copyright ownership raised in the complaint for the Works in question could not be "works for hire" for RDF because Mr. Timonen and Upper Branch were never employees of RDF, and because there was no written agreement marking these "works for hire" as required by U.S. Copyright Law.

195.   In response, Dawkins and RDF amended their Complaint in EC054190, materially altering the prior allegation of ownership of the Works as "works for hire" to newly allege the existence of a non-exclusive license and acknowledged that the Works were owned by Upper Branch.  This amended complaint also alleged a new cause of action for Interference with Prospective Economic Advantage in substitution for the Declaratory Relief claim based upon Upper Branch's assertion of its rights, as copyright owner of the Works, to Idea Media, the laboratory holding physical materials embodying the Works and supplying unauthorized copies to RDF and Dawkins.

196.   On January 28, 2011, the Court while granting a demurrer instructed RDF and Dawkins to replead their criminal "Embezzlement" claim as a recognized civil claim.

197.   Flouting the Court's instructions, RDF and Dawkins filed a second amended complaint in EC054190, again filed a criminal "Embezzlement" claim and added a new, second "criminal" claim for "Larceny."

198.   In EC054190, RDF and Dawkins admitted that it was "illegal" for RDF to own and operate an for-profit online store merchandising operation because of restrictions imposed upon RDF by the BCC.   However, RDF and Dawkins also changed once again their allegations in this regard, as well, alleging instead in their second amended complaint, and for the first time in EC054190, that the Trustees of RDF only "believed" that a direct operation of the a for-profit online store merchandising operation by RDF was "legally impermissible" but that their purported belief was "incorrect" due to erroneous advice from counsel.

199.   Upper Branch is informed and believes that that the BCC's tax treatment of Richard Dawkins' website, e.g. _supra_ at 15 and 25, was misrepresented by Richard Dawkins and Robin Cornwell as well given their violation of an Order by the Los Angeles Superior Court in EC054190 to produce evidence in support of such claims.

200.   On May 7, 2011, the Court dismissed with prejudice RDF and Dawkins' "criminal" claims for Embezzlement and Larceny.   At the hearing, the Court questioned counsel for RDF and Dawkins as to why a civil claim for conversion was not pled, and in response, counsel for RDF and Dawkins stated that it was a "tactical" decision for RDF and Dawkins.

201.   Richard Dawkins, RDF, and their counsel in EC054190 were sanctioned by the Court for their failure to comply with their discovery obligations in refusing to produce requisite documents in support of their purported claims in EC054190.   An order compelling production of numerous document categories without objections or privilege was issued but not complied with.   Accordingly, a motion for terminating sanctions, and alternatively issue sanctions and evidentiary sanctions was pending and set for hearing when Richard Dawkins and RDF purported to dismiss their Complaint in EC054190.

202.   On August 3, 2011, Dawkins and RDF dismissed their complaint in EC054190 with prejudice and a costs judgment was subsequently entered in favor of Upper Branch, _et al_. in EC054190.

203.   According to a string of email communications collectively attached hereto as **Exhibit "C,"** starting in or about June 2010, Richard Dawkins by and through Robin Cornwell and Mike Cornwell requested Andrew Chalkey to begin deleting Josh Timonen's name from authorship of articles posted on RDF's website that referenced the Works created by Upper Branch, _inter alia_.   In October, 2010, Richard Dawkins also appears to have later lamented to Andrew Chalkey: "I feel strongly that it was wrong to ask you to delete Josh's name from authorship of articles.   It is simply a matter of historical fact that he wrote them".

204.   At such time, Andrew Chalkley was an independent contractor performing website/internet services for both Richard Dawkins Ltd UK and RDF in the UK, who had

worked with Josh Timonen on website projects for Richard Dawkins personally and RDF, such as RichardDawkins.net, RichardDawkinsFoundation.org, OutCampaign.org, among others.

205.    Further, according to the email communications collectively attached hereto as **Exhibit "C,"** on or about June 23, 2010, Mike Cornwell emailed Andrew Chalkley, copying Robin Cornwell:

> This all getting very messy legal wise.  We need to update/sanitize other references as well[.]  As an example this video which has a "By Josh Timonen" needs to say "Presented by RDFRS" . . . all of these . . . should replace Josh's name with presented by the Richard Dawkins Foundation.  On ones with someone else listed, like Judy Diamond . . . then her name should go before 'presented by the Richard Dawkins Foundation' many of them already have an RDFRS credit so just need to delete reference to Josh.

206.    According to RDF's website <richarddawkins.net>, Robin Cornwell is  now representing to the public that she is to be credited with the creation of the Upper Branch Works, i.e. "[h]er innovative ideas include... the Four Horsemen and other DVDs".  See http://www.richarddawkins.net/home/about.

207.    Plaintiff has been damaged in an amount to be proven at trial, plus pre- and post judgment interest at the legal rate, consequential and incidental damages, costs, expenses, and reasonable attorney's fees.

208.    Plaintiff further alleges that Defendants, through managing agents Dawkins and Cornwell, were guilty of oppression, fraud and malice as defined by California Civil Code § 3294 when making the above referenced representations and that Plaintiff should recover punitive damages in an amount sufficient to punish and deter Defendants from repeating such conduct in the future.

## FIFTH CLAIM FOR RELIEF
## (BREACH OF ORAL CONTRACT - *IN THE ALTERNATIVE*)
### [Against Defendant RDF]

209.    Plaintiff re-alleges and incorporates by reference the allegations contained in

74

Paragraphs 1 through 90, inclusive, as if fully set forth herein.

210.   In or about December 2009, Defendants Dawkins and Robin Cornwell, on behalf of RDF *inter alia*, asserted an interest in purchasing certain assets of Plaintiff.  In connection therewith, Defendant Cornwell and other RDF trustees represented that RDF had obtained its 501(c)(3) status and had been "uncoupled" from RDF in the United Kingdom, which purportedly allowed RDF to profit from the sale of merchandise.

211.   In or about December 2009, Plaintiff and Dawkins and Cornwell on behalf of RDF orally agreed that upon the condition and in consideration for the transfer of certain assets of Plaintiff's, including Plaintiff's inventory of tangible copies of the Works, and written copyright assignments, Defendant RDF would provide monetary consideration to Plaintiff and compensate Plaintiff for all of its inventory and the costs and liabilities incurred by Plaintiff as a result of the conveyance, transfer and assignment of assets to RDF and related matters.

212.   Defendant materially breached the agreement in that Plaintiff has never been compensated for its inventory or costs or liabilities incurred as a result of its conveyance, assignment, and related matters.

213.   Plaintiff fully performed all conditions, covenants, and promises required of them under the terms of the agreement, except for those conditions, covenants and promises which have been prevented or otherwise excused by the conduct of the Defendant in that Plaintiff has conveyed and assigned Plaintiff's inventory and assets to Defendant RDF.

214.   As a direct and proximate result of the foregoing breach, Plaintiff has been damaged in an amount to be proven at trial, plus pre- and post-judgment interest at the legal rate.

### SIXTH CLAIM FOR RELIEF
### (BREACH OF IMPLIED CONTRACT - *IN THE ALTERNATIVE*)
### [Against Defendant RDF]

215.   Plaintiff realleges and incorporates by reference the allegations contained in Paragraphs 1 through 90, inclusive, as if fully set forth herein.

216.    In or about December 2009, Defendants Dawkins and Robin Cornwell, on behalf of RDF *inter alia*, asserted an interest in purchasing certain assets of Plaintiff.  In connection therewith, Defendant Cornwell and other RDF trustees represented that RDF had obtained its 501(c)(3) status and had been "uncoupled" from RDF in the United Kingdom, which purportedly allowed RDF to profit from the sale of merchandise.

217.    In or about December 2009, Plaintiff and Dawkins and Cornwell on behalf of RDF orally agreed that upon the condition and in consideration for the transfer of certain assets of Plaintiff's, including Plaintiff's inventory of tangible copies of the Works, and written copyright assignments, Defendant RDF would provide monetary consideration to Plaintiff and compensate Plaintiff for all of its inventory and the costs and liabilities incurred by Plaintiff as a result of the conveyance, transfer and assignment of assets to RDF and related matters.

218.    At all relevant times Defendant RDF, by and through Defendants Dawkins and Robin Cornwell, discussed with Timonen and/or Norton on behalf of Plaintiff, the conveyance and assignment of inventory and assets from Plaintiff to RDF, Defendant RDF understood and agreed that Plaintiff's actions in furtherance of such conveyance and assignment occurred because Plaintiff was expecting monetary consideration and compensation for all of its inventory and costs and liabilities incurred as a result of such conveyance, assignment, and related matters.

219.    With this knowledge, in or about June 2010, Defendant RDF, by and through Defendant Robin Cornwell, took physical possession of Plaintiff's inventory and assets, including the tangible copies of the Works and accepted written copyright assignments from Plaintiff.

220.    Plaintiff has not received any monetary consideration or agreed to compensation from RDF for the conveyance and assignment of Plaintiff's inventory and assets to RDF, and related matters.

221.    Accordingly, Defendant has violated its implied agreement with Plaintiff.

222.    As a direct and proximate result of the foregoing breach, Plaintiff has been

SECOND AMENDED COMPLAINT

damaged in an amount to be proven at trial, plus pre- and post-judgment interest at the legal rate.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter judgment in its favor and against Defendants, and each of them, as follows:

(a)  On the first through third claims for relief, preliminarily and permanently enjoin, pursuant to 17 U.S.C. § 502, Defendants, their respective officers, agents, servants, employees and those persons in active concert or participation with Defendants, or any of them, from inducing infringement or directly, contributorily, and/or vicariously infringing by any means, Plaintiff's exclusive rights under the Copyright Act, including, but not limited to manufacturing, reproducing, distributing, adapting, displaying, advertising, promoting, offering for sale and/or selling, or performing any materials that are substantially similar to the copyrighted Works listed on **Exhibit "A"**, and to deliver to the Court for destruction or other reasonable disposition all such materials and means for producing same in Defendants' possession or control;

(b)  award Plaintiff statutory damages in accordance with 17 U.S.C. § 504 and other applicable law;

(c)  award Plaintiff general, compensatory and consequential damages in an amount to be proven at trial, including allowable legal interest on the sum according to proof;

(d)  award Plaintiff punitive damages in an amount appropriate to punish the Defendants and deter others from engaging in similar misconduct;

(e)  rescission of copyright assignments attached hereto as **Exhibit "B"**;

(f)  award Plaintiff costs and reasonable attorneys' fees in accordance with 17 U.S.C. § 505, and other applicable law; and

(g)  award Plaintiff such further and additional relief as the Court may deem just and proper.

1   Dated: February 19, 2013

2

Respectfully submitted,

COSTA, ABRAMS & COATE, LLP

3

4

By: _____

Alan Abrams

5

Charles M. Coate

6

Attorneys for Plaintiff UPPER BRANCH

7

PRODUCTIONS, INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

78

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial.

Dated:          February 19, 2013          Respectfully submitted,

COSTA, ABRAMS & COATE, LLP


By: _____
Alan Abrams
Charles M. Coate
Attorneys for Plaintiff UPPER BRANCH
PRODUCTIONS, INC.

79

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**
**PA 1-744-813**

**Effective date of registration:**
November 19, 2010

---

## Title
**Title of Work:** Break the Science Barrier

## Completion/ Publication
**Year of Completion:** 2008
**Date of 1st Publication:** February 3, 2008     **Nation of 1st Publication:** United States

## Author
■  **Author:** Upper Branch Productions Inc.
**Author Created:** DVD artwork and additional footage

**Work made for hire:** Yes
**Citizen of:** United States                    **Domiciled in:** United States

## Copyright claimant
**Copyright Claimant:** Upper Branch Productions Inc.
555 NW Park Ave #317, Portland, OR, 97209

## Limitation of copyright claim
**Material excluded from this claim:** original video
**New material included in claim:** DVD artwork and additional footage

## Certification
**Name:** Josh Timonen
**Date:** October 6, 2010

---

**Correspondence:** Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Acting Register of Copyrights, United States of America

**Registration Number**

## PA 1-720-581

**Effective date of registration:**

October 27, 2010

---

## Title ——————————————————

Title of Work: The Root of all Evil: The Uncut Interviews

## Completion/Publication ——————————

Year of Completion: 2007

Date of 1st Publication: September 8, 2007     Nation of 1st Publication: United States

## Author ——————————————————

■ Author: Upper Branch Productions Inc.

Author Created: Dvd artwork,dvd graphics, dvd authoring, dvd menu, dvd menu music.

Work made for hire: Yes

Citizen of: United States     Domiciled in: United States

## Copyright claimant ——————————————

Copyright Claimant: Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, CA, 97209, United States

## Certification ——————————————————

Name: Josh Timonen

Date: October 6, 2010

A-2

Page 1 of

Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Acting Register of Copyrights, United States of America

**Registration Number**

**PA 1-725-279**

**Effective date of
registration:**

May 23, 2008

---

## Title

**Title of Work:** Discussions with Richard Dawkins: The Four Horsemen

**Nature of Work:** DVD-Educational documentary

## Completion/Publication

**Year of Completion:** 2007

**Date of 1st Publication:** December 1, 2007    **Nation of 1st Publication:** United States

## Author

■    **Author:** Upper Branch Productions, Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Domiciled in:** United States

**Anonymous:** No    **Pseudonymous:** No

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions, Inc.

555 NW Park Ave #317, Portland, OR 97209

## Limitation of copyright claim

**Previously registered:** No

## Certification

**Name:** Joshua Timonen

**Date:** May 14, 2008

---

**Correspondence:** Yes

Page 1 of 1

Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-739-638**

**Effective date of
registration:**

October 27, 2010

---

## Title

**Title of Work:** The Genius of Charles Darwin

## Completion/Publication

**Year of Completion:** 2009

**Date of 1st Publication:** February 22, 2009     **Nation of 1st Publication:** United States

## Author

- **Author:** Upper Branch Productions Inc.

**Author Created:** Additional original video footage. DVD artwork

**Work made for hire:** Yes

**Citizen of:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Limitation of copyright claim

**Material excluded from this claim:** preexisting series "The Genius of Charles Darwin"

**New material included in claim:** Additional original video footage, DVD artwork

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

---

**Correspondence:** Yes

Page 1 of 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-739-396

**Effective date of registration:**

November 22, 2010

---

## Title

**Title of Work:** Root of all Evil?

## Completion/Publication

**Year of Completion:** 2008

**Date of 1st Publication:** February 10, 2008      **Nation of 1st Publication:** United States

## Author

- **Author:** Upper Branch Productions Inc.

  **Author Created:** video footage, music and artwork

  **Work made for hire:** Yes

  **Citizen of:** United States      **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, portland, OR, 97209, United States

## Limitation of copyright claim

**Material excluded from this claim:** Some footage

**New material included in claim:** Additional footage, music and artwork

## Rights and Permissions

**Organization Name:** Upper Branch Productions Inc.

**Address:** 555 NW Park Ave #317

portland, OR 97209  United States

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

---

Page 1 of 2

Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-739-394**

**Effective date of
registration:**
November 22, 2010

## Title

**Title of Work:** The AAI 2009 Conference

## Completion/Publication

**Year of Completion:** 2009

**Date of 1st Publication:** February 17, 2009      **Nation of 1st Publication:** United States

## Author

■      **Author:** Upper Branch Productions Inc.

**Author Created:** entire motion picture, artwork

**Work made for hire:** Yes

**Citizen of:** United States                    **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

**Correspondence:** Yes

Page 1 of 1

Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code,*
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

PAu 3-555-606

**Effective date of
registration:**

November 22, 2010

## Title

**Title of Work:**  Richard Dawkins Appearances and Events 2007-2008

## Completion/Publication

**Year of Completion:**  2008

## Author

■
**Author:**  Upper Branch Productions Inc.

**Author Created:**  entire motion picture and artwork

**Work made for hire:**  Yes

**Citizen of:**  United States          **Domiciled in:**  United States

## Copyright claimant

**Copyright Claimant:**  Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Certification

**Name:**  Josh Timonen

**Date:**  October 6, 2010

**Correspondence:**  Yes

Page 1 of 1

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-739-392**

**Effective date of
registration:**

November 22, 2010

## Title

**Title of Work:** Voices of Reason

**Series Title:** Discussions with Richard Dawkins

**Number** 3

## Completion/Publication

**Year of Completion:** 2008

**Date of 1st Publication:** November 3, 2008 **Nation of 1st Publication:** United States

## Author

**Author:** Upper Branch Productions Inc.

**Author Created:** entire motion picture, artwork

**Work made for hire:** Yes

**Citizen of:** United States **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

**Correspondence:** Yes

Page 1 of 1

A-8

Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marie A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-739-398**

**Effective date of registration:**

November 22, 2010

## Title

**Title of Work:** The Enemies of Reason Uncut Interviews

## Completion/Publication

**Year of Completion:** 2008

**Date of 1st Publication:** November 23, 2008          **Nation of 1st Publication:** United States

## Author

■          **Author:** Upper Branch Productions Inc.

**Author Created:** entire motion picture, artwork

**Work made for hire:** Yes

**Citizen of:** United States          **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

**Correspondence:** Yes

Page 1 of 1

A-9

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-742-661

**Effective date of
registration:**

December 3, 2010

---

## Title

**Title of Work:** Discussions with Richard Dawkins: Voices of Science

## Completion/Publication

**Year of Completion:** 2008

**Date of 1st Publication:** July 22, 2008    **Nation of 1st Publication:** United States

## Author

- **Author:** Upper Branch Productions Inc.

**Author Created:** entire motion picture

**Work made for hire:** Yes

**Citizen of:** United States    **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

**PA 1-746-366**

**Effective date of
registration:**

October 27, 2010

## Title

**Title of Work:** The Genius of Charles Darwin the Uncut Interviews

## Completion/Publication

**Year of Completion:** 2009

**Date of 1st Publication:** May 2, 2009        **Nation of 1st Publication:** United States

## Author

■        **Author:** Upper Branch Productions Inc.

**Author Created:** text and compilation of preexisting photos on packaging.

**Work made for hire:** Yes

**Citizen of:** United States        **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Limitation of copyright claim

**Material excluded from this claim:** Preexisting footage and photos

**New material included in claim:** text and compilation of preexisting photos on packaging

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

**Correspondence:** Yes

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**

## PA 1-745-953

**Effective date of
registration:**

October 28, 2010

## Title

**Title of Work:** The Enemies of Reason

## Completion/Publication

**Year of Completion:** 2008

**Date of 1st Publication:** August 15, 2008    **Nation of 1st Publication:** United States

## Author

■    **Author:** Upper Branch Productions Inc.

**Author Created:** artwork

**Work made for hire:** Yes

**Citizen of:** United States    **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Upper Branch Productions Inc.

555 NW Park Ave #317, Portland, OR, 97209

## Limitation of copyright claim

**Material excluded from this claim:** motion picture previously registered

**New material included in claim:** new DVD artwork

## Certification

**Name:** Josh Timonen

**Date:** October 6, 2010

**Correspondence:** Yes

## Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

**PA 1-646-005**

**Effective date of
registration:**

May 23, 2008

---

### Title
**Title of Work:** Pat Condell Anthology Feb. 2007 - Feb. 2008

**Nature of Work:** DVD - educational documentary

### Completion/ Publication
**Year of Completion:** 2008

**Date of 1st Publication:** April 29, 2008

### Author
■ **Author:** Upper Branch Productions, Inc.

**Author Created:** Director, editor, producer, sound mixer, of the DVD

**Work made for hire:** Yes

**Citizen of:** United States

**Anonymous:** No                                    **Pseudonymous:** No

### Copyright claimant
**Copyright Claimant:** Upper Branch Productions, Inc.

1427 N. La Brea, Suite A, Los Angeles, CA 90028

### Limitation of copyright claim
**Previously registered:** No

### Certification
**Name:** Joshua Timonen

**Date:** May 14, 2008

---

**Correspondence:** Yes

Page 1 of 1

A-13

Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Maria A. Pallante*

Register of Copyrights, United States of America

**Registration Number**
**PA 1-800-214**

Effective date of
registration:
October 28, 2010

## Title

Title of Work: Growing up in the Universe

## Completion/Publication

Year of Completion: 2007

Date of 1st Publication: May 1, 2007     Nation of 1st Publication: United States

## Author

Author: Upper Branch Productions Inc

Author Created: editing, dvd authorship

Work made for hire: Yes

Citizen of: United States     Domiciled in: United States

## Copyright claimant

Copyright Claimant: Upper Branch Productions Inc.
555 NW Park Ave #317, Portland, OR, 97209

## Rights and Permissions

Organization Name: Upper Branch Productions Inc.

Address: 555 NW Park Ave #317

Portland, OR 97209

## Certification

Name: Josh Timonen

Date: October 6, 2010

Correspondence: Yes

Page 1 of 1

A-14

## Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

Registration Number:

**PA 1-609-844**

Effective date of registration:

May 21, 2008

Title ————
Title of Work: Atheist Alliance International (AAI) 2007
Nature of Work: DVD Educational Documentary

Completion/ Publication ————
Year of Completion: 2007
Date of 1st Publication: December 4, 2007

Author ————
■   Author: Upper Branch Productions Inc.
Author Created: Motion picture
Work made for hire: Yes

Copyright claimant ————
Copyright Claimant: Upper Branch Productions Inc.
1427 N La Brea, Ste A, Los Angeles, CA, 90028

Limitation of copyright claim ————
Previously registered: No

Certification ————
Name: Joshua Timonen
Date: May 14, 2008

Correspondence: Yes

Page 1 of 1

A-15

Short Form Assignment of Copyright

FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged Upper Branch Productions Inc.("Assignor"), located at 5543 Riverton Ave #2 North Hollywood, CA 91423, hereby irrevocably transfers and assigns to The Richard Dawkins Foundation for Reason and Science ("Assignee), located at Metro Center 1200 G Street NW 8th Floor Washington, DC 20005, its successors and assigns, in perpetuity, all right (whether now known or hereinafter invented), title, and interest, throughout the world, including any copyrights and renewals or extensions thereto, in AAI 2007  Educational dvd Copyright registration number PA 1-609-844

IN WITNESS THEREOF, Assignor has duly executed this Agreement.

Upper Branch Productions Inc.

By: _____

Title: _Pres:dent_____

Date: _6/04/10_____

B-1

Short Form Assignment of Copyright

FOR GOOD AND VALUABLE CONSIDERATION, receipt of which is hereby acknowledged
Upper Branch Productions Inc.("Assignor"), located at 5543 Riverton Ave #2 North Hollywood,
CA 91423, hereby irrevocably transfers and assigns to The Richard Dawkins Foundation for
Reason and Science ("Assignee), located at Metro Center 1200 G Street NW 8th Floor
Washington, DC 20005, its successors and assigns, in perpetuity, all right (whether now known
or hereinafter invented), title, and interest, throughout the world, including any copyrights and
renewals or extensions thereto, in Pat Condell Anthology  Educational dvd  Copyright
registration number PA1-646-005

IN WITNESS THEREOF, Assignor has duly executed this Agreement.

Upper Branch Productions Inc.

By: _____

Title: _Presiolent_

Date: _6/04/10_

B-2

1/30/13                                   The Chalkleys Mail - more cleanup

                                             Andrew Chalkley <andrew@chalkley.org>

## more cleanup
9 messages

**Mike Cornwell** <mike@mcornwell.net>                          23 June 2010 10:46
To: Andrew Chalkley <andrew@chalkley.org>
Cc: Elisabeth Cornwell <robin.cornwell@gmail.com>

This is all getting very messy legal wise.
We need to update/sanitize other references as well

As an example this video which has a "By Josh Timonen"  needs to say "Presented by RDFRS"
http://richarddawkins.net/articles/183

all of these
http://richarddawkins.net/archive/videos/latest?tag_ids[]=28

should replace Josh's name with presented by the Richard Dawkins Foundaition.  On ones with someone
else listed, like Judy Diamond.... then her name should go before 'presented by the Richard Dawkins
Foundation'
many of them already have an RDFRS credit so just need to delete reference to Josh.

I notice that when I do a search for "Upper Branch" I see a lot of links but get a "the page you are looking for
doesn't exist" so I'm guessing a stale cache or something. If that can be refreshed it would also be good.

Please let me know if any of this is a one by one sort of thing but I'm hoping it's relatively straight forward
from a Ruby terminal session.

Thanks,
/Mike

---

**Andrew Chalkley** <andrew@chalkley.org>                      23 June 2010 11:11
To: Mike Cornwell <mike@mcornwell.net>
Cc: Elisabeth Cornwell <robin.cornwell@gmail.com>

Original Posts:

http://richarddawkins.net/articles/183
Josh Timonen
http://richarddawkins.net/articles/1534
Dogma Free America, Josh Timonen
http://richarddawkins.net/articles/2400
Josh Timonen, RichardDawkins.net
http://richarddawkins.net/articles/3986
Michael Shermer, The Richard Dawkins Foundation, Josh Timonen
http://richarddawkins.net/articles/4058
Richard Dawkins, Josh Timonen, Judy Diamond, RDFRS
http://richarddawkins.net/articles/4063
Richard Dawkins, Josh Timonen, Judy Diamond, RDFRS
http://richarddawkins.net/articles/4067
Richard Dawkins, Josh Timonen, Judy Diamond, RDFRS
http://richarddawkins.net/articles/4070
Richard Dawkins, Josh Timonen, Judy Diamond, RDFRS
http://richarddawkins.net/articles/4085
Richard Dawkins, Josh Timonen, Judy Diamond, RDFRS
http://richarddawkins.net/articles/4094
Richard Dawkins, Josh Timonen, Judy Diamond, Ken Kaneshiro, RDFRS
http://richarddawkins.net/articles/4109
Richard Dawkins, Josh Timonen

1/30/13                                    The Chalkleys Mail - more cleanup

http://richarddawkins.net/articles/4231
Richard Dawkins, Josh Timonen
http://richarddawkins.net/articles/4281
Richard Dawkins, Josh Timonen
http://richarddawkins.net/articles/4329
Richard Dawkins, Josh Timonen
http://richarddawkins.net/articles/4431
PZ Myers, AAI, RDFRS, Josh Timonen
http://richarddawkins.net/articles/4459
Dr. Andy Thomson, RDFRS, AAI, Josh Timonen
http://richarddawkins.net/articles/4490
Lawrence Krauss, AAI, RDFRS, Josh Timonen
http://richarddawkins.net/articles/4547
Dan Dennett, AAI 2009, RDFRS, Josh Timonen
http://richarddawkins.net/articles/4561
Jerry Coyne, AAI 2009, RDFRS, Josh Timonen
http://richarddawkins.net/articles/4599
Richard Dawkins, AAI, RDFRS, Josh Timonen
http://richarddawkins.net/articles/4605
Mr. Deity, AAI, RDFRS, Josh Timonen
http://richarddawkins.net/articles/4629
Richard Dawkins, AAI, RDFRS, Josh Timonen
http://richarddawkins.net/articles/471561
Robert Seyfarth, Josh Timonen
http://richarddawkins.net/articles/471000
Brian Greene, Josh Timonen, RDFRS
http://richarddawkins.net/articles/471222
Robert Seyfarth, Josh Timonen
http://richarddawkins.net/articles/4766
A.C. Grayling, RDFRS, Josh Timonen
http://richarddawkins.net/articles/4600
Dan Dennett, AAI, RDFRS, Josh Timonen
http://richarddawkins.net/articles/4601
Carolyn Porco, RDFRS, AAI, Josh Timonen
http://richarddawkins.net/articles/4890
A.C. Grayling, RDFRS, Josh Timonen
http://richarddawkins.net/articles/500
Josh Timonen, Andrew Chalkley
http://richarddawkins.net/articles/4388
Josh Timonen

To:

http://richarddawkins.net/articles/183
The Richard Dawkins Foundation
http://richarddawkins.net/articles/1534
Dogma Free America, the Richard Dawkins Foundation
http://richarddawkins.net/articles/2400
The Richard Dawkins Foundation, RichardDawkins.net
http://richarddawkins.net/articles/3986
Michael Shermer, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4058
Richard Dawkins, Judy Diamond, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4063
Richard Dawkins, Judy Diamond, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4067
Richard Dawkins, Judy Diamond, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4070
Richard Dawkins, Judy Diamond, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4085
Richard Dawkins, Judy Diamond, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4094
Richard Dawkins, Judy Diamond, Ken Kaneshiro, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4109
Richard Dawkins, the Richard Dawkins Foundation

C-2

1/30/13                                        The Chalkleys Mail - more cleanup

http://richarddawkins.net/articles/4231
Richard Dawkins, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4281
Richard Dawkins, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4329
Richard Dawkins, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4431
PZ Myers, AAI, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4459
Dr. Andy Thomson, AAI, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4490
Lawrence Krauss, AAI, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4547
Dan Dennett, AAI 2009, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4561
Jerry Coyne, AAI 2009, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4599
Richard Dawkins, AAI, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4605
Mr. Deity, AAI, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4629
Richard Dawkins, AAI, the Richard Dawkins Foundation
http://richarddawkins.net/articles/471561
Robert Seyfarth, the Richard Dawkins Foundation
http://richarddawkins.net/articles/471000
Brian Greene, the Richard Dawkins Foundation
http://richarddawkins.net/articles/471222
Robert Seyfarth, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4766
A.C. Grayling, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4600
Dan Dennett, AAI, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4601
Carolyn Porco, AAI, the Richard Dawkins Foundation
http://richarddawkins.net/articles/4890
A.C. Grayling, the Richard Dawkins Foundation
http://richarddawkins.net/articles/500
The Richard Dawkins Foundation
http://richarddawkins.net/articles/4388
The Richard Dawkins Foundation

History is now changed :)

With regard to Upper Branch - that'll be because of Google's cache of
the old store.

Regards
Andrew
[Quoted text hidden]

---

**Mike Cornwell** <mike@mcornwell.net>                            23 June 2010 11:13
To: Andrew Chalkley <andrew@chalkley.org>
Cc: Elisabeth Cornwell <robin.cornwell@gmail.com>

Thanks!
[Quoted text hidden]

---

C-3

**Andrew Chalkley** <andrew@chalkley.org>                                    24 October 2010 13:13
To: Richard Dawkins <richard.dawkins1@me.com>

Hey Richard

I see you've changed some entries back. Robin asked me to change all the articles back in June because possible legal "messiness". I just thought I'd alert you to it.

She also asked me, through Mike, to delete Josh's profile today. Which I haven't done yet. Am I to follow through with that?

Regards,
Andrew
[Quoted text hidden]

**Richard Dawkins** <richard.dawkins1@me.com>                                    24 October 2010 13:23
To: Andrew Chalkley <andrew@chalkley.org>

I feel strongly that it was wrong to ask you to delete Josh's name from authorship of articles. It is simply a matter of historical fact that he wrote them, and that is why I changed them back. Are there other articles that he wrote, from which his name has been removed?

I don't really understand about deleting profiles. What is the effect of deleting a profile?

All good wishes
Richard
[Quoted text hidden]

C-4